# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RICARDO AQUINO, GEORGE CRUMPECKER, JONATHAN PIPERATO and STEPHEN TRESCO, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>SUBARU OF AMERICA, INC., and SUBARU CORPORATION,<br><br>    Defendants. | Civil Action No. |

## CLASS ACTION COMPLAINT AND REQUEST FOR JURY TRIAL

Plaintiffs Ricardo Aquino (hereinafter "Aquino"), George Crumpecker (hereinafter "Crumpecker"), Jonathan Piperato (hereinafter "Piperato") and Stephen Tresco (hereinafter "Tresco") hereinafter collectively referred to as "proposed class representatives") through their counsel, on behalf of themselves, and all others similarly situated allege as follows:

## INTRODUCTION

1.    Subaru Corporation[1] (hereinafter "Subaru") and Subaru of America, Inc. (hereinafter "SoA") (hereinafter collectively referred to as "defendants") withheld material disclosures concerning engine components known to the defendants to be defective and used in the following vehicles: 2009 through and including 2018 model year Impreza WRX and WRX STi (hereinafter "class vehicles" or "class vehicle").[2]  Engines used in class vehicles include but are not limited to engine codes EJ255,

---

[1] Subaru Corporation, a Japanese business entity was formerly named Fuji Heavy Industries, Ltd. Effective April of 2017, it became Subaru Corporation and assumed all assets and liabilities of its corporate predecessor Fuji Heavy Industries, Ltd.

[2] "WRX" is an abbreviation for World Rally eXperimental.  "STi" is an abbreviation for Subaru Tecnica international, a Subaru activity that develops Subaru racing vehicles.  Since 1993, the defendants invested tens of millions of dollars preparing Impreza factory rally cars to compete in the WRC (World Rally Championship) series.  The cumulative worldwide TV audience in 2016 for WRC broadcasts was more than 700 million viewers.  These rallies provide an all-important marketing program for the WRX

EJ257 and FA20 (hereinafter "class engines" or "class engine").[3]  The proposed class representatives and members of the proposed subclasses request monetary damages including multiple damages where applicable, injunctive relief, court costs and attorney fees against the defendants based upon their misrepresentations and unfair and deceptive business practices under the laws of Illinois, Colorado, California and New York.

**CLASS ENGINE INTERNAL DEFECT**

2.      Passenger motor vehicle engines should last a minimum of 120,000 miles in a modern automobile such as class vehicles.  This proposition is demonstrated by the defendants' Owner's Manual and Warranty & Maintenance Booklet materials accompanying class vehicles, other predecessor engines manufactured by the defendants and performance of comparable competitor vehicles.  The internal components of class engines prematurely fail at low miles as described in this complaint.

3.      Subaru and SoA introduced the class engines in the United States market in late 2008 for the 2009 model year.  Class engines are predisposed to premature engine failure.[4]

---

and WRX STi vehicle sales worldwide by showcasing high performance Subaru vehicles that demonstrate rugged durability in international competition.  *See* http://dp.subaru.com.  As described in this complaint, class engines do not have this purported durability.

[3] Other Subaru vehicles utilizing a class engine include the 2009 Outback XT 2.5L.  Counsel for plaintiffs reserves the right to further enlarge the scope of class vehicles once discovery is completed.

[4] All 2.5 liter turbo class engines manufactured in certain months experienced engine quality control issues requiring SoA to issue an immediate a stop sale order on April 7, 2008 for 2008-2009 Subaru vehicles sold in the United States.  The purpose of the stop sale was to allow Subaru and SoA to investigate an "Engine Knocking Noise" affecting the 2.5 liter engines after "[a]n internal investigation confirm[ed] an internal wear issue on the failed units."  Subaru also developed a modification to the Engine Control Module software logic that improved combustion management to reduce ringland failure at higher engine revolutions.

4.      Class vehicles are defective with respect to improperly designed and manufactured pistons, engine management system and PCV (positive crankcase ventilation) system that subjects class engines to premature catastrophic engine piston ringlands failure (the "Piston Ringlands Defect").[5]

5.      WRX and WRX STi engines are high performance versions of the 2.5 liter displacement EJ series and 2.0 FA engines used in other model Subaru vehicles including but not limited to the Forrester, Legacy and Outback.  Performance modifications increased the horsepower for WRX and WRX STi engines over the standard base 2.5 liter engine.[6]  These performance modifications creating increased power output did not include necessary internal engine modifications to prevent damage to the piston ringlands.  This is particularly true since the 2.5 liter engine used for class engines was itself was derived from a lower output earlier production 2.0 liter engine that had forged pistons.[7]  Certain earlier 2.0 liter WRX engines incorporated more durable and stronger (and more expensive to manufacture) forged pistons.  In addition, Class engines utilize more brittle cast pistons when they should be using forged pistons.

6.      Inadequate class engine piston ringland durability was caused by a combination of casting the class engine pistons from hypereutectic aluminum silicon (Al-Si) alloy.  While this alloy has some strength attributes over conventional cast aluminum pistons, Al-Si pistons and in particular piston ringlands are more brittle.  This Al-Si materials selection and cast construction method resulted in insufficient strength pistons in class engines.  Inadequate class engine piston ringland durability was caused in part by casting the class engine pistons from hypereutectic aluminum silicon (Al-Si) alloy and insufficient ringland dimensioning.  The piston casting process was also flawed including temperature

_____

[5] Piston ringlands refer to the engine piston separations between the piston rings.  *See* Figure 1, *infra*, depicting exemplar EJ25 series piston and piston nomenclature.  Figure 2, *infra*, depicts a Subaru EJ25 series piston with damaged ringlands.

[6] EJ25 series engines range in SAE rated horsepower from approximately 260 to 310 depending on the variant.

[7] Certain EJ series engines sold in Japan had forged pistons.



**FIGURE 1**
**SUBARU EJ25 SERIES PISTON REMOVED FROM CLASS**
**ENGINE WITH NO DAMAGE TO RINGLANDS**

7.     The second major contributing cause of class engine failure is an inadequate PCV system that allows excessive engine crankcase oil vapors and other gases to be introduced into the engine combustion chambers thereby lowering the overall fuel/air octane mixture.  This event causes increased combustion forces acting on the piston through phenomena known as "preignition" and/or "detonation." Preignition and/or detonation are well-known causes of internal engine component damage particularly piston and piston ringland failure.[8]  *See* Figure 2 depicting class engine piston with damaged ringlands, *infra.*

---

[8] *See generally* https://en.wikipedia.org/wiki/Engine_knocking.  Lean fuel mapping of the engine management system is another cause of pre-ignition in class engines.

8.      Failure of class engines due to the Piston Ringland Defect results in sudden power loss and/or stalling that severely compromises the owner's ability to maintain vehicle control.  The defective class engine components and engine management system also causes sudden and catastrophic engine self-destruction and seizure.

9.      Class engine failures caused by the Piston Ringland Defect pose a serious safety issue while the vehicle is being operated since there is loss of engine power without warning and the loss of power-assisted steering and reduced braking caused by lack of engine vacuum if the engine stalls.  In class vehicles equipped with manual transmissions, the drive wheels will lock and cause loss of directional stability and steering if the engine stalls and the clutch is not immediately disengaged.

10.     The Owner's Manual and Warranty & Maintenance Booklet materials accompanying class vehicles do not contain any maintenance or service information for defective class engine pistons or piston ringlands.  A modern passenger vehicle internal combustion engine is reasonably expected by the defendants, the proposed class representatives and proposed class members to last the serviceable life of the vehicle that is in excess of 120,000 miles.[9]  Despite this, class engines in class vehicles often fail at less than 50% of their reasonably expected useful life.[10]

---

[9] The Owner's Manual and Warranty & Maintenance Booklet materials for class vehicles have maintenance schedules that extend to 120,000 miles. There is no scheduled maintenance or replacement recommended for class engine internal components at issue in this complaint.

[10] It is estimated by one Subaru WRX and WRX STi enthusiast website that 25 percent of all 2.5 liter STi engines experience premature ringland failure.  Individuals who own or have owned class vehicles also sustained diminution of the resale value of their class vehicles since knowledge of problems with class engines eventually became public information.  Premature class engine failures caused by the Piston Ringland Defect can cost as much as approximately $8,000.00 to $12,000.00 to remedy if a new engine block is required.



**FIGURE 2**
**SUBARU EJ25 SERIES PISTON REMOVED FROM CLASS**
**ENGINE WITH DAMAGED RINGLANDS**

## JURISDICTIONAL AND VENUE STATEMENT

11.    Diversity jurisdiction exists under 28 U.S.C. § 1332(a), (d) and 28 U.S.C. § 1367.  Class jurisdiction exists by virtue of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453 and 1711–1715, since there are in excess of 100,000 class members and the proposed class representatives and proposed class members' aggregate damages exceed $5,000,000.00, exclusive of interest and costs.  Minimal diversity exists between the parties with residency in different states.

12.    The defendants are persons under this jurisdiction's long-arm statute.  In the United States, SoA acts as the alter ego and/or agent of Subaru as well as the warrantor with respect to the class vehicles.  *In personam* jurisdiction exists over the defendants under this jurisdiction's so-called "long arm statute."  The defendants directly and through their agents regularly transact business and otherwise derive substantial revenue in this jurisdiction and throughout the entire United States.  SoA also maintains offices and facilities in the United States including a manufacturing plant in Illinois that has

constructed passenger automobiles for more than thirty years.[11]  Subaru corporate officers, engineers and other employees regularly communicate with and visit the SoA's corporate offices in New Jersey and the Illinois assembly plant.  The defendants also conduct continuous and systematic economic activities in this jurisdiction and throughout the United States.  The defendants intentionally and purposefully placed their vehicles and/or components in the stream of commerce in this jurisdiction and throughout the United States.  Subjecting the defendants to *in personam* jurisdiction in this jurisdiction does not violate the defendants' due process rights and comports with requirements of fair play and substantial justice.

13.    Venue is conferred by 28 U.S.C. § 1391 as the defendants regularly and purposefully conducted business in this judicial district and a substantial part of the events giving rise to the claim occurred in this judicial district.

## THE PARTIES

14.    Plaintiff Aquino is an adult individual who purchased a new 2018 WRX STi from an authorized Subaru dealer in October 2018.  This vehicle was purchased under both Aquino and his father's name.  Aquino resided in Illinois when he purchased his vehicle.  Aquino's class vehicle required premature replacement of the engine due to the Piston Ringland Defect at 64,640 miles in July 2021.  Although the majority of the engine repairs were paid for by SoA as a goodwill gesture, Aquino incurred incidental expenses.  Aquino also suffered diminution of the value of his vehicle as a result of class engine ringland failures becoming public knowledge.  This is particularly true since SoA publicized the fact that the pistons were strengthened in the 2019 WRX STi vehicles in an attempt to sell more vehicles.  As a result, potential and actual purchasers would not want to acquire earlier model year class vehicles that did not incorporate engines with stronger pistons.  Market forces are currently acting on this information to depress resale values for pre-2019 class vehicles.

---

[11] *See* http://subaru-sia.wixsite.com/Illinois (last checked February 12, 2018). "Subaru of Illinois Automotive, Inc. (SIA), a subsidiary of Subaru Corporation, is home of North American Subaru production. Models built at the Lafayette, Illinois plant include the Subaru Legacy, Subaru Outback and Subaru Impreza. In 2018, the Subaru Ascent will be added to SIA's production line. SIA employs over 5,600 Associates, and every Associate is committed to quality, safety and environmental stewardship."

15.     Plaintiff Crumpecker is an adult individual who purchased a new 2009 WRX from an authorized Subaru dealer in June 2009.  Crumpecker resides in Denver, Colorado.  Crumpecker's class vehicle required premature replacement of the engine due to the Piston Ringland Defect at 80,000 miles in April 2018.  Crumpecker spent more than $8,800.00 replacing the class engine together with other incidental expenses.

16.     Plaintiff Piperato is an adult individual who purchased a certified pre-owned 2016 WRX STi from an authorized California Subaru dealer in April 2019.  Piperato resided in California when he purchased his vehicle.  Piperato's class vehicle required premature replacement of the engine due to the Piston Ringland Defect at 78,000 miles in May 2021.  Piperato spent more than $13,000.00 replacing the class engine together with other incidental expenses.

17.     Plaintiff Tresco is an adult individual who purchased a certified pre-owned 2018 WRX STi from an authorized New York Subaru dealer in October 2020.  Tresco resided in Hyde Park, New York when he purchased his vehicle.  The engine in Tresco's class vehicle experienced ringlands failure at approximately 31,000 miles.  Tresco has been informed the cost to repair his engine will be in the range of $7,000.00 to $12,000.00.

18.     Defendant Subaru is a duly organized Japanese corporation with a principal place of business in the city of Tokyo, Tokyo prefecture, Japan.  Subaru designed, manufactured and tested the class engine and engine management system incorporated in class vehicles including but not limited to plaintiffs' respective vehicles.  Subaru drafted and published the Owner's Manual and Warranty & Maintenance Booklet materials that accompanied class vehicles and/or were published on the Internet.  Subaru is the parent company of SoA.

19.     Defendant SoA is a duly organized New Jersey corporation with a principal place of business located in Camden, New Jersey.  SoA manufactures, imports, distributes and/or sells Subaru motor vehicles including all class vehicles and also acts as the authorized representative of Subaru in the United States.

20.     SoA operates its national marketing, warranty, consumer relations and engineering offices from its New Jersey facility.  SoA also controls all other aspects of its United States activities from New Jersey including class vehicle importation.

21.     SoA sells and distributes vehicles manufactured by both Subaru and SoA throughout the United States via a network of over six hundred independent authorized dealerships.

22.     SoA drafted and published the Owner's Manual and Warranty & Maintenance Booklet materials that accompanied class vehicles and/or were published on the Internet.  SoA acted, and continues to act, as the warrantor of vehicles constructed by both defendants sold in the United States.

23.     At all relevant times, SoA acted as an authorized agent, representative, servant, employee and/or alter ego of Subaru performing activities concerning but not limited to advertising, marketing, warranties, warranty repairs, dissemination of technical information and monitoring the performance of Subaru vehicles in the United States, including substantial activities that occurred within this jurisdiction. Subaru and SoA also share upper echelon corporate managers who operate in dual leadership capacities for each business entity.  There is sufficient overlapping and intertwining of the activities of Subaru and SoA in the United States that the principles of corporate separateness should not be applied.

## CLASS ACTION ALLEGATIONS

24.     The proposed class representatives bring this proposed class action pursuant to Fed. R. Civ. P. 23(b)(1), 23(b)(2) and 23(b)(3) on behalf of themselves and all members of the proposed class and subclasses (or any other class authorized by the Court) defined as follows:

> **Illinois Subclass:** All owners and former owners, lessees and former lessees of class vehicles who purchased or leased their class vehicles in the State of Illinois and sustained monetary loss and/or diminution of class vehicles' value resulting from the defendants' conduct as described in this complaint (hereinafter "proposed Illinois subclass members").  Excluded from the proposed class are the defendants together with their officers, directors, employees, assigns, and successors, the Court, Court staff, defendants' counsel and all respective immediate family members of the excluded entities described above.  Also excluded from the proposed class are any and all claims involving personal injury.

**Colorado Subclass:** All owners and former owners, lessees and former lessees of class vehicles who purchased or leased their class vehicles' in the State of Colorado and sustained monetary loss and/or diminution of class vehicles value resulting from the defendants' conduct as described in this complaint (hereinafter "proposed Colorado subclass members"). Excluded from the proposed class are the defendants together with their officers, directors, employees, assigns, and successors, the Court, Court staff, defendants' counsel and all respective immediate family members of the excluded entities described above. Also excluded from the proposed class are any and all claims involving personal injury.

**California Subclass:** All owners and former owners, lessees and former lessees of class vehicles who purchased or leased their class vehicles in the State of California and sustained monetary loss and/or diminution of class vehicles' value resulting from the defendants' conduct as described in this complaint (hereinafter "proposed California subclass members"). Excluded from the proposed class are the defendants together with their officers, directors, employees, assigns, and successors, the Court, Court staff, defendants' counsel and all respective immediate family members of the excluded entities described above. Also excluded from the proposed class are any and all claims involving personal injury.

**New York Subclass:** All owners and former owners, lessees and former lessees of class vehicles who purchased or leased their class vehicles in the State of New York and sustained monetary loss and/or diminution of class vehicles' value resulting from the defendants' conduct as described in this complaint (hereinafter "proposed New York subclass members"). Excluded from the proposed class are the defendants together with their officers, directors, employees, assigns, and successors, the Court, Court staff, defendants' counsel and all respective immediate family members of the excluded entities described above. Also excluded from the proposed class are any and all claims involving personal injury.

**Numerosity of the Class: Fed. R. Civ. P 23(a)(1).**

25.     The proposed class is so numerous that individual joinder of all potential members is impracticable under Fed. R. Civ. P. 19 or 20. It is estimated there are in excess of approximately 100,000 class vehicles imported into and/or manufactured in the United States. Although the number, location and identity of all proposed class members cannot be presently ascertained, this information is obtainable through discovery from the defendants.

**Existence of Common Questions of Law and Fact: Fed. R. Civ. P. 23(a)(2) and 23(b)(3).**

26.     Common questions of law and fact exist as to all members of the proposed class and predominate any and all issues of law and fact affecting individual members of the proposed class. These issues include but are not limited to:

(a)     Whether class engines incorporated the Piston Ringland Defect and were defective in materials, workmanship, manufacture, and/or design, so as to subject the engine to premature failure;

(b)     Whether class engines sustained damage directly or indirectly by premature failure of the internal components due to the Piston Ringland Defect;

(c)     Whether class vehicles were sold with an Owner's Manual and Warranty & Maintenance Booklet materials that incorporated incorrect inspection, service and scheduled component replacement intervals for the engine;

(d)     Whether class vehicles were sold with an Owner's Manual that incorporated incorrect vehicle operation instructions;

(e)     Whether the defendants intentionally or negligently misrepresented material facts concerning the characteristics of class engines;

(f)     Whether proposed class members are entitled to injunctive relief pursuant to Rule 23(b)(2);

(g)     Whether the Court should establish a constructive trust funded by the benefits conferred upon the defendants by their wrongful and unlawful conduct; and,

(h)     Whether proposed class members are able to economically afford individual litigation against the defendants.

**Typicality of Claims or Defenses of a Definable Class: Fed. R. Civ. P. 23(a)(3).**

27.     The proposed class representatives' claims and defenses are typical of the claims and defenses of proposed class members.  Class claims arise out of ownership or lease of class vehicles as defined in ¶ 1.  The defendants in this proposed action have no claims or defenses unique to or different from the proposed class representatives.

**Adequate Representation: Fed. R. Civ. P. 23(a)(4).**

28.     The proposed class representatives currently have no conflicting interests with any other proposed class member.  The proposed class representatives will fairly and adequately protect the interests of the proposed subclasses.  The proposed class representatives' claims and the proposed class members' claims are so interrelated that the interests of the proposed class members will be fairly and adequately protected in their absence.  Proposed class counsel have, in aggregate, over 60 years of experience concentrating in complex automotive products liability, and both have been appointed class counsel and members of executive committees in other automotive class action proceedings.

**Superiority of a Class Action: Fed. R. Civ. P. 23(b)(3).**

29.     Maintenance of a class action in one court is the most economical procedural device to litigate claims for class vehicles owners and the defendants.  Prosecution of separate actions by individual members of the class could create risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class as recognized by Fed. R. Civ. P. 23(b)(1)(A).

30.     Prosecution of separate actions by individual members of the class could create risk of adjudications with respect to individual members of the class which would, as a practical matter, be dispositive of the interests of the other members of the class who are not parties to the adjudications or substantially impair or impede their ability to protect their interests as recognized by Fed. R. Civ. P. 23(b)(1)(B).

31.     There is a substantial likelihood that the defendants will oppose this class action and will further act or refuse to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole impractical as recognized by Fed. R. Civ. P. 23(b)(2).

32.    Questions of law and fact common to members of the class predominate over any questions affecting any individual members and a class action is superior to other available methods for the fair and efficient adjudication of the controversy as recognized by Fed. R. Civ. P. 23(b)(3).

**DEFENDANTS' KNOWLEDGE OF THE CLASS ENGINE DEFECT**

**Complaints to The National Highway Traffic Safety Administration**

33.    The National Highway Traffic Safety Administration ("NHTSA") Office of Defects Investigation ("ODI") maintains a database of complaints filed by consumers concerning defects in their respective motor vehicles and vehicle equipment monitored by defendants' quality control personnel. The NHTSA-ODI website allows consumers to "identify and report problems you might be having with your vehicle, tires, equipment or car seats." *See* https://www-odi.nhtsa.dot.gov/ivoq/ (last accessed January 2022) ("If you think you have a problem, we want you to tell us about it."). A sampling of the numerous complaints on record submitted by owners of class vehicles and reported to the NHTSA demonstrates that the class vehicle engine defect is widespread and constitutes an unreasonable safety hazard:[12]

| | |
|---|---|
| **Date Complaint Filed:** 6/15/2009 | **Date of Incident:** 01/29/2009 |
| **Component(s):** ENGINE AND ENGINE COOLING | **NHTSA ID Number:** 10273870 |
| **Consumer Location:** ORLANDO, FL | |

**All Products Associated with this Complaint**

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| SUBARU | IMPREZA STI | 2008 |

| **Details** | **0 Available Documents** |
|---|---|

| **Crash:** No | **Fire:** No | **Number of Injuries:** 0 | **Number of Deaths:** 0 |
|---|---|---|---|

**Manufacturer:** Subaru of America, Inc.

**Vehicle Identification No. (VIN):** JF1GR896X8L...

---

[12] NHTSA-ODI does not share complainants' personal information with the general public. A complaint is only added to a public NHTSA database after removal of all information from complaint fields that personally identify a complainant. NHTSA-ODI complaints are made by individuals who must identify themselves, enter detailed multi-page contact information and vehicle information (including an accurate VIN) before the complaints are reviewed and analyzed by NHTSA. There are penalties for submitting false statements.

**SUMMARY:**

I OWN A 2008 STI AND HAVE JUST UNDER 6,000 MILES ON THE ODOMETER. I BOUGHT THE VEHICLE
NEW WITH JUST UNDER 200 MILES ON IT IN DECEMBER OF 2008. IN JANUARY OF 2009, I BEGAN TO
SEE WHITE SMOKE COMING OUT OF MY EXHAUST ON STARTUP. I HAD JUST OVER 1,200 MILES AT
THE TIME. MY ENGINE FAILED SUFFERED A FAILURE AT JUST UNDER 2,000 MILES. SUBARU
REPLACED THE ENGINE UNDER WARRANTY AND SENT ME ON MY WAY. FAST FORWARD TO JUNE OF
2009 AND NOW I'M BEING TOLD MY ENGINE HAS AGAIN FAILED DUE TO THE PISTON RINGLANDS
CRACKING AND BREAKING OFF. THIS IS A WIDELY REPORTED ISSUE FROM 2008 STI OWNERS AND
WOULD SEEM TO INDICATE A POSSIBLE DEFECT IN THE PISTON DESIGN. *TR

*   *   *

**Date Complaint Filed:** 8/03/2011       **Date of Incident:** 6/10/2011

**Component(s):** ENGINE AND ENGINE COOLING    **NHTSA ID Number:** 10416892

**Consumer Location:** JACKSONVILLE, FL

**All Products Associated with this Complaint**

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| SUBARU | IMPREZA STI | 2008 |

**Details**                **0 Available Documents**

**Crash:** No  **Fire:** No  **Number of Injuries:** 0  **Number of Deaths:** 0

**Manufacturer:** Subaru of America, Inc.

**Vehicle Identification No. (VIN):** Not Available

**SUMMARY:**

THE CAR WAS SMOKING ON COLD STARTS ONLY. PISTON # 4 RINGLAND CRACKED AT 33,000 MILES
ON THE CAR. SHORTBLOCK HAD TO BE REPLACED. *KB

*   *   *

**Date Complaint Filed:** 07/28/2010      **Date of Incident:** 05/05/2008

**Component(s):** ENGINE AND ENGINE COOLING    **NHTSA ID Number:** 10345791

**Consumer Location:** CLEVELAND, MO

**All Products Associated with this Complaint**

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| SUBARU | IMPREZA STI | 2008 |

**Details**                **0 Available Documents**[13]

**Crash:** No  **Fire:** No  **Number of Injuries:** 0  **Number of Deaths:** 0

**Manufacturer:** Subaru of America, Inc.

**Details**                **0 Available Documents**

**Crash:** No  **Fire:** No  **Number of Injuries:** 0  **Number of Deaths:** 0

**Manufacturer:** Subaru of America, Inc.

**Vehicle Identification No. (VIN):** JF1GR89678L...

---

**SUMMARY:**

THE SUBARU STI SERIES KNOWN AS THE GR IS PRONE TO BREAKING PISTON RINGLANDS IF DETONATION EVER OCCURS, WHICH HAPPENS EASILY ON THIS ENGINE, WHICH IS NOW TUNED FOR MORE POWER YET FEWER EMISSIONS. THE RINGLAND BREAKAGE RESULTS IN POWER LOSS AND EXTREME OIL CONSUMPTION DUE TO BLOWBY AND IF NOT NOTICED IN TIME WILL LEAD TO ENGINE SEIZING. IF DRIVEN AGGRESSIVELY ENOUGH, THIS SEIZING DUE TO OIL LOSS CAN HAPPEN IN AS FEW AS 10 MINUTES. IT IS ALSO POSSIBLE FOR THE RINGLAND BREAKAGE TO BE SO SEVERE THAT THE ENGINE SPRAY-COATS A LARGE SECTION OF ROADWAY, MAKING FOR THE EQUIVALENT OF A BLACK ICE CONDITION FOR OTHER TRAFFIC. A POTENTIAL SAFETY HAZARD I'M NOT AWARE OF HAPPENING WITH THIS VEHICLE YET BUT STILL POSSIBLE IS NOT ONLY THE LOSS OF CONTROL SHOULD THE ENGINE SEIZE AND THE DRIVER NOT BE MECHANICALLY SAVVY ENOUGH TO KNOW DISENGAGING THE CLUTCH WILL GIVE HIM BACK SOME CONTROL AND REDUCE THE CHANCES OF BEING REAR-ENDED WHEN THE CAR TRIES TO STOP VERY RAPIDLY WITHOUT THE BRAKES AND THEREFORE THE BRAKELIGHTS BEING USED. DESPITE THE LARGE NUMBERS OF THESE FAILURES BEING REPORTED, SUBARU DENIES A PROBLEM EXISTS. I HAVE ALL OF THE PARTS FROM MY ORIGINAL FAILED ENGINE WHICH ALSO SHOWED OTHER ASSEMBLY PROBLEMS. I WILL HAVE THE PIECES OF MY 2ND ENGINE WHEN I PICK THE CAR UP SOON. MANY MECHANICS ARE OF THE OPINION MANY OF THESE ENGINES HAVE BROKEN RINGLANDS AND THE OWNERS DON'T KNOW IT. WE ALSO FEEL THE PROBLEM IS AGGRESSIVE OEM TUNING WHILE USING WEAK CAST PISTONS AS IT'S DETONATION, EVEN A SINGLE EVENT, THAT BREAKS THEM. AND IT'S INCONCEIVABLE AN ENGINE WITH THIS DAMAGE WOULD PASS AN EPA EMISSIONS TEST. *TR

*       *       *

**Date Complaint Filed:** 12/09/2009                                                   **Date of Incident:** 04/15/2009

**Component(s):** ENGINE AND ENGINE COOLING                          **NHTSA ID Number:** 10295147

**Consumer Location:** UNCASVILLE, CT

**All Products Associated with this Complaint**

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| SUBARU | IMPREZA STI | 2008 |

**Details**                                                                             **0 Available Documents**

**Crash:** No          **Fire:** No          **Number of Injuries:** 0          **Number of Deaths:** 0

**Manufacturer:** Subaru of America, Inc.

**Vehicle Identification No. (VIN):** JF1GR896228L...

MY PISTON #4 HAD RINGLAND FAILURE OF BOTH RINGLANDS ON SAID PISTON IN MY 2008 SUBARU WRX STI. *TR

*       *       *

**Date Complaint Filed:** 03/04/2009                                                   **Date of Incident:** 01/20/2009

**Component(s):** ENGINE AND ENGINE COOLING                          **NHTSA ID Number:** 10260756

**Consumer Location:** BAYVILLE, NJ

**All Products Associated with this Complaint**

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| SUBARU | IMPREZA | 2008 |

**Details**                                                                             **0 Available Documents**

**Crash:** No          **Fire:** No          **Number of Injuries:** 0          **Number of Deaths:** 0

**Manufacturer:** Subaru of America, Inc.

**Vehicle Identification No. (VIN):** JF1GR896X8L...

**SUMMARY:**

SMOKE COMING FROM THE EXHAUST, ROUGH IDLE, OIL CONSUMPTION WERE MY FIRST SIGNS.

15

THE DEALER WOULDN'T DO A COMPRESSION CHECK ON THE MOTOR SINCE THERE WAS NO CHECK ENGINE LIGHT ON, SO I HAD TO PAY WITH MY OWN CASH AND TAKE IT TO A PRIVATE SHOP AND FOUND OUT THAT IN FACT CYLINDER #2 HAD A SHOT RINGLAND. THEY REPLACED THE PISTON BUT THE MOTOR DOESN'T SEEM TO BE RIGHT STILL SINCE I HAVE A CAR THAT WAS INVOLVED IN A "STOP SALE" THAT INVOLVED SOME ENGINES HAVING SOME DEBRIS IN THE MOTOR AND WAS CAUSING KNOCKING AND THROWING BEARINGS. SUBARU SHOULD HAVE REPLACED THE SHORT BLOCK BUT DIDN'T. *TR

*     *     *

**Date Complaint Filed:** 10/28/2009                                          **Date of Incident:** 10/01/2009

**Component(s):** ENGINE AND ENGINE COOLING                        **NHTSA ID Number:** 10290169

**Consumer Location:** IRVINE, CA

**All Products Associated with this Complaint**

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| SUBARU | IMPREZA STI | 2008 |

**Details**                                                                              **0 Available Documents**

**Crash:** No          **Fire:** No          **Number of Injuries:** 0          **Number of Deaths:** 0

**Manufacturer:** Subaru of America, Inc.

**Vehicle Identification No. (VIN):** JF1GR89618L...

**SUMMARY:**

AT 15,500 MILES, MY 2008 SUBARU STI EXPERIENCED A RINGLAND FAILURE ON THE #4 PISTON. THIS WAS VERIFIED VIA A COMPRESSION/LEAKDOWN TEST. A LONGBLOCK REPLACEMENT WAS APPROVED BY SUBARU OF AMERICA. MY MAIN CONCERN, WITHOUT TAKING ENGINE COMPONENTS OFF, THIS MILD CRACKED RINGLAND WAS ALMOST UN-DETECTABLE. THERE WAS VERY LITTLE DEGRADATION IN PERFORMANCE, FOR RUNNING ON 3.5 OF 4 CYLINDERS. IN ADDITION, MY MECHANIC ALSO FOUND FUEL IN THE OIL PAN. *TR

*     *     *

**Date Complaint Filed:** 03/04/2009                                          **Date of Incident:** 03/01/2009

**Component(s):** POWER TRAIN                                              **NHTSA ID Number:** 10260749

**Consumer Location:** UNKNOWN

**Products Associated with this Complaint**

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| SUBARU | IMPREZA | 2008 |

**Details**                                                                              **0 Available Documents**

**Crash:** No          **Fire:** No          **Number of Injuries:** 0          **Number of Deaths:** 0

**Manufacturer:** Subaru of America, Inc.

**Vehicle Identification No. (VIN):** Not Available

**SUMMARY:**

ENGINE STARTED STUTTERING AND WOULD ALMOST DIE WHEN TRYING TO ACCELERATE, THEN STARTED BLOWING SMOKE OUT TALE PIPE. CAR HAD 3400 MILES. DEALER DIAGNOSED AS RINGLAND/PISTON FAILURE. *TR

*     *     *

**Date Complaint Filed:** 11/03/2009                                          **Date of Incident:** 10/17/2009

**Component(s):** ENGINE AND COOLING                                    **NHTSA ID Number:** 10290784

16

**Consumer Location:** WILLIAMSPORT, PA

**All Products Associated with this Complaint**

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| SUBARU | IMPREZA STI | 2009 |

**Details**                                                                      **0 Available Documents**

**Crash:** No          **Fire:** No          **Number of Injuries:** 0          **Number of Deaths:** 0

**Manufacturer:** Subaru of America, Inc.

**Vehicle Identification No. (VIN):** JF1GR89609L...

**SUMMARY:**

PISTON RINGLAND FAILURE AFTER 10K MILES ON BRAND NEW 2009 SUBARU IMPREZA STI. ENTIRE
ENGINE BEING REPLACED BY SUBARU UNDER WARRANTY. *TR

        \*        \*        \*

**Date Complaint Filed:** 07/22/2010          **Date of Incident:** 05/14/2010

**Component(s):** ENGINE          **NHTSA ID Number:** 10344766

**Consumer Location:** FALLS CHURCH, VA

**All Products Associated with this Complaint**

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| SUBARU | IMPREZZA | 2010 |

**Details**                                                                      **0 Available Documents**

**Crash:** No          **Fire:** No          **Number of Injuries:** 0          **Number of Deaths:** 0

**Manufacturer:** Subaru of America, Inc.

**Vehicle Identification No. (VIN):** JF1GR8H69AL...

**SUMMARY:**

BEFORE THE FAILURE WHITE SMOKE CAME OUT THE TAILPIPE AND THE ENGINE WAS HESITATING.
PISTON #4 HAD A FAILED RINGLAND CAUSING THE ENGINE TO FAIL. TO CORRECT THE FAILURE THE
ENGINE HAD TO BE TAKEN APART AT THE DEALER AND HAVE NEW PARTS INSTALLED. THE CAR WAS
OUT OF MY POSSESSION FOR TWO WEEKS. THE CAR HAD ONLY ~8000 MILES ON IT AND IT
APPEARS TO BE A VERY COMMON PROBLEM ON 2008-2010+ SUBARU IMPREZA STI'S. *TR

        \*        \*        \*

**Date Complaint Filed:** 07/25/2010          **Date of Incident:** 02/22/2010

**Component(s):** ENGINE          **NHTSA ID Number:** 10345175

**Consumer Location:** WAPPINGER FALLS CHURCH, NY

**All Products Associated with this Complaint**

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| SUBARU | IMPREZZA STI | 2008 |

**Details**                                                                      **0 Available Documents**

**Crash:** No          **Fire:** No          **Number of Injuries:** 0          **Number of Deaths:** 0

**Manufacturer:** Subaru of America, Inc.

**Vehicle Identification No. (VIN):** JF1GR89698L...

**SUMMARY:**

IN FEBRUARY 2010, I PURCHASED A 2008 SUBARU IMPREZA STI FROM A SUBARU DEALERSHIP WITH FACTORY WARRANTY AND I PURCHASED AN EXTENDED FACTORY WARRANTY. ONCE I BEGAN GETTING USED TO THE CAR I NOTICED THERE WAS AN ISSUE. WHEN I WOULD ACCELERATE THERE WOULD BE CONSTANT "DEAD SPOTS" IN THE POWER BAND THROUGH OUT THE RPM RANGE. AFTER MULTIPLE TIMES OF BRING THE CAR IN FOR REPAIR THE DEALERSHIP COULD NOT FIGURE OUT THE PROBLEM. BUT I BEING VERY CAR SOCIAL ON THE INTERNET I FOUND THAT MANY AND I MEAN MANY PEOPLE WERE HAVING THE SAME ISSUE WITH THE ACCELERATION OF THE VEHICLE AND SOME HAD COME TO FIND OUT THAT THERE MOTORS PISTONS "RINGLANDS" WERE CRACKED AND THE CYLINDER WAS LOSING COMPRESSION. AFTER MULTIPLE SERVICES AS EXPLAINED BEFORE SUBARU FINALLY FOUND THAT MY MOTOR ALSO HAD A "RINGLAND" FAILURE! THE DEALERSHIP REPLACED THE BOTTOM END OF THE MOTOR AND I RECEIVED MY CAR BACK. IT RAN GREAT I KNEW THAT'S HOW IT SHOULD HAVE FELT IN THE FIRST PLACE.BUT NOW AROUND 3000 MILES LATER THE SAME ISSUE IS BACK AGAIN! IT IS MY WORRY THAT I GO TO PULL OUT OF A SIDE ROAD EXPECTING THE CAR TO BE ABLE TO MAKE IT OUT, AND I GO, BUT THE CAR IS BOGGING DOWN AND IS STRUGGLING TO GET UP TO SPEED AND THE OTHER CAR HAS TO JAM ON THERE BREAKS OR THEY END OF REAR ENDING ME CAUSING AN EVEN BIGGER PROBLEM.THE SAME COULD BE SAID FOR EXIT ENTRANCES ONTO HIGHWAYS. AFTER RESEARCHING ON THE INTERNET I COME TO FIND OUT THAT THIS PROBLEM HAS BEEN PLAGUING SUBARU OWNERS FOR YEARS NOW AND SUBARU HAS DONE NOTHING TO FIX THIS ISSUE. AND THIS DOES NOT ONLY EFFECT SUBARU IMPREZA STI OWNERS ONLY BUT CAN ALSO BE FOUND IN THE MODELS SUCH AS THE WRX, OR OUTBACKS DE TO SIMILAR ENGINE DESIGNS. I BELIEVE SUBARU IS TURNING A BLIND EYE TO HOW MUCH OF AND ISSUE THIS IS AND HOW BIG AN ISSUE THIS COULD CAUSE. I READ THAT MOST CAR COMPANIES WHEN THEY HAVE A WIDESPREAD ISSUE AS EXPLAINED THEY COMPARE THE COST OF A RECALL TO COST OF PER CAR ISSUES AND THEY GO WITH THE CHEAPER BUT THIS IS A MAJOR PROBLEM NEEDS RESOLUTION. *TR

*       *       *

**Redesign of Class Engine Components and Management System**

34.    EJ255, EJ257 and FA engines have been subject to constant upgrades in performance since their introduction without corresponding modifications to engines internal components to handle the more than considerable horsepower and torque increases, creating a more powerful engine output than the materials were originally meant to handle.  As a consequence of using unmodified stock materials from the standard 2.5 liter base engine in WRX and WRX STi in more powerful high output applications, class engines cannot and do not tolerate these performance increases without predictable premature internal component failure at the engine piston ringlands.

35.    Predecessor EJ255, EJ257 and FA engines (and other Subaru engines including the 2.0 liter WRX and STi engines) also experienced premature piston ringland failures.  In an effort to solve this issue, which was well known to Subaru, without spending hundreds of millions of dollars to redesign and retool engine production, the defendants experimented with different PCV system configurations. Other attempted modifications included changes to engine management system mapping in an attempt

18

to reduce engine knock that increases forces acting on the piston and ringlands. These attempted modifications demonstrate that there was a continuing problem with the EJ engines since their introduction in early 2000 and FA class engines introduced in 2015 that has yet to be fully resolved.

36.    On May 24, 2018, the defendants announced in their press release and consumer advertising that the 2019 model year WRX STi was "[p]owered by a 2.5-liter turbocharged BOXER engine, the WRX STI increases horsepower to 310 with the help of a new air intake and high flow performance exhaust. A **retuned ECU** and **stronger pistons** also contribute to the increased engine performance." (emphasis added).[14] This admission confirms that the WRX and WRX STi class engines had existing insufficient engine management systems and insufficient strength pistons because a mere 1.6% increase in engine horse power wouldn't require higher strength pistons given dynamic factor of safety overload design considerations. Some commentators on Subaru WRX and WRX STi enthusiast websites have modified the Subaru advertising slogan "Love. It's what makes a Subaru, a Subaru" to "Ringland failures. It's what makes a Subaru[,] a Subaru."

37.    Governmental regulations exacerbated class engine durability and performance issues with increasingly difficult-to-satisfy EPA passenger vehicle emission standards and fuel economy requirements. In response, the defendants adjusted class engine management systems to run leaner air-fuel mixtures and modified other engine operation parameters that further strained the already overstressed internal engine components of the class vehicles including the piston ringland load bearing surfaces.

38.    Prior to manufacturing and then distributing a new part, defendants perform substantial field inspections, testing and quality review of vehicles in service to determine the root cause and diagnosis of a particular problem. Following this analysis, draft and final specifications are prepared and sent out to bid. This protocol takes at least twelve months of lead-time under normal circumstances.

---

[14] The referenced Subaru press release accompanies this complaint as Exhibit A.

The defendants, therefore, knew or should have known no later than early 2008 that the engines in class vehicles were defective and would prematurely fail.

39.    For example, in SoA's New Jersey facility, a Product Safety Manager is assigned to various components including the defective components discussed in this complaint.  The Product Safety Manager's responsibilities include monitoring field information, NHTSA and DOT information to "quickly identify and isolate potential Subaru 'safety' issues and assist in determining Product Safety Escalation and taking field action" on any issues identified.  SoA also employs Field Service Engineers "to proactively monitor and investigate the product quality and effectiveness . . ." and assist retailers with difficult diagnosis and repairs, "lead[ing] root cause field investigations."  In addition, SoA maintains a Quality Assurance Group in New Jersey which seeks to "summarize customer feedback from Customer Retailer Service (CRS) data, warranty claims" and engage in "data mining and extracting [of] information to identify trends for seasonality, location, type of defects and attributes and a Field Quality Assurance Data Specialist to support analyzing of claims, quality monitoring and creation of quality monitoring reports and field reports. All of these processes were intended to and, in fact, did, result in early notice to defendants of the Piston Ringland Defect.

**Other Sources of Defendants' Knowledge of Class Engine Defects**

40.    In addition to the above sources, the defendants also would have acquired knowledge no later than early 2008 that class engines were defective due to the Piston Ringland Defect through: (1) Monitoring of warranty claims where the original class engine was replaced under the new car warranty as authorized by SoA and verified by subsequent parts audits and computerized vehicle repair history; (2) Teardowns and inspections of defective class engines replaced under warranty to determine its failure mode (for reimbursement to the various defendant entities by the component part manufacturer) and analysis of whether to modify the existing engine materials, workmanship, manufacture, and/or design; (3) Sales and distribution of replacement engines to authorized Subaru vehicle dealerships and independent repair facilities; (4) Internet communications on Subaru vehicle enthusiast and owners'

websites[15] and other consumer forums monitored by the defendants; (5) Information concerning revisions made to subsequent engine specifications and materials; (6) Long term durability and performance testing conducted in actual operating environments in the United States; and, (7) Communications with class vehicles owners who experienced premature engine failure.

## TOLLING OF THE LIMITATIONS PERIOD

41.    The fraudulent conduct of the defendants tolls any applicable statutes of limitations since the fraudulent misrepresentations concerning the true cause of the Piston Ringland Defect failures in class vehicles was an inherently unknowable fact to consumers given the technical nature of the class vehicles materials, workmanship, manufacture, and/or design defects.

42.    Class vehicle owners do not possess the requisite technical skills in automotive engineering to discern the materials, workmanship, manufacture, and/or design defects in their vehicles or the requisite technical skills to surmise the proper vehicle maintenance, maintenance intervals and scheduled replacement of critical systems for class vehicles.

43.    The statutory and case law of Illinois, Colorado, California and New York together with the doctrine of equitable tolling and/or the discovery rule, toll the applicable statutes of limitations for all class vehicles because of the defendants' fraudulent conduct, including but not limited to concealment of class vehicles defects and omission of material facts.

44.    Proposed class members relied on the defendants' fraudulent misrepresentations concerning the cause of class engine failures and therefore delayed bringing suit against the defendants. These misrepresentations relate to the fact that, in reality, class engines were failing due to materials,

---

[15] One such Internet site managed by and for Subaru WRX and STi enthusiasts is North American Subaru Impreza Owners Club.  *See* forum entitled "How to Avoid Blown Ringlands in your Turbo Subaru." This forum has over 18,000 views (last checked February 8, 2022) and can accessed here: https://forums.nasioc.com/forums/showthread.php?t=2732312&highlight=ringlands.  Another article at this site entitled "EJ255 / EJ257 Ringland Failure Article" (last checked February 8, 2022) is at: https://forums.nasioc.com/forums/showthread.php?t=2850139&highlight=ringlands.

workmanship, manufacture, or design defects. The defendants, however, fraudulently attributed the failings of class vehicles engines to other factors and/or exculpating conditions for which the defendants had no responsibility.

45. The defendants are estopped from asserting that statutes of limitations were running for the duration of time class members relied on the defendants' fraudulent representations.

46. The defendants are equitably estopped from asserting the statutes of limitations have run against the claims of class members.

## FURTHER ALLEGATIONS

47. The defendants fraudulently, intentionally, negligently and/or recklessly concealed from the proposed class representatives and proposed class members the Piston Ringland Defect in class engines even though the defendants knew or should have known of design, materials and manufacturing defects in class vehicles due to defendants' testing of class engines and other activities.

48. The defendants had actual knowledge that the Piston Ringland Defect was causing extensive irreversible premature performance degradation in class engines shortly after production of class vehicles commenced. The defendants engaged in extensive field research and quality investigations and analysis before revising the specifications for the original defective engine prior to 2008, rebidding the new engine components for production and manufacturing and distributing the upgraded engine in or about 2008. In addition, defendants have been, and continue to be, under a legal obligation pursuant to federal law to monitor defects that can cause a safety issue and report them within five (5) days of learning of them. The defendants therefore assiduously monitor the NHTSA–ODI website and the complaints filed therein in order to comply with their reporting obligations under federal law.

49. The defendants failed to inform class vehicle owners and lessees prior to purchase or lease or during the express warranty period that the engine in class vehicles was defective as a result of the Piston Ringland Defect and would fail shortly after the express warranty period expired. The

defendants misrepresented by affirmative conduct and/or by omission and/or by fraudulent concealment the existence of the Piston Ringland Defect in class engines.

50.    The defendants also failed to inform class vehicles owners at the time of purchase that the engine in their class vehicles had been inadequately tested prior to placing the car in production and the time of vehicle sale.

51.    The defendants also failed to inform class vehicle owners of the Piston Ringland Defect that existed in engine materials, workmanship, manufacture, and/or design while the class vehicles were within the durational limitation of the express warranty period, including the powertrain limited warranty.[16] Specifically covered by this powertrain limited warranty were the engine, engine block and all internal engine components.  This warranty promised to repair or replace covered defective class engine components arising out of defects in materials and/or workmanship for a period of 5 years or 60,000 miles, whichever occurs first for non-commercial purchasers from the date the vehicle was delivered to the first retail purchaser.

52.    The defendants knew or should have known in early 2008 (the date indicative of a design and/or manufacture change) that class engines were experiencing premature engine failures as a result of the Piston Ringland Defect.  Despite this knowledge, the defendants continued to sell class vehicles with an engine that was defective.  This knowledge is imputed to all defendants because SoA was monitoring warranty claims and class vehicles performance in the United States, and reporting back to its parent company located in Japan.

---

[16] Class vehicles were accompanied by a basic warranty of "3 years or 36,000 miles, whichever comes first."   Class engines were covered by the Powertrain Limited Warranty that promised "any repairs needed to correct defects in "material or workmanship" for "5 years or 60,000 miles, whichever comes first" to the "engine block and all internal parts ...  These warranties are made by Subaru of America, Inc. ... "

53.     Through no fault of their own, the proposed class representatives and proposed class members did not possess sufficient technical expertise to recognize symptoms of impending engine failure.  This information, however, was well known to the defendants, but not revealed.

54.     The proposed class representatives relied upon material misrepresentations, fraudulent statements and/or material omissions of employees and agents of the defendants at the time of purchase, including but not limited to the useful and expected life of the engines incorporated in class vehicles and the recommended class vehicles maintenance program.

55.     The defendants' misrepresentations, omissions and fraudulent statements were received by the proposed class representatives and proposed class members prior to and at the point of their class vehicles purchase.  These representations, omissions and fraudulent statements were made by Subaru vehicle dealers referencing publications concerning class vehicles including the Owner's Manual and Warranty & Maintenance Booklet materials.  The representations created a reasonable belief that the useful life expectancy of the engine in the class vehicles without a major failure was in excess of 120,000 miles.  These representations specifically related that the class engine's piston maintenance consisted of following instructions for recommended engine oil and change intervals.

56.     The defendants actively concealed the true reasonably expected durational life of the class engine's pistons from the proposed class representatives and all class vehicles purchasers.  The defendants intentionally failed to inform class vehicles purchasers that class vehicles incorporated the Piston Ringland Defect that would prematurely fail within the reasonably expected durational operating period.

57.     The defendants intentionally failed to inform class vehicles purchasers or lessees that the class engine incorporated in class vehicles results in higher operational costs than alternative conventional combustion engines or other competitive technology because the class engine prematurely fails within the reasonably expected useful life of a passenger car/engine as a result of the Piston Ringland Defect.

58.    The defendants actively and fraudulently concealed the existence of the engine defects (including defects covered under class vehicles warranties concerning materials and workmanship) and that the Owner's Manual and Warranty & Maintenance Booklet accompanying class vehicles incorporated improper maintenance recommendations and maintenance intervals including engine piston/engine replacement.

59.    The proposed class representatives and class members did not learn their class engines were defective until after their respective engines failed.

60.    The defendants' customer service telephone representatives made false and fraudulent representations to class members as to the cause and existence of defects in class vehicles although the service representatives received hundreds of consumer complaints that engines in class vehicles prematurely failed as a result of the Piston Ringland Defect.  The defendants' employees falsely represented certain pretexts for which the defendants were not responsible as the basis for the failures that were in fact caused by an otherwise warranted material defect in the engines.  They also falsely stated that defendants were not responsible for the resulting class vehicles engine failures and/or denied the existence of the known class vehicles defects.

61.    Authorized Subaru dealers (who also had a vested financial interest in concealing and suppressing the actual cause of class vehicles engine failures) improperly blamed premature engine failures on certain conditions for which the defendants would not be responsible and/or denied the existence of the Piston Ringland Defect in the engine.

62.    Before sales of class vehicles commenced in the United States, the defendants had actual knowledge, constructive knowledge and/or should have known upon proper inquiry and testing that class vehicles were defective with respect to their engine, and that the class engine suffered from extensive irreversible premature performance degradation during the warranty period caused by the Piston Ringland Defect and did not have a normal and/or reasonable useful life.  This information was technical in nature, proprietary and not known by the ordinary consumer or the public, including the proposed

class representatives and proposed class members.  The proposed class representatives and proposed class members were ignorant of this technical information through no fault of their own.

63.    The defendants acted to conceal the Piston Ringland Defect during the warranty period so that repair costs would be shifted to the proposed class representatives and proposed class members once the warranty expired and the class engine prematurely failed.

64.    The defendants' knowledge of class vehicles' Piston Ringland Defect was derived from warranty claims, field inspections, quality assurance engineer analysis, customer complaints and monitoring of performance of class vehicles by SoA quality assurance employees.  Additionally, the number of replacement engines and subsequent necessary engine revisions would have placed the defendants on notice of these engine defects.  The defendants elected to place into the stream of commerce class vehicles that they knew would be adversely affected by the failure to adequately design and manufacture the class engine.

65.    Additional information supporting allegations of fraud and fraudulent conduct is in the control of the defendants.  This information includes but is not limited to technical root cause analyses, communications with class vehicles owners, remedial measures, warranty claims and internal corporate communications concerning how to deal with consumers who claim their class engines' engine incorporated the Piston Ringland Defect.

66.    Material information fraudulently concealed and/or actively suppressed by the defendants includes but is not limited to the Piston Ringland Defect defects described in the preceding paragraphs and throughout this complaint.  This information was fraudulently concealed and/or actively suppressed in order to sell class vehicles to uninformed consumers (including proposed class representatives and proposed class members) premised on affirmations and representations of reliable, high quality, long-life vehicles with low maintenance, inexpensive operating costs, superior performance and durability. In fact, class vehicles actually incorporated the known engine Piston Ringland Defect described in this

complaint that would decrease durability/reliability and increase vehicle-operating costs by thousands of dollars.

67.     The defendants (and particularly the sales and marketing executives at SoA) advertised and otherwise created the reasonable expectation (including but not limited to scheduled class engine maintenance recommendations) that class vehicles would last over 120,000 miles or ten years before experiencing engine failure.

68.     Material information was fraudulently concealed and/or actively suppressed in order to protect the defendants' (and authorized vehicle dealers') corporate profits from loss of sales from adverse publicity, to reduce warranty repair costs and to limit Subaru brand disparagement.

69.     The defendants had a duty to disclose to class vehicles owners that there were materials and manufacture defects in class vehicle class engines.

70.     This duty arose because the defendants knew the Piston Ringland Defect existed in class vehicles and inaccuracies in accompanying owner's materials affected vehicle operation, operating costs and safety while class vehicles owners were not, and could not reasonably be, cognizant of these defects and dangers.

71.     The defendants continuously and affirmatively concealed the actual characteristics of class vehicles from the proposed class representatives and other purchasers.  The defendants breached their affirmative duty of disclosure to class vehicles owners (and particularly to owners who inquired as to the cause of class vehicles engine failures).[17]

72.     The defendants engaged in unconscionable, fraudulent commercial practices and attempted to conceal class vehicles materials defects, workmanship defects, manufacturing defects and improperly recommended maintenance.

---

[17] Since unexpected engine failure is a serious safety issue particularly on limited access highways, the defendants had an affirmative duty to disclose the vehicle defects together with associated risks.  Several of the class representative in this proceeding experienced dangerous circumstances when their respective class engine unexpectedly quit and the engine entered partial or full shutdown mode.

73.    The defendants are engaged in a continuing fraud concerning the true underlying cause of class vehicles' engine failures.

74.    The defendants failed to adequately test class vehicles in appropriate consumer environments prior to marketing, distribution and sale.

75.    The defendants' unconscionable conduct precludes any exclusion of incidental and consequential damages or any other limitation of remedies.  The defendants' upper level management orchestrated this wrongful conduct.

76.    The proposed class representatives and proposed class members operated and maintained their class vehicles in conformity with the respective Owner's Manual and Warranty & Maintenance Booklet.

77.    Class vehicle owners sustained an ascertainable financial loss, including but not limited to increased maintenance costs for engine inspections and/or premature replacement of the engine. Individuals who own or have owned class vehicles also sustained diminution of the resale value of their class vehicles since knowledge of problems with class vehicles' engines has become public information after the time of their purchase.

78.    The proposed class representatives and proposed class members have not received the benefit of their bargain concerning their respective purchase of class vehicles.

79.    The defendants are persons within the context of the consumer protection laws of Illinois, Colorado, California and New York together with other states and committed wrongful conduct described in this complaint including conduct that caused ascertainable financial harm and/or economic loss to the proposed class representatives and proposed class members.

80.    The defendants created an over-all misleading impression through their failure to disclose material information concerning the fact that class vehicles incorporated defective engines as described in this complaint and were accompanied by an Owner's Manual and Warranty & Maintenance Booklet materials that incorporated incorrect engine service, maintenance and critical systems replacement

recommendations.  The proposed class representatives and proposed class members were deceived by the defendants' conduct as described in this complaint with respect to their purchase of class vehicles.

81.    The defendants violated the consumer protection laws of Illinois, Colorado, California and New York and other states with their oppressive and unconscionable conduct described in this complaint including but not limited to their failure to disclose material information that caused ascertainable financial harm to the proposed class representatives and proposed class members.

82.    The defendants were under a duty to disclose safety defects in class vehicles as described in this complaint but failed to disclose to the proposed class representatives and proposed class members the characteristics of class vehicles with respect to the Piston Ringland Defect in violation of the consumer protection laws of Illinois, Colorado, California and New York and other states.  The defendants' omissions (that engines were defective and that the Piston Ringland Defect constituted a safety risk) deceived purchasers (including but not limited to the proposed class representatives and proposed class members).  Those disclosure omissions include the fact that class vehicles engine Piston Ringland Defect had a significant impact on operating costs and vehicle safety.  This failure to disclose additional information concerning class vehicles defects as described in this complaint, had the capacity to, and in fact did, deceive purchasers (including but not limited to the proposed class representatives and proposed class members) in a material respect.

83.    If the proposed class representatives and proposed class members had been made aware of the Piston Ringland Defect (as described in this complaint) in their respective class vehicles and the attendant ramifications of value, durability, operating costs, operation and safety, they would not have purchased the class vehicles or would have paid less for their vehicles since class members were led to believe that they were purchasing a vehicle that was free of major defects and were not fully informed of the true characteristics and attributes of class vehicles.

84.    The defendants fraudulently, intentionally, negligently and/or recklessly concealed from the proposed class representatives and proposed class members the Piston Ringland Defect in class

vehicles even though the defendants knew or should have known information concerning the Piston Ringland Defect was material and central to the marketing and sale of class vehicles to prospective purchasers, including the proposed class representatives and proposed class members.

85.    The defendants violated the consumer protection laws of Illinois, Colorado, California and New York and other states by failing to inform class vehicles owners at the time of purchase that class vehicles had known defects, that the vehicles would prematurely require expensive engine repair/replacement and/or that the class engine could experience unanticipated failure with attendant safety consequences.

86.    As a direct result of these omissions, the proposed class representatives and proposed class members purchased class vehicles and sustained economic harm since they purchased vehicles worth considerably less than represented.  These misrepresentations diminish the vehicle value and increase cost of vehicle ownership while also increasing risk of injury that was not disclosed to or reasonably anticipated by consumers at the time of purchase.

87.    The wrongful conduct of the defendants violated the consumer protection laws of Illinois, Colorado, California and New York and other states occurred within the limitations period set out in the respective statutes and/or the limitations period is tolled by the defendants' conduct.

**What the Omissions Were:**

88.    The defendants fraudulently omitted to disclose material facts basic to both the purchase and warranty service concerning class vehicles, including information concerning the class engine Piston Ringland Defect, in an effort to deceive purchasers as described in this complaint.  At the time of purchase, the defendants fraudulently omitted to disclose material matter concerning the defects in class vehicles as described in this complaint, including their impact on future repairs, operating costs and vehicle reliability as described in this complaint.

89.    The defendants fraudulently concealed from the proposed representatives and proposed class members defects in class vehicles even though the defendants knew or should have known

information concerning these defects was material and central to the marketing and sale of class vehicles to prospective purchasers including proposed class representatives and proposed class members.

90.     The defendants concealed from proposed class representatives and proposed class members that a defect existed in the class engine as described in this complaint that could have and should have been fixed within the warranty period.  This is particularly true since these defects constituted a safety issue, and defendants' withholding of this material information deprived the proposed class representatives and proposed class members of the right to have defective engine parts repaired/replaced for free under the existing warranty.

**The Person(s) Responsible for the Failure to Disclose:**

91.     The proposed class representatives and proposed class members are entitled to the reasonable inference that the defendants' sales, marketing, engineering and warranty departments and their executives were involved in the omissions.

**The Context of the Omissions and the Manner in which they Misled:**

92.     Material information was fraudulently concealed and/or actively suppressed in order to sell class vehicles to uninformed consumers (including proposed class representatives and proposed class members) premised on affirmations, representations and omissions described in this complaint.

93.     If the proposed class representatives and proposed class members had been informed of the Piston Ringland Defect in their class vehicles, they would not have purchased or leased their respective class vehicles or would have paid substantially less.  If the proposed class representatives and proposed class members had been made aware of the defects in their respective class vehicles and the attendant ramifications of their respective vehicle's diminution in value, future cost of repairs, durability and care, they would not have purchased or leased the class vehicles since each class member believed they were purchasing or leasing vehicles without major defects and were not fully informed of true characteristics and attributes of class vehicles.  If the proposed class representatives and proposed class members had been informed of the defect during the warranty period, they would have had the defective

parts repaired/replaced under warranty. The defendants' conduct that violated the consumer fraud statutes alleged herein deprived the proposed class representatives and proposed class members of that remedy.

**What the Defendants Obtained through the Fraud:**

94.     Material information concerning class vehicles was concealed and/or actively suppressed in order to protect the defendants' corporate profits from loss of sales, vehicle purchase refunds and warranty repairs. This conduct also sought to prevent adverse publicity and limit brand disparagement. Class vehicle purchasers believed they were obtaining vehicles having different attributes than described and purchased and were accordingly deprived of economic value and paid a price premium for their class vehicles. The defendants had a uniform policy of not properly disclosing class vehicles defects in order to promote sales and increase profits as described in this complaint.

95.     As a proximate and direct result of the defendants' unfair and deceptive business trade practices, the proposed class representatives and proposed class members purchased class vehicles and sustained an ascertainable loss, including but not limited to financial harm as described in this complaint.

**COUNT I**

**VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND
DECEPTIVE TRADE PRACTICES ACT, 815 ILCS 505/1**
(on behalf of Aquino and the Illinois subclass)

96.     Proposed class representative Aquino and Illinois subclass members incorporate by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

97.     Aquino asserts this count on behalf of himself and members of the Illinois subclass.

98.     Aquino and members of the Illinois subclass are persons within the context of the Illinois Consumer Fraud and Deceptive Trade Practices Act (hereinafter "ICFA"), 815 ILCS 505/1.

99.     Aquino and members of the Illinois subclass purchased and/or leased class vehicles for personal, family or household use.

100.     Defendants are persons within the context of the ICFA, 815 ILCS 505/1 and are engaged in consumer transactions in Illinois within the context of ICFA, 815 ILCS 505/1.

101.     Defendants are engaged in unfair, abusive and deceptive acts and practices within the context of ICFA, 815 ILCS 505/1 as described in this complaint.

102.     Defendants committed deceptive and unconscionable acts in the course of consumer transactions within the context of ICFA, 815 ILCS 505/1 as described in this complaint.

103.     Defendants committed unconscionable, deceptive and unfair trade practices including but not limited to deception, fraud, false pretense, false promise, misrepresentation and the knowing concealment, suppression and omission of material facts concerning the Piston Ringland Defect with intent that Aquino and members of the Illinois subclass would rely upon their misrepresentations in connection with the sale and/or advertisement of class vehicles.

104.     Defendants fraudulently, intentionally, negligently, and/or recklessly misrepresented to Aquino and members of the Illinois subclass the required inspection, maintenance and/or maintenance intervals of class engines, including but not limited to engine pistons.

105.     Defendants fraudulently, intentionally, negligently and/or recklessly misrepresented to Aquino and members of the Illinois subclass the characteristics of class engines with respect to material, manufacture, durability, design, longevity, maintenance and operating costs.  Defendants extensively advertised that class vehicles were superior in construction and extolled the quality and virtues of class vehicles, including superior materials, workmanship, design, manufacture, safety, durability, reliability and performance including an engine with an expected life exceeding 120,000 miles.  In fact, class engines incorporated known defects as described in this complaint that caused class engines to prematurely fail.

106.     Defendants actively suppressed the fact that engines in class vehicles were prematurely failing because of materials, workmanship, design and manufacture defects, as well as incorrect maintenance recommendations and maintenance intervals.

107.     Although the defendants knew defects in class engines and misinformation in the owner's manuals were causing premature class engine failures, the defendants denied any liability and attempted to shift the responsibility and cost of repairs to individual vehicle owners.

108.     One scheme included blaming class engine ringland failures on owners for poor or improper maintenance and other conditions for which the defendants were not responsible.  Rather than conduct an open and fair inspection and repair procedure for all class engines, the defendants employed unfair and deceptive trade practices to deny repairs or repair reimbursements in violation of the ICFA.

33

109.    Defendants' deceptive trade practices were likely to deceive a consumer acting reasonably under the circumstances including Aquino and members of the Illinois subclass who were caused to expend sums of money in purchasing and later repairing their class vehicles.  As reasonable consumers, Aquino and members of the Illinois subclass had no reasonable way to know that class engines were defective in materials, workmanship, design and manufacture.  Any reasonable consumer under the circumstances would have relied on the representations of the defendants who alone possessed the knowledge as to the quality and characteristics of the class vehicles, including the class engine and its durability.

110.    If the defendants had not concealed class engine defects from Aquino and members of the Illinois subclass within the express warranty period, the Piston Ringland Defects would have been repaired without cost to purchasers as promised under the original warranty.

111.    Defendants fraudulently concealed unmistakable manifestations of impending class engine failures within the express warranty period without inspecting, repairing or replacing damaged internal class engine components.

112.    Defendants violated the ICFA by failing to inform class vehicle owners prior to purchase and/or during the warranty period that class engines were defective in materials, workmanship, design and manufacture and were accompanied by incorrect maintenance recommendations and maintenance intervals.

113.    Defendants violated the ICFA by failing to inform class vehicle owners prior to purchase and/or during the warranty period that class vehicles incorporated defects and would require regular replacement of expensive internal engine components such as engine pistons.

114.    Defendants further violated the ICFA by failing to inform prospective class vehicle purchasers that the defendants had not properly tested the engines including but not limited to piston strength and durability.

115.    As a proximate and direct result of the defendants' conduct including their unfair and deceptive trade practices, Aquino and members of the Illinois subclass purchased and/or leased class vehicles and sustained an ascertainable loss and financial harm.

116.    Aquino and members of the Illinois subclass experienced premature class engine failure, increased repair and maintenance costs and incurred other substantial monetary damages and inconvenience.

34

117.    The conduct of the defendants offends public policy as established by statutes and common law; is immoral, unethical, oppressive and/or unscrupulous and caused unavoidable substantial injury to class vehicle owners (who were unable to have reasonably avoided the injury due to no fault of their own) without any countervailing benefits to consumers.

118.    Aquino and members of the Illinois subclass demand judgment against the defendants including multiple damages, interest, costs and attorneys' fees.

## COUNT II

### VIOLATION OF COLORADO'S CONSUMER PROTECTION ACT ("CCPA") COLORADO'S CONSUMER PROTECTION ACT §§ 6-1-105
(on behalf of Crumpecker and the Colorado subclass)

119.    Crumpecker asserts this count on behalf of himself and members of the Colorado subclass.

120.    Crumpecker and members of the Colorado subclass are consumers within the context of the Colorado's Consumer Protection Act, (hereinafter "CCPA"), § 6-1-105.

121.    Crumpecker and members of the Colorado subclass purchased and/or leased class vehicles for personal, family or household use.  Defendants are engaged in consumer transactions in Colorado within the context of CCPA, § 6-1-105.

122.    Defendants are engaged in unfair and deceptive consumer transactions practices within the context of CCPA, § 6-1-105, as described in this complaint.

123.    Defendants committed unconscionable, deceptive and unfair trade practices in the course of trade and commerce within the context of CCPA as described in this complaint.

124.    Defendants committed unconscionable, deceptive and unfair trade practices including but not limited to deception, fraud, false pretense, false promise, misrepresentation and the knowing concealment, suppression and omission of material facts concerning the engine with intent that Crumpecker and members of the Colorado subclass would rely upon their misrepresentations in connection with the advertisement and sale of class vehicles.

125.    Defendants fraudulently, intentionally, negligently, and/or recklessly misrepresented to Crumpecker and members of the Colorado subclass the required maintenance and/or maintenance intervals of class engines, including but not limited to the class engine pistons.

35

126.   Defendants fraudulently, intentionally, negligently and/or recklessly misrepresented to Crumpecker and members of the Colorado subclass the characteristics of class engines with respect to material, manufacture, durability, design, longevity, maintenance and operating costs.   Defendants extensively advertised that class vehicles were superior in construction and extolled the quality and virtues of class vehicles, including superior materials, workmanship, design, manufacture, safety, durability, reliability and performance including an engine with an expected life exceeding 120,000 miles.   In fact, engines in class vehicles incorporated a known defect as described in this complaint that caused the engine to prematurely fail.

127.   Defendants actively suppressed the fact that engines and engines in class vehicles were prematurely failing because of materials, workmanship, design and manufacture defects, as well as incorrect maintenance recommendations and maintenance intervals.

128.   Although defendants knew defects in engines and misinformation in the owner's manuals were causing premature class engine failures, defendants denied any liability and attempted to shift the responsibility and cost of repairs to individual vehicle owners.

129.   One scheme included blaming engine failures on owners for poor or improper maintenance and other conditions for which defendants were not allegedly responsible.   Rather than conduct an open and fair inspection and repair procedure for all engines, defendants employed unfair and deceptive trade practices to deny repairs or repair reimbursements in violation of the CCPA.

130.   Defendants' deceptive trade practices were likely to deceive a consumer acting reasonably under the circumstances.   Crumpecker and members of the Colorado subclass were caused to expend sums of money in purchasing and later repairing their class vehicles**.**   As reasonable consumers, Crumpecker and members of the Colorado subclass had no reasonable way to know that class vehicles incorporated engines which were defective in materials, workmanship, design and manufacture.   Any reasonable consumer under the circumstances would have relied on the representations of defendants who alone possessed the knowledge as to the quality and characteristics of the class vehicles, including the engine and engine durability.

131.   If defendants had not concealed class engine defects from Crumpecker and members of the Colorado subclass within the express warranty period, engines would have been repaired without cost to purchasers as promised under the original warranty.

132. Defendants fraudulently concealed unmistakable manifestations of impending class engine failures within the express warranty period without inspecting, repairing or replacing damaged internal class engine components.

133. Defendants violated the CCPA by failing to inform class vehicle owners prior to purchase and/or during the warranty period that class engines were defective in materials, workmanship, design and manufacture and were accompanied by incorrect maintenance recommendations and maintenance intervals.

134. Defendants violated the CCPA by failing to inform class vehicle owners prior to purchase and/or during the warranty period that class engines incorporated defects and would require regular replacement of expensive internal engine components such as the pistons.

135. Defendants further violated the CCPA by failing to inform prospective class vehicle purchasers that defendants had not properly tested class engines including but not limited to the engine pistons.

136. As a proximate and direct result of defendants' unfair and deceptive trade practices, Crumpecker and members of the Colorado subclass purchased or leased class vehicles and sustained an ascertainable loss and financial harm.

137. Crumpecker and members of the Colorado subclass experienced premature class engine failure, increased repair and maintenance costs and incurred other substantial monetary damages and inconvenience.

138. The conduct of defendants offends public policy as established by statutes and common law and is immoral, unethical, oppressive and/or unscrupulous and caused unavoidable substantial injury to class vehicle owners (who were unable to have reasonably avoided the injury due to no fault of their own) without any countervailing benefits to consumers.

139. Crumpecker and members of the Colorado subclass demand judgment against defendants including multiple damages, interest, costs and attorneys' fees.

## COUNT III

### VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW, CAL. BUS. AND PROFESSIONS CODE §§ 17200 *ET SEQ.*
(on behalf of Piperato and the California subclass)

140.    Proposed class representative Piperato and California subclass members incorporate by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

141.    Piperato asserts this count on behalf of himself and members of the California subclass.

142.    California's Unfair Competition Law, Cal. Bus. and Professions Code §§ 17200 *et seq.* (hereinafter "UCL") prohibits all unlawful, unfair or deceptive business practices.  Defendants' conduct as described in this complaint constitutes unlawful, unfair and deceptive business practices.

143.    Defendants' conduct as described in this complaint violates the UCL.  These violations are independent and are unlawful, unfair and deceptive business practices.

144.    Defendants' sale of class vehicles without disclosing the existence of defective class engines while misrepresenting the supposed quality and reliability attributes of these vehicles is an unlawful, unfair and deceptive business practice within the context of the UCL.  This conduct was unlawful, unfair and deceptive because it was intended to, and did in fact, mislead and deceive Piperato and California subclass members.  If defendants disclosed to Piperato and California subclass members that their class vehicles incorporated a defective class engine or that the engine had been inadequately tested, they would not have purchased their respective vehicles or paid less.

145.    Defendants knew that if defects in class engines or inadequate testing of the engine were disclosed to the consumer public prior to purchase, consumers at large would react similarly and elect not to purchase class vehicles.  As a result, defendants intentionally concealed their knowledge of class engine defects and inadequate testing.

146.    As a direct, proximate and foreseeable result of defendants' unlawful, unfair and deceptive business practices, Piperato and California subclass members seek equitable relief in the form of restitution and/or diminution of value. The relief requested herein is not duplicative of the damages

38

that will be sought under the CLRA claim asserted herein.  Because of the undisclosed defects, Piperato and California subclass members sustained a loss and/or diminution in the value of their vehicles. Piperato and  California subclass members, have or will incur incidental damages attributable to the loss of use of their class vehicles while the vehicles were or will be repaired.

147.    Defendants' unlawful, unfair and/or deceptive business practices caused Piperato and California subclass members to convey money and benefits to defendants including but not limited to the purchase price or lease payments for their vehicles together with engine repair or replacement costs.

148.    Piperato and California subclass members request an order of restitution forcing defendants to restore to them the benefits and monies they conveyed in connection with their purchase of their class vehicles and repair costs related to the defective engine.

149.    Piperato and California subclass members demand judgment against defendants including multiple damages, interest, costs and attorneys' fees.

**COUNT IV**
**VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT,**
**CAL. CIV. CODE §§ 1750 *ET SEQ.* [18]**
(on behalf of Piperato and the California subclass)

150.    Proposed California class representative Piperato and California subclass members incorporate by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

151.    Piperato asserts this count on behalf of himself and members of the California subclass.

152.    Defendants violated Cal. Civ. Code § 1770(a)(5) by representing that class vehicles have characteristics, uses, benefits and/or quantities they do not possess.

---

[18] Counsel for plaintiff Piperato sent correspondence contemporaneously with the complaint filing that provided defendants with notice of their specific violations of the CLRA pursuant to Cal. Civ. Code § 1782(a).  In the event the relief requested is not provided within thirty (30) days of receipt, Plaintiff will assert claims on behalf of herself and the class for monetary damages.

153.    Defendants violated Cal. Civ. Code § 1770(a)(7) by representing that class vehicles are of a particular standard, quality or grade, when they are not, and in particular, by supplying vehicles that contain a defect that involves an unreasonable safety issue.

154.    Defendants violated Cal. Civ. Code § 1770(a)(9) by advertising class vehicles with the intent not to sell them as advertised.

155.    Defendants violated Cal. Civ. Code § 1770(a)(16) by representing that the subject of a transaction has been supplied in accordance with a previous representation when it was not.

156.    Defendants conducted the above-described acts or practices in transactions intended to result, or that did result, in the sale of class vehicles to customers for personal, family or household use.

157.    The nature of the alleged defect, as a safety issue and/or as a defect that goes to the essential functioning of the vehicle, imposes a duty to disclose the defect upon defendants.  This is true regardless of the transactional relationship with the vehicle owner.

158.    Piperato and the California subclass members relied on defendants' affirmative representations that no maintenance would be required for the subject class engine piston for a duration of at least 120,000 miles and upon defendants' material omissions as to the Piston Ringlands Defect.  If Piperato and California subclass members had been made aware of the defects in their respective class engines and the attendant ramifications of their respective vehicle's diminution in value, future cost of repairs, durability and care, they would not have purchased the class vehicles or paid less since each class member believed they were purchasing vehicles without major defects and were not informed of true characteristics and attributes of class engine ringlands defects.

159.    As a result of defendants' conduct, Piperato and the California subclass members were harmed and suffered actual damages and compensatory damages in that their respective class vehicles experienced premature engine failure and required repair and/or replacement.  As a direct and proximate result of defendants' unfair or deceptive acts or practices, Piperato and California subclass members, suffered and will continue to suffer actual damages.

160.    Consumers Legal Remedies Act claims commenced to run against Piperato and California subclass members in May 2021 which was the date Piperato discovered the cause of his class vehicle engine failure resulting from the concealed Piston Ringlands Defect.  Piperato could not have discovered the ringlands defect earlier despite reasonable diligence because defendants' knowing concealment and other conduct as described in this complaint.

161.    The defendants violated the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1770 *et seq*. and committed other unfair and deceptive business practices as described in this complaint.  Piperato and California subclass members request judgment against the defendants and injunctive relief including a declaratory judgment and an appropriate court order prohibiting defendants from further deceptive acts and practices described in this complaint.  Piperato and California subclass members further request costs and attorneys' fees and all other relief authorized by Consumers Legal Remedies Act together with such additional relief as appropriate and necessary.

### COUNT V

### VIOLATION OF THE NEW YORK CONSUMER FRAUD STATUTE GBL § 349
(on behalf of Tresco and the New York state subclass)

162.    Proposed class representative Tresco and New York subclass members incorporate by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

163.    Tresco assert this count on behalf of himself and members of the New York subclass.

164.    Tresco and members of the New York subclass are consumers within the context of § 349 of the New York Consumer Fraud Statute General Business Law (hereinafter "GBL").

165.    Tresco and members of the New York subclass purchased and/or leased class vehicles for personal, family or household use.

166.    Defendants engaged in consumer oriented transactions in New York within the context of GBL § 349.

167.    Defendants engaged in unconscionable, unfair and deceptive consumer practices in the course of trade and commerce within the context of GBL § 349 as described in this complaint including

but not limited to deception, fraud, false pretense, false promise, misrepresentation and the knowing concealment, suppression and omission of material facts concerning class engines with intent that Tresco and members of the New York subclass would rely upon their misrepresentations in connection with the sale and/or advertisement of class vehicles.

168.    Defendants fraudulently, intentionally, negligently, and/or recklessly misrepresented to Tresco and members of the New York subclass the required maintenance and/or maintenance intervals of class engines including but not limited to class engine pistons.

169.    Defendants fraudulently, intentionally, negligently and/or recklessly misrepresented to Tresco and members of the New York subclass the characteristics of class engines with respect to material, manufacture, durability, design, longevity, maintenance and operating costs. Defendants extensively advertised that class vehicles were superior in construction and extolled the quality and virtues of class vehicles, including superior materials, workmanship, design, manufacture, safety, durability, reliability and performance including an engine with an expected life exceeding 120,000 miles. In fact, class engines incorporated a known defect as described in this complaint that caused class engines to prematurely fail.

170.    Defendants actively suppressed the fact that class engines were prematurely failing because of materials, workmanship, design and manufacture defects, as well as incorrect maintenance recommendations and maintenance intervals.

171.    Although defendants knew defects in engines and misinformation in the owner's manuals were causing premature class engine failures, defendants denied any liability and attempted to shift the responsibility and cost of repairs to individual vehicle owners.

172.    One scheme included blaming engine failures on owners for poor or improper maintenance and other conditions for which defendants were not allegedly responsible. Rather than conduct an open and fair inspection and repair procedure for all engines, defendants employed unfair and deceptive trade practices to deny repairs or repair reimbursements in violation of GBL § 349.

173.    Defendants' deceptive trade practices were likely to deceive a consumer acting reasonably under the circumstances. Tresco and members of the New York subclass were caused to expend sums of money in purchasing and later repairing their class vehicles. As reasonable consumers, Tresco and members of the New York subclass had no reasonable way to know that class vehicles incorporated engines which were defective in materials, workmanship, design and manufacture. Any

reasonable consumer under the circumstances would have relied on the representations of defendants who alone possessed the knowledge as to the quality and characteristics of

174.    engine failures within the express warranty period without inspecting, repairing or replacing damaged internal class engine components.

175.    As a direct result of the defendant's omission of material facts concerning the defect. Tresco paid more for the vehicle than he otherwise would have or, alternatively, would not have purchased the vehicle at all.  In either event, Tresco and the New York subclass paid a price premium that they otherwise would not have paid if not for the defendant's consumer fraud in violation of GBL **§** 349.

176.    Defendants violated GBL **§** 349 by failing to inform class vehicle owners prior to purchase and/or during the warranty period that class engines were defective in materials, workmanship, design and manufacture and were accompanied by incorrect maintenance recommendations and maintenance intervals.

177.    Defendants violated GBL **§** 349 by failing to inform class vehicle owners prior to purchase and/or during the warranty period that class engines incorporated defects and would require regular the class vehicles including the class engine and engine durability.

178.    If defendants had not concealed class engine defects from Tresco and members of the New York subclass within the express warranty period, class engines would have been repaired without cost to purchasers as promised under the original warranty.

179.    Defendants fraudulently concealed unmistakable manifestations of impending class replacement of expensive internal engine components such as engine pistons.

180.    Defendants further violated GBL **§** 349 by failing to inform prospective class vehicle purchasers that defendants had not properly tested class engines including but not limited to engine pistons.

181.    As a proximate and direct result of defendants' unfair and deceptive trade practices, Tresco and members of the New York subclass purchased or leased class vehicles and sustained an ascertainable loss and financial harm.

182.    Tresco and members of the New York subclass experienced premature class engine failure, increased repair and maintenance costs and incurred other substantial monetary damages and inconvenience.

183.    The conduct of defendants offends public policy as established by statutes and common law and is immoral, unethical, oppressive and/or unscrupulous and caused unavoidable substantial injury to class vehicle owners (who were unable to have reasonably avoided the injury due to no fault of their own) without any countervailing benefits to consumers.

184.    Tresco and members of the New York subclass demand judgment against defendants including multiple damages, interest, costs and attorneys' fees.

## COUNT VI

### NEGLIGENT MISREPRESENTATION
(on behalf of Aquino, Crumpecker, Piperato and Tresco together with the Colorado,
New York, Illinois and California subclasses)

185.    Proposed class representatives Aquino, Crumpecker, Piperato and Tresco together with, Illinois, Colorado, California and New York subclass members incorporate by reference all allegations in the preceding paragraphs as if set forth fully in this count.

186.    The defendants negligently and recklessly misrepresented to the proposed class representatives and proposed class members the characteristics of class vehicles with respect to engine materials, workmanship, design and manufacture, including that the class engine had sufficient and adequate engine pistons.  The defendants also negligently and recklessly misrepresented information in the class vehicles' owner's manuals that incorporated incorrect engine maintenance, service recommendations and operation.

187.    The proposed class representatives and proposed class members reasonably and justifiably relied upon representations made by the defendants including information in the class vehicles' owner's manual that incorporated incorrect engine inspection and service intervals.

188.    Defendants' specific and ambiguous partial disclosures and statements created a special relationship between defendants on one hand, and plaintiffs and members of the class on the other, particularly in light of defendants' exclusive and superior knowledge concerning class engine defects and the existence of related to safety concerns.

44

189.     As a proximate and direct result of the proposed class representatives and proposed class members' reliance on the defendants' negligent and reckless misrepresentations, the proposed class representatives and proposed class members sustained monetary damages as described in this complaint.

190.     Wherefore, the proposed class representatives and proposed class members demand judgment against defendants including multiple damages, interest, costs and attorneys' fees.

**RELIEF DEMANDED**

WHEREFORE, proposed class representatives Aquino, Crumpecker, Piperato and Tresco together with Illinois, Colorado, California and New York subclass members request:

A.     An Order pursuant to Fed. R. Civ. P. 23(c) certifying the class and/or subclasses as defined in ¶ 10 with such modifications, if any, to the proposed certification as required by the Court for the efficient and equitable administration of justice in this proceeding;

B.     An Order appointing the proposed class representatives Aquino, Crumpecker, Piperato and Tresco as representatives of the proposed subclass(es) and designating the law firms of Thomas P. Sobran P.C. and Kantrowitz, Goldhamer & Graifman, P.C. as counsel for the proposed class pursuant to Fed. R. Civ. P. 23(g);

C.     Judgment for the proposed class representatives and proposed class members against the defendants on all issues and counts;

D.     Damages for the proposed class representatives and proposed class members, including but not limited to damages, together with interest, prejudgment interest, costs and attorneys' fees;

E.     Restitution for all engine repairs incurred by the proposed class representatives and proposed class members resulting from the defectively designed and manufactured engines and incorrect maintenance and service intervals as set forth in the class vehicles' owner's manuals;

F.     Restitution of incidental expenses incurred by the proposed class representatives and proposed class members, including but not limited to rental vehicles and other substitute transportation;

G.     A Court issued declaratory judgment declaring that all class vehicles claims caused by

their defective engines are within the scope of the class vehicles' warranty coverage; and,

     H.      Any other relief deemed necessary by the Court.

## REQUEST FOR JURY TRIAL

The proposed class representatives and proposed class members request trial by jury on all issues and counts.

                **KANTROWITZ, GOLDHAMER**
                **& GRAIFMAN, P.C.**

                *s/ Gary S. Graifman*

                By: Gary S. Graifman
                Daniel Edelman
                135 Chestnut Ridge
                Montvale, New Jersey 07645
                Tel:    (201) 391-7000
                Fax:    (201) 307-1086
                Email:  ggraifman@kgglaw.com
                          dedelman@kgglaw.com

                **THOMAS P. SOBRAN, P.C.**
                Thomas P. Sobran
                7 Evergreen Lane
                Hingham, MA 02043
                Tel:    (781) 741-6075
                Fax:    (781) 741-6074
                Email: tsobran@sobranlaw.com
                (to be admitted *pro hac vice*)

Dated: February 24, 2022                ***Counsel for Plaintiffs***