Neal Walters (020901993)
BALLARD SPAHR LLP
700 East Gate Drive, Suite 330
Mount Laurel, New Jersey 08054-0015
(856) 761-2400
(856) 761-1020 fax
waltersn@ballardspahr.com

Attorney for Defendant Subaru of America, Inc.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **Ricardo Aquino**, et al., individually and on behalf of all others similarly situated,<br><br>              Plaintiffs,<br><br>      v.<br><br>**Subaru of America, Inc.** and **Subaru Corporation,**<br><br>            Defendants. | CIVIL ACTION NO.:<br>1:22-cv-00990-JHR-AMD<br>**Brief in Support of Defendants' Motion to Dismiss, in Part, and for Consolidation of Remaining Claims** |

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................1
II.   Factual Background and Procedural History .............................................4
      A.   The First-Filed Class Action: *Thompson* .....................................4
      B.   The Second-Filed and Still-Pending Class Action: *Amato* .........5
      C.   The Third, Most-Recently Filed Class Action: *Aquino* ...............10
      *1.*   *Ricardo Acquino (Illinois)* ...........................................11
      *2.*   *George Crumpecker (Colorado)* .....................................11
      *3.*   *Jonathan Piperato (California)* ......................................11
      *4.*   *Stephen Tresco (New York)* ..........................................12
III.  Legal Argument ...............................................................12
      A.   The Court should dismiss all claims asserted on behalf of
           the California and New York subclasses, because those
           claims are based on the same facts, brought against the
           same defendants, and seek the same relief on behalf
           subclasses identical to those asserted in the Amato Class
           Action. ...........................................................12
      B.   The Court should dismiss, with prejudice, all claims
           brought by the Colorado subclass's representative,
           Crumpecker, as barred by their respective statutes of
           limitation. ........................................................19
      *1.*   *Crumpecker's CCPA claim is barred by the statute's three year*
             *statute of limitation.* ............................................19
      *2.*   *Crumpecker's negligent misrepresentation claim is barred by*
             *Colorado's two-year statute of limitation.* .........................21
      C.   Tresco, Piperato, and Aquino have failed to plead facts
           sufficient to support their negligent misrepresentation
           claims. ...........................................................22
      *1.*   *The laws of Tresco's, Piperato's, and Aquino's home states*
             *govern their negligent misrepresentation claims.* ...................22
      *2.*   *Tresco's negligent misrepresentation must be dismissed for*
             *failure to plead a special relationship beyond that of purchaser*
             *and manufacturer.* ................................................26
      *3.*   *The economic loss doctrine bars Piperato and Aquino's*
             *negligent misrepresentation claims.* ...............................30
      D.   The Court should consolidate any claims that survive
           dismissal in this case with the Amato Class Action. ................34
IV.   Conclusion ...................................................................37

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Adams v. Cal. Dep't of Health Servs.*,
    487 F.3d 684 (9th Cir. 2007)...............................................................12, 17

*Agostino v. Costco Wholesale Corp.*,
    No. 20-1399, 2021 U.S. Dist. LEXIS 254462 (D.N.J. Aug. 27,
    2021)....................................................................................................... 12

*Amato v. Subaru of Am., Inc.*,
    No. 18-16118, 2019 U.S. Dist. LEXIS 209659 (D.N.J. Dec. 5,
    2019)................................................................................................. *passim*

*Bank Hapoalim B.M. v. Bank of Am. Corp.*,
    No. 12-4317, 2012 U.S. Dist. LEXIS 184540 (C.D. Cal. Dec. 21,
    2012).......................................................................................................27

*Blake v. JP Morgan Chase Bank N.A.*,
    927 F.3d 701 (3d Cir. June 19, 2019)................................................. 4, 20

*Branded Apparel Grp. LLC*, No. 17-5956, 2018 U.S. Dist. LEXIS
    153937, at *14 (S.D.N.Y. Sept. 10, 2018)................................................ 18

*Bynum v. Fam. Dollar Stores, Inc.*,
    No. 20-06878, 2022 U.S. Dist. LEXIS 49968 (S.D.N.Y. Mar. 21,
    2022)..................................................................................... 27, 29, 30

*Cevdet Aksüt O.Ullari Koll, Sti v. Cavusoglu*,
    No. 14-3362, 2017 U.S. Dist. LEXIS 109445 (D.N.J. July 14,
    2017).................................................................................................14, 17

*Cohen IP Law Grp., PC v. IAC/InterActiveCorp*,
    No. CV 10-5994 CAS, 2010 U.S. Dist. LEXIS 118948 (C.D. Cal.
    Oct. 25, 2010)......................................................................................... 16

*Crosley Corp. v. Hazeltine Corp.*,
    122 F.2d 925 (3d Cir. 1941).................................................................... 13

*George & Co. Llc v. Spin Master Corp.*,
  No. 20-4082, 2021 U.S. Dist. LEXIS 164295 (E.D.N.Y. Aug. 30,
  2021) ............................................................................................. 18

*Glassburg v. Ford Motor Co.*,
  No. 2:21-cv-01333-ODW, 2021 U.S. Dist. LEXIS 211786 (C.D.
  Cal. Nov. 2, 2021) ...................................................................... 31, 32

*Goodman v. Goldman, Sachs & Co.*,
  No. 10-1247, 2010 U.S. Dist. LEXIS 132593 (D.N.J. Dec. 14,
  2010) ............................................................................................. 23

*Gordon v. Target Corp.*,
  No. 20-9589, 2022 U.S. Dist. LEXIS 48769 (S.D.N.Y. Mar. 18,
  2022) ........................................................................................... 27, 30

*James v. AT&T Corp.*,
  334 F. Supp. 2d 410 (S.D.N.Y. 2004) ....................................... 18

*JTRE Manhattan Ave. LLC v. Capital One, N.A.*,
  No. 21-5714, 2022 U.S. Dist. LEXIS 23524 (S.D.N.Y. Feb. 9,
  2022) ............................................................................................. 27

*Kamara v. Pepperidge Farm, Inc.*,
  No. 20-9012, 2021 U.S. Dist. LEXIS 216644 (S.D.N.Y. Nov. 9,
  2021) ........................................................................................... 28, 29

*KCG Americas LLC v. Brazilmed, LLC*,
  No. 15-4600, 2016 U.S. Dist. LEXIS 30497 (S.D.N.Y. Feb. 26,
  2016) ............................................................................................. 29

*Koplove v. Ford Motor Co.*,
  795 F.2d 15 (3d Cir. 1986) ........................................................ 14

*Lasermaster Int'l Inc. v. Neth. Ins. Co.*,
  No. 15-7614, 2021 U.S. Dist. LEXIS 154100 (D.N.J. Aug. 13,
  2021) ............................................................................................. 14

*Lemar v. Am. Trading Corps.*,
  643 F. App'x 79 (3d Cir. 2016) ................................................. 19

*Maniscalco v. Brother Int'l (USA) Corp.*,
  709 F.3d 202 (3d Cir. 2013) ...................................................... 26

*McCabe v. Lifetime Entm't Servs., LLC*,
    No. 17-CV-908-ERK-SJB, 2018 U.S. Dist. LEXIS 3212 (E.D.N.Y.
    Jan. 4, 2018) ........................................................................................ 18

*In re Mercedes-Benz Antitrust Litig.*,
    157 F. Supp. 2d 355 (D.N.J. 2001) ...................................................... 20

*Morency v. Vill. of Lynbrook P.O. Shield No. 217*,
    1 F. Supp. 3d 58 (E.D.N.Y. Mar. 6, 2014) .......................................... 18

*Murry v. Griffin Wheel Co.*,
    172 F.R.D. 459 (N.D. Ala. 1997) ......................................................... 13

*O'Boyle v. Braverman*,
    337 F. App'x 162 (3d Cir. 2009) .......................................................... 22

*Oden v. Boston Sci. Corp.*,
    330 F. Supp. 3d 877 (E.D.N.Y. June 4, 2018) ..................................... 29

*Palladin Partners v. Gaon*,
    No. 05-3305, 2006 U.S. Dist. LEXIS 59844 (D.N.J. Aug. 22,
    2006) ..................................................................................................... 23

*Perdue v. Hy-Vee, Inc.*,
    455 F. Supp. 3d 749 (C.D. Ill. 2020) ............................................. 24, 33

*Plack v. Cypress Semiconductor (In re Cypress Semiconductor Sec.*
    *Litig.)*,
    864 F. Supp. 957 (N.D. Cal. 1994) ...................................................... 13

*Ponzio v. Mercedes-Benz USA, LLC*,
    447 F. Supp. 3d 194 (D.N.J. 2020) ................................................ 31, 32

*Rudy v. Fam. Dollar Stores, Inc.*,
    No. 21-3575, 2022 U.S. Dist. LEXIS 20426 (N.D. Ill. Feb. 4,
    2022) ........................................................................................ 30, 32, 33

*Sonneveldt v. Mazda Motor of Am., Inc.*,
    No. 19-01298, 2021 U.S. Dist. LEXIS 4190 (C.D. Cal. Jan. 4,
    2021) ................................................................................................ 30, 31

*Trudeau v. Lanoue*,
    No. 04-7165, 2006 U.S. Dist. LEXIS 7956 (N.D. Ill. Mar. 2, 2006) .............. 34

*Turnipseed v. Simply Orange Juice Co.*,
No. 20-8677, 2022 U.S. Dist. LEXIS 38823 (S.D.N.Y. Mar. 4,
2022) .................................................................................................... 27

*Wallis v. Card Servs. Int'l, Inc.*,
No. 10-7250, 2012 U.S. Dist. LEXIS 70932 (N.D. Ill. May 22,
2012) .................................................................................................... 33

*Walton v. Eaton Corp.*,
563 F.2d 66 (3d Cir. 1977) ............................................................. 12, 13

*Warren v. Stop & Shop Supermarket, LLC*,
No. 20-8718, 2022 U.S. Dist. LEXIS 47067 (S.D.N.Y.Mar. 16,
2022) ........................................................................................... 27, 28, 29

*Washington v. Gilmore*,
Civil Action No. 18-337, 2019 U.S. Dist. LEXIS 126752 (W.D.
Pa. July 29, 2019) ............................................................................... 12

*Willard v. Tropicana Mfg. Co.*,
No. 20-1501, 2021 U.S. Dist. LEXIS 247990 (N.D. Ill. Dec. 30,
2021) .................................................................................................... 33

*Younes v. 7-Eleven, Inc.*,
No. 13-3500, 2015 U.S. Dist. LEXIS 96392 (D.N.J. July 22, 2015) .............. 14

**State Cases**

*Cornett v. Johnson & Johnson*,
211 N.J. 362 (2012) .............................................................................. 23

*Enry v. Estate of Merola*,
171 N.J. 86 (2002) ................................................................................ 25

*First Midwest Bank, N.A. v. Stewart Title Guar. Co.*,
218 Ill. 2d 326 (2006) .......................................................................... 33

*RKA Film Fin., LLC v Kavanaugh*,
171 A.D.3d 678 (N.Y. App. Div. 2019) .................................................... 29

*Robinson Helicopter Co., Inc. v. Dana Corp.*,
34 Cal. 4th 979 (Dec. 23, 2004) ................................................. 24, 31, 32

*Rosen v. Cohen*,
    No. 20-30482, 2020 Colo. Dist. LEXIS 4289 ............................................. 21

*P.V. ex rel. T.V. v. Camp Jaycee*,
    197 N.J. 132 (2008) ........................................................................... 22, 23

## State Statutes

Colo. Rev. Stat. § 6-1-115 .......................................................................... 19, 20

Colo. Rev. Stat. § 13-80-102(1)(a) ................................................................. 21

Colo. Rev. Stat. § 13-80-108 ......................................................................... 21

Colorado Consumer Protection Act, C.R.S. 6-1-105 ............................. 19, 20, 21

## Rules

Fed. R. Civ. P. 16 ........................................................................................... 10

Local Civil Rule 42.1 ...................................................................................... 34

Rule 12(b)(6) ............................................................................................. 3, 19

## Other Authorities

Restatement (Second) of Conflict of Laws §§ 6 and 148 ....................... 24, 25, 26

## I.   Introduction

This putative class action—plaintiffs' counsel's third attempt at pursuing these claims—is a continuation of two previously-filed, practically identical class actions against Subaru of America, Inc. ("SOA") and Subaru Corporation ("SBR") (together, "Subaru").[1] One of those prior matters is still pending before this Court, and this latest filing is nothing more than a naked attempt to circumvent this Court's scheduling order in that pending case.

This saga started over four years ago, when a California resident filed a putative class action against SOA and SBR in this Court, captioned *Thompson v. Subaru of America, Inc., et al.* (the "Thompson Class Action"). Thompson claimed, on behalf of himself, a nationwide class, and a California subclass, that certain Subaru WRX and WRX STi model vehicles suffered from "Piston Ringlands Defect," which caused those vehicles' engines to prematurely fail. Subaru moved to dismiss Thompson's claims and, while the motion was still pending, Thompson's attorneys—Thomas Sobran and Gary Graifman ("Class Counsel")—stipulated to the complaint's dismissal, with prejudice.

Several months later, Class Counsel filed a second, nearly identical putative class action in this Court against SOA and SBR, this time captioned *Amato, et al. v. Subaru of America, Inc., et al.* (the "Amato Class Action"). The Amato Class Action mirrored the Thompson Class Action in alleging a "Piston Ringlands Defect" in certain Subaru WRX and WRX STi vehicles, again seeking certification of a nationwide class and, among others, a California subclass. The only material difference between the Amato Class Action and the Thompson Class Action was the addition of new class representatives and subclasses.

---

[1] Notwithstanding any reference to SBR, this motion is brought solely on SOA's behalf. SBR still has not been served with process.

As the Amato Class Action progressed, discovery revealed that many of the putative class members' claims lacked merit, and, as a result, Class Counsel voluntarily dismissed the claims of those class members and their putative subclasses. As fact discovery in the Amato Class Action neared its end, Class Counsel dismissed the claims of two additional class representatives, this time by stipulation. As an express condition of Subaru's consent to that stipulation, Class Counsel agreed that they would not seek to add any new named class representatives or subclasses. Today, only six subclasses remain in the Amato Class Action—three of which no longer have a class representative.

Unsatisfied with the trajectory of the Amato Class Action, Class Counsel decided to go back on their agreement with Subaru and bring in new class representatives to fill the gaps left by those representatives whose claims had been dismissed. But rather than follow the proper procedures, Class Counsel opted to file this lawsuit, once again including the very same allegations and claims asserted in the two prior class actions. The only material difference between this case and its predecessors is the addition of four new plaintiffs—two of whom bring claims on behalf of subclasses identical to the still-pending California and New York subclasses in the Amato Class Action.

The reason Class Counsel filed a new lawsuit is obvious: good cause does not exist to support an application to add new plaintiffs to the Amato Class Action. That request would have come more than three years into the case; well over a year past the amendment deadline set forth in this Court's scheduling order; almost a year after Class Counsel purportedly learned that new plaintiffs may be interested in joining the lawsuit; after the close of fact discovery; without any legitimate justification for the extreme delay; and without Class Counsel ever having raised the issue with the Court during any of the multiple status conferences over the past year, including one that occurred just one month before Class Counsel filed this

lawsuit. The request would have also come not long after the Court admonished Class Counsel for failing to comply with the Court's scheduling order or local rules before attempting to file their second amendment to Amato Class Action complaint.  Rather than deal with the Court potentially denying that motion to add new plaintiffs, Class Counsel decided to circumvent the court rules altogether, by filing this allegedly "new" action.

Class Counsel's attempt to ignore the procedural rules and this Court's scheduling order in the Amato Class Action is improper for a host of reasons, and Subaru has asked the Court to address those issue in motions it filed in that action. But there are spill-over effects that justify dismissal of certain claims in *this* action as well—specifically those claims brought on behalf of the putative California and New York subclasses.  Those putative subclasses already exist in the Amato Class Action, and if Class Counsel wish to seek this Court's leave to substitute new class representatives, then they need to do so and meet their burden to justify such request in that case.  Permitting Class Counsel to achieve that same end by ignoring this Court's rules and scheduling order and simply filing those claims in a new matter would condone that improper conduct, undermine the authority of this Court's rules and scheduling orders, and create confusion, duplication, and uncertainty.

The Court should also dismiss the claims filed on behalf of the Colorado subclass, because the Colorado subclass's only representative, Crumpecker, cannot state a claim for relief under Rule 12(b)(6). Crumpecker purchased his vehicle more than 12 years ago, in 2009. He claims his engine failed as a result of a defect in April 2018, nearly 4 years ago. His claims are subject to two- and three-year statutes of limitation, respectively. Thus, even assuming Crumpecker's claims accrued at that latest possible date (i.e., when the alleged defect manifested), both of his claims would still be time-barred. Additionally, because Crumpecker has

chosen to bring his claims on behalf of a putative class, *American Pipe* tolling does not apply. *See Blake v. JP Morgan Chase Bank N.A.*, 927 F.3d 701, 710 (3d Cir. June 19, 2019).

The negligent misrepresentation claims of Tresco, Piperato, and Aquino must also be dismissed.  Under the laws of those plaintiffs' home states, they have either failed to plead facts sufficient to state a claim for negligent misrepresentation or their claims are barred by the economic loss rule.

Finally, to the extent any claims asserted in this case survive this dismissal motion, those claims should be consolidated with the Amato Class Action for the reasons more fully set forth in the motion to consolidate Subaru filed in that action. Consolidation would promote efficiency and economy, conserve judicial resources, and put the parties closer to the position they would have been in had Class Counsel followed the proper procedure for seeking to add new class representatives and subclasses to the Amato Class Action.

## II.    Factual Background and Procedural History

### A.    The First-Filed Class Action: *Thompson*

In March 2018, Christopher Thompson filed the first of what would be three nearly-identical putative class action complaints against SOA and SBR in the United States District Court for the District of New Jersey, Case No. 1:18-cv-03736. The Thompson Class Action alleged that Subaru's 2009 through 2014 WRX and WRX STi vehicles suffered from a "Piston Ringlands Defect" and, based on those allegations,  asserted warranty and consumer fraud claims against Subaru on behalf of a putative nationwide class and a California subclass. (*See* Thompson Dkt. 1, ¶¶ 1, 4, 112-181.) Class Counsel represented Thompson in the lawsuit. (*See id.* at p. 48.)

On September 4, 2018, Subaru moved to dismiss Thompson's complaint on various grounds. Shortly thereafter, while the motion was still  pending, Thompson

stipulated to the dismissal of the Thompson Class Action, with prejudice. (*See* Thompson Dkt. 26.)

### B.   The Second-Filed and Still-Pending Class Action: *Amato*

Approximately three months after the dismissal of the Thompson Class Action, in November 2018, Class Counsel filed a nearly identical putative class action complaint against SOA and SBR in the United States District Court for the District of New Jersey, Case No. 1:18-cv-16118. (*Compare* Amato Dkt. 1, *with* Thompson Dkt. 1; *see also* Exh. A (Redline of Amato and Thompson Complaints).) The allegations in the Amato Class Action mirrored the allegations in the earlier Thompson Class Action, asserting warranty and consumer fraud claims against SOA and SBR based on an alleged Piston Ringlands Defect, and seeking certification of a putative nationwide class and state subclasses. The Amato Class Action differed only in that it identified four new class representatives and subclasses—Joseph Amato (New Jersey), Chris Lall (New York), George Sandoval (Arizona), and James Moore (Indiana)—and it expanded the proposed class vehicle model years to include 2009 through 2018 WRX and WRX STi vehicles.

Subaru filed a motion to dismiss the Amato Class Action (Dkt. 10), which the Court granted in part. (*See* Dkt. 23.) Prompted by the Court's order, in April 2020, Class Counsel filed a First Amended Complaint. (*See* Dkt. 32 ("FAC").) The FAC withdrew the claims it asserted on behalf of the nationwide class, replaced the New Jersey subclass with Georgia and Pennsylvania subclasses, asserted a new claim against SOA and SBR for negligent misrepresentation, and added a new named plaintiff, Ian Connolly, reviving the California subclass that had been dismissed in the Thompson Class Action.

Subaru answered the FAC (Dkt. 34), and the Court entered a scheduling order (*see* Dkt. 38 ("Scheduling Order")). The Scheduling Order stated, in pertinent part:

> The time within which to add new plaintiffs will expire on September 25, 2020. The time within which to seek all other amendments to the pleadings will expire on February 12, 2021. . . .
>
> Any application for an extension of time beyond the deadlines set herein shall be made in writing to the undersigned and served upon all counsel prior to expiration of the period sought to be extended, and shall disclose in the application all such extensions previously obtained, the precise reasons necessitating the application showing good cause under FED. R. CIV. P. 16(b), and whether adversary counsel agree with the application. The schedule set herein will not be extended unless good cause is shown. . . .
>
> **THE FAILURE OF A PARTY OR ATTORNEY TO OBEY THIS ORDER MAY RESULT IN IMPOSITION OF SANCTIONS UNDER FED. R. CIV. P. 16(f).**

(*Id.* ¶¶ 2, 9 (emphasis in original).)

On September 25, 2020—the deadline to amend set forth in the Scheduling Order—Plaintiffs filed a Second Amended Complaint (Dkt. 41 ("SAC")) in order to add new plaintiffs. Class Counsel failed to obtain the defendants' consent or the Court's leave, as required by court rule. The SAC dropped the New York class representative, Lall, withdrew all remaining warranty claims against Subaru, and added yet another class representative, Andrew Hinshaw, and a Michigan subclass. (*See id.* ¶¶ 18, 24.)

Subaru moved to strike or, in the alternative, partially dismiss the SAC, because, among other things, Plaintiffs failed to comply with the Court's

Scheduling Order and local rules and procedures.[2] (*See* Dkt. 43.) Although the Court agreed with Subaru that Plaintiffs failed to follow the proper procedure for amending their complaint, it permitted the amendment on the grounds that the case was "still in its infancy" and "at th[at] point [] unlikely to prejudice Subaru." (Dkt. 63 at 3-4.)

On June 10, 2021, Plaintiffs filed a Third Amended Complaint ("TAC") that was nearly identical to the SAC (*compare* Dkt. 65, *with* Dkt. 41), and included claims asserted on behalf of the following state subclasses: California, New York, Georgia, Pennsylvania, Indiana, Arizona, and Michigan. (Dkt. 65 ¶¶ 24, 228.)

Subaru answered the TAC (Dkt. 69), and the parties then engaged in extensive fact discovery. Collectively, SOA and SBR responded to hundreds of interrogatories, requests for admissions, and requests for production, and produced over 54,000 pages of documents. Additionally, SOA and SBR prepared and produced three separate corporate representatives to testify on SOA's or SBR's behalf, concerning more than one hundred topics included in the notices that Class Counsel issued pursuant to Fed. R. Civ. P. 30(b)(6). This was no small task for either Subaru defendant, but it was particularly burdensome for SBR, whose witness had to follow burdensome and complicated travel logistics to come from Japan and testify in the United States during a resurgence of Covid cases, and who had to spend time in quarantine upon returning home.

Subaru also expended significant resources conducting discovery of their own, including both written discovery and depositions of the named plaintiffs. As

---

[2] During the pendency of Subaru's motion to strike, the Court issued an Amended Scheduling Order, which stated, as pertinent here, that the earlier Scheduling Order "shall remain in effect" and that "the failure of a party or attorney to obey this order may result in imposition of sanctions under Fed. R. Civ. P. 16(f)." (Dkt. 51 (bold and capitalization removed).)

the result of Subaru's efforts, by the close of fact discovery, only three of the six named plaintiffs in the Amato Class Action remained: Hinshaw (Michigan), Moore (Indiana), and Sandoval (Arizona).

Class Counsel dismissed their (second) California class representative, Connolly, on November 17, 2021 (*see* Dkt. 77), after deposition testimony revealed that Connolly's claims lacked merit and complicated Class Counsel's bid for class certification.   Class Counsel also dismissed their Georgia and Pennsylvania class representative, Amato, (*see* Dkt. 76), for similar reasons, and after he failed to appear for his properly noticed deposition.

Importantly, Class Counsel were not entitled to dismiss Connolly and Amato from the case as a matter of right; they needed Subaru's consent. After discussing the issue with Subaru's counsel by phone, on November 12, 2021, Class Counsel sent an email confirming their intent to "dismiss[] the claims of Connolly [sic] and Amato with prejudice from the *Amato* Action." (*See* Exh. B (Nov. 12 Email from Walters to Graifman) at 2.) In that same email, Class Counsel made the following important representation:

> As further confirmed, **we do not intend to add any further plaintiffs to the Amato Action.** I believe you asked if it was our intention to move for a nationwide litigation class in the Amato Action. We communicate the following statement without prejudice to revising our position. With that caveat, it is our current intention to move for multistate classes given the fact that we do not have a New Jersey plaintiff and the current line up [sic] of plaintiffs would be more consistent with the certification of a multistate class.

(*Id.* (emphasis added).) Later that same day, Subaru's counsel responded:

> Please confirm that by "not intend," **you agree that you will not seek to add new named class representatives in this matter. This is a deal breaker.  There's really nothing to give up here, as it's highly unlikely that the court would allow you to do so [i.e., amend the complaint to add new named plaintiffs] given the circumstances.**

> Our request is, therefore, that you agree that you will not seek to amend to assert a national class in this case and will, instead, proceed in the natural course with an attempt to certify state-wide classes in Arizona, Michigan and Indiana, as represented by the remaining class representatives, Sandoval, Hinshaw and Moore, respectively. This would enable the parties to focus their efforts on the facts and authorities relevant under those states' laws.

(*Id.* at 1 (emphasis added).)

On November 15, Class Counsel responded by circulating draft stipulations for the dismissal of Connolly and Amato and representing that, "As for the issue re the nationwide class, it sounds like the current pleading already contemplates a multistate class certification motion rather than nationwide, so **our agreement to limit it to that is just confirming what already is asserted in this complaint.**" (*See* Exh. C (Nov. 15 Email from Graifman to Walters) at 1 (emphasis added).) Relying on Class Counsel's representations, Subaru approved the dismissal of Connolly and Amato. Notably, Subaru did not consent to Class Counsel amending the complaint to remove the California, Georgia, or Pennsylvania subclasses; those putative subclasses remain in the Amato Class Action—they just lack a class representative.

The parties continued to work diligently to complete fact discovery by the December 22, 2021 deadline. Despite their efforts, the parties required a short extension to conduct "clean up" discovery. (*See* Dkt. 81.) At a status conference held on January 31, 2022, the Court granted the parties' request for a short extension of the fact discovery deadline and modified the expert discovery and class certification deadlines to accommodate the scheduling change. (Dkt. 83.) At no time during the conference (or any earlier status conference, for that matter) did Class Counsel mention any intent to add additional plaintiffs or state subclasses, either to the Amato Class Action or otherwise.

### C.      The Third, Most-Recently Filed Class Action: *Aquino*

On February 28, 2022—less than one month after the Court's status conference in the Amato Class Action, and more than three years into the litigation of that matter—Class Counsel filed a third, nearly identical putative class action complaint against SOA and SBR in the United States District Court for the District of New Jersey, Case No. 1:22-cv-00990 (the "Aquino Class Action").[3] (*Compare* TAC, *with* Aquino Dkt. 1; *see also* Exh. D (Redline of Amato TAC and Aquino Complaint).) Like the Thompson and Amato Class Actions, the Aquino Class Action once again asserts claims against SOA and SBR based on an alleged Piston Ringlands Defect. It includes the same 2009 through 2018 WRX and WRX STi vehicles at issue in the Amato Class Action, and it seeks certification of multiple state subclasses, including two putative subclasses (New York and California) that are pending in the Amato Class Action and two others (Colorado and Illinois) that Class Counsel could have included in the Amato Class Action, if done in accordance with Scheduling Order. The only material difference between the

---

[3] A few times in the year leading up to the Aquino Class Action's filing, during phone calls related specifically to the Amato Class Action, Class Counsel vaguely suggested to Subaru's counsel that they might have backup plaintiffs waiting in queue as the result of an online article published about the lawsuit in mid-2021, which purportedly prompted new plaintiffs to contact Class Counsel. In response to Class Counsel's offhand comments, Subaru's counsel persistently pointed out that the deadline for amending the complaint had long expired and that any attempt to circumvent the Court's Scheduling Order would almost certainly be rejected. And in response, Class Counsel did nothing, for nearly a year. Thus, at a minimum, Class Counsel should be required to establish good cause for their delay in filing this action, including, but not limited to, the dates on which they were first contacted by the new named plaintiffs. *See, e.g.*, F.R.C.P. 16's advisory committee's note (noting that good cause exists only where the scheduling deadlines "cannot be reasonably met despite the diligence of the party seeking the extension").

Aquino Class Action and the Amato Class Action is that the Aquino Class Action names four new class representatives: Ricardo Aquino, George Crumpecker, Jonathan Piperato, and Stephen Tresco. (*See* Aquino Dkt. 1 ¶¶ 14-17.)

### 1.    *Ricardo Aquino (Illinois)*

Aquino alleges that he purchased a 2018 WRX STi from an authorized Subaru dealer in October 2018, and that his vehicle required an engine replacement due to the Piston Ringlands Defect at 64,640 miles. (Aquino Dkt. 1 ¶ 14.) Subaru paid for a majority of the engine replacement as a goodwill gesture, but Aquino claims he suffered additional incidental expenses. (*Id.*) Aquino also alleges that he suffered diminution of the value of his vehicle "as a result of class engine ringland failures becoming public knowledge." (*Id.*) Aquino attributes the diminution of his vehicle's value to Subaru's marketing of a newer model WRX STi as having stronger pistons. (*Id.*) Aquino alleges he is entitled to relief under the Illinois Consumer Fraud and Deceptive Trade Practices Act and for negligent misrepresentation. (*Id.* ¶¶ 92-118; 185-90.)

### 2.    *George Crumpecker (Colorado)*

Crumpecker alleges that he purchased a new 2009 WRX from an authorized Subaru dealer in June 2009—more than 12 years ago. (*Id.* ¶ 15.) According to Crumpecker, his vehicle required an engine replacement due to the Piston Ringland Defect at 80,000 miles in April 2018. (*Id.*) Crumpecker alleges he is entitled to relief under the Colorado Consumer Protection Act and for negligent misrepresentation. (*Id.* ¶¶ 119-39; 185-90.)

### 3.    *Jonathan Piperato (California)*

Piperato alleges that she purchased a certified pre-owned 2016 WRX STi from an authorized Subaru dealer in April 2019. (*Id.* ¶ 16.) According to Piperato, her vehicle required engine replacement due to the Piston Ringlands Defect at 78,000 miles in May 2021. (*Id.*) Piperato alleges she is entitled to relief under

California's Unfair Competition Law and the California Consumer Legal Remedies Act and for negligent misrepresentation. (*Id.* ¶¶ 140-61; 185-90.)

### 4. *Stephen Tresco (New York)*

Tresco alleges that he purchased a certified pre-owned 2018 WRX STi from an authorized Subaru dealer in October 2020. (*Id.* ¶ 17.) According to Tresco, his vehicle suffered ringlands failure at approximately 31,000 miles. (*Id.*) Tresco alleges he is entitled to relief under the New York Consumer Fraud Statute and for negligent misrepresentation. (*Id.* ¶¶ 162-90.)

## III.   Legal Argument

### A.   The Court should dismiss all claims asserted on behalf of the California and New York subclasses, because those claims are based on the same facts, brought against the same defendants, and seek the same relief on behalf subclasses identical to those asserted in the Amato Class Action.

"As part of its general power to administer its docket, a district court may consolidate, stay or dismiss a suit that is duplicative of another suit in federal court." *Washington v. Gilmore*, Civil Action No. 18-337, 2019 U.S. Dist. LEXIS 126752, at \*11 (W.D. Pa. July 29, 2019) (citing *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)); *see also Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977) (affirming dismissal of duplicative claims filed by a party attempting "to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant"); *Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007) ("[a]fter weighing the equities of the case, the district court may exercise its discretion to dismiss a duplicative later-filed action," among other things); *Agostino v. Costco Wholesale Corp.*, No. 20-1399, 2021 U.S. Dist. LEXIS 254462, at \*9 (D.N.J. Aug. 27, 2021) (noting district court's "inherent power to manage its caseload, control its docket, and regulate the conduct of attorneys before it" (internal quotations omitted)).

"'There is no reason why a court should be bothered or a litigant harassed with duplicating lawsuits on the same docket.'" *Walton*, 563 F.2d at 70 (quoting *Sutcliffe Storage & Warehouse Co. v. United States*, 162 F.2d 849, 851 (1st Cir. 1947)).

Indeed, there are many reasons why a court should <u>not</u> be bothered by duplicative lawsuits:

> The economic waste involved in duplicating litigation is obvious. Equally important is its adverse effect upon the prompt and efficient administration of justice. In view of the constant increase in judicial business in the federal courts and the continual necessity of adding to the number of judges, at the expense of the taxpayers, public policy requires us to seek actively to avoid the waste of judicial time and energy. Courts already heavily burdened with litigation with which they must of necessity deal should therefore not be called upon to duplicate each other's work in cases involving the same issues and the same parties.

*Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 930 (3d Cir. 1941). This reasoning applies with even greater force in the class action context, where the burdens associated with managing litigation are multiplied many times over. *See, e.g.*, *Murry v. Griffin Wheel Co.*, 172 F.R.D. 459, 461 (N.D. Ala. 1997) (holding that a trial court "necessarily has a great deal of discretion" because "it is the trial court which will have to manage either a substantial number of individual claims or a complicated class action"); *see also Plack v. Cypress Semiconductor (In re Cypress Semiconductor Sec. Litig.)*, 864 F. Supp. 957, 959 (N.D. Cal. 1994) ("The filing of a successive, identical class action qualifies as abusive regardless of whether class certification was granted or denied in an earlier case; both scenarios entail unnecessary duplication.").

One of the most common and powerful tools district courts use to manage their cases, including class actions, is a scheduling order entered pursuant to Fed.

R. Civ. P. 16. *See Koplove v. Ford Motor Co.*, 795 F.2d 15, 18 (3d Cir. 1986). Scheduling orders are "at the heart of case management." *Id.* They dictate, as pertinent here, the deadlines for adding new parties and claims and serve as "the unalterable map (absent good cause) for the remainder of the case." *Younes v. 7-Eleven, Inc.*, No. 13-3500, 2015 U.S. Dist. LEXIS 96392, at *6 (D.N.J. July 22, 2015)). When a court issues a scheduling order, the parties must adhere to it; if they refuse, then the court must enforce it. *See, e.g.*, *Cevdet Aksüt O.Ullari Koll, Sti v. Cavusoglu*, No. 14-3362, 2017 U.S. Dist. LEXIS 109445, at *10 (D.N.J. July 14, 2017) ("[I]f the Rules are to mean anything, parties must diligently try to follow them and courts must enforce them, even if [that] means that cases must sometimes be finally determined on procedural grounds rather than on their substantive merits."). "Disregard of the [scheduling] order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier." *Lasermaster Int'l Inc. v. Neth. Ins. Co.*, No. 15-7614, 2021 U.S. Dist. LEXIS 154100, at *5-6 (D.N.J. Aug. 13, 2021) (quoting *First Bank Puerto Rico v. Misite*, 813 F. App'x 758, 764 (3d Cir. 2020)); *Koplove*, 795 F.2d at 18 (holding that a failure to strictly adhere to the scheduling order would "deprive trial judges of the ability to effectively manage the cases on their overcrowded dockets" and "severely impair[]" the utility of scheduling orders).

The Scheduling Order in the Amato Class Action set clear deadlines for adding new plaintiffs and otherwise seeking to amend the pleadings. Those deadlines provided ample time for Class Counsel to seek amendment to add the very plaintiffs and the very claims they now seek to improperly add through this new action; they failed to do so. Rather than follow proper procedures—which would have required them to file a motion to add new plaintiffs to the Amato complaint after the deadline and show cause for their belated request—Class

Counsel instead sought to disregard the Court's Scheduling Order altogether by filing this duplicative litigation. The Court should reject Class Counsel's attempt to circumvent the Scheduling Order, and take back control of its docket, for at least two reasons.

First, it cannot reasonably be disputed that the Amato and Aquino Class Actions seek certification of identical California and New York subclasses:

| Amato Class Action | Aquino Class Action |
|---|---|
| **California Class:** All owners and former owners, lessees and former lessees of class vehicles who purchased or leased their class vehicles in the State of California and sustained monetary loss and/or diminution of class vehicles value resulting from the defendants' conduct as described in this complaint (hereinafter "proposed Indiana [sic] subclass members"). (Amato TAC ¶ 24.) | **California Subclass:** All owners and former owners, lessees and former lessees of class vehicles who purchased or leased their class vehicles in the State of California and sustained monetary loss and/or diminution of class vehicles' value resulting from the defendants' conduct as described in this complaint (hereinafter "proposed California subclass members"). (Dkt. 1 ¶ 24.) |
| **New York Class:** All owners and former owners, lessees and former lessees of class vehicles who purchased or leased their class vehicles in the State of New York and sustained monetary loss and/or diminution of class vehicles value resulting from the defendants' conduct as described in this complaint | **New York Subclass:** All owners and former owners, lessees and former lessees of class vehicles who purchased or leased their class vehicles in the State of New York and sustained monetary loss and/or diminution of class vehicles' value resulting from the defendants' |

(hereinafter "proposed New York subclass members"). (Amato FAC ¶ 24.)

conduct as described in this complaint (hereinafter "proposed New York subclass members"). (*Id.*)

The putative California and New York subclasses in both cases also assert the exact same state consumer fraud and negligent misrepresentation claims.[4] (*Compare* Amato TAC ¶¶ 206-33, *with* Aquino Compl. ¶¶ 140-61; 185-90). In both cases, those claims are being asserted against the same defendants, in the same federal District Court, based on the exact same alleged defect and nearly identical facts. And in both cases, the putative class representatives and subclasses are represented by the same Class Counsel. That Class Counsel may have found new class representatives for those subclasses is of no consequence. *Cohen IP Law Grp., PC v. IAC/InterActiveCorp*, No. CV 10-5994 CAS (FMOx), 2010 U.S. Dist. LEXIS 118948, at *4-5 (C.D. Cal. Oct. 25, 2010) ("[T]he change in putative class representatives does not impact the Court's analysis."). Because the claims and allegations asserted on behalf of the California and New York subclasses in this case are virtually identical to those asserted in this Amato Class Action, the Court has the authority to, and should, dismiss the later filed claims as duplicative.

Second, Class Counsel cannot reasonably argue that filing this lawsuit was somehow the result of an innocent mistake. As seasoned class action attorneys, Class Counsel are well aware of the process by which they must add new class representatives and claims; they've demonstrated such awareness by successfully adding new class representatives and claims in the Amato Class Action. And if

---

[4] All of those claims are still pending in the Amato Class Action, except for the New York subclass's consumer fraud claim, which, while originally pled in the Amato Class Action, was dropped from the Second and Third Amended Complaints.

they needed a reminder, this Court gave them one, when it reprimanded them for trying to file a second amended complaint in the Amato Class Action without complying with the Scheduling Order or the governing procedural rules. The Court nevertheless permitted Class Counsel's amendment, because, at that time the case was "still in its infancy, and permitting amendment at th[at] point [was] unlikely to prejudice Subaru." (Amato Dkt. 63 at 3-4.)

Nearly a year has passed since then, during which the parties have undertaken extensive discovery in the Amato Class Action. During that time, Class Counsel did not make any further attempts to add parties or claims in the case. Nor did Class Counsel express to the Court any interest in adding new class representatives, despite multiple opportunities to do so—including as recently as January 31, 2022, during a status conference held just a month before they filed this lawsuit. If anything, Class Counsel expressed an intent <u>not</u> to add new class representatives or claims, such as when they represented to Subaru that they had no such intent in order to obtain stipulated dismissals of two of their class representatives.

Given the circumstances, two things are certain: Class Counsel had little confidence that this Court would allow them to add new class representatives and new claims at such a late stage; and, out of concern that the Court would not allow them to add new plaintiffs, and because good cause does not exist for their belated request, Class Counsel filed this duplicative lawsuit. In other words, Class Counsel filed this lawsuit *for the purpose* of circumventing the deadline to add new plaintiffs in the Amato Class Action's Scheduling Order.

Class Counsel's gamesmanship is improper and should not be condoned. *See Cevdet*, 2017 U.S. Dist. LEXIS 109445 at *10; *Adams*, 487 F.3d at 688 ("Adams filed her present complaint in an attempt to avoid the consequences of her own delay and to circumvent the district court's denial of her untimely motion for leave

to amend her first complaint….the district court did not abuse its discretion in dismissing Adams's later-filed complaint with prejudice"); *James v. AT&T Corp.*, 334 F. Supp. 2d 410, 412 (S.D.N.Y. 2004) ("Filing a second identical action is not the proper procedure for . . . adding additional parties."); *Morency v. Vill. of Lynbrook P.O. Shield No. 217*, 1 F. Supp. 3d 58, 63 (E.D.N.Y. Mar. 6, 2014) ("[D]uplicative complaints may be not be filed by a plaintiff 'for the purpose of circumventing the rules pertaining to the amendment of complaints[.]'" (quoting *Curtis v. DiMaio*, 46 F. Supp. 2d 206, 216 (E.D.N.Y.1999)); *Branded Apparel Grp. LLC*, No. 17-5956, 2018 U.S. Dist. LEXIS 153937, at *14 (S.D.N.Y. Sept. 10, 2018) ("The bottom line is that Branded had every opportunity and incentive under the schedule the Court (with the parties' consent) had set to bring its claims against Muthart. For whatever reasons, it chose not to do so. The Court will not reward Branded's inattention or its subsequent gamesmanship. Accordingly, this case, Branded's against Muthart, is properly dismissed."); *George & Co. Llc v. Spin Master Corp.*, No. 20-4082, 2021 U.S. Dist. LEXIS 164295, at *2 (E.D.N.Y. Aug. 30, 2021) (if courts tolerated end runs around a scheduling order, "then every case where amendment is denied would birth a companion, new lawsuit, containing the claims that the court barred in the first lawsuit. Of course, this is not how litigation should, or does, operate"). Filing a duplicative lawsuit is also improper when done, in whole or in part, for the purpose of getting a second shot at discovery. *McCabe v. Lifetime Entm't Servs., LLC*, No. 17-CV-908-ERK-SJB, 2018 U.S. Dist. LEXIS 3212, at *44 (E.D.N.Y. Jan. 4, 2018) (dismissal of duplicative lawsuits "protect[s] parties from 'the vexation of concurrent litigation over the same subject matter.'" (internal citations and quotations omitted)).

For these reasons, the Court should dismiss all claims asserted on behalf of the California and New York subclasses from this lawsuit as duplicative of claims and subclasses asserted in the Amato Class Action.

> **B.    The Court should dismiss, with prejudice, all claims brought by the Colorado subclass's representative, Crumpecker, as barred by their respective statutes of limitation.**

"A defendant may raise the statute of limitation defense in a Rule 12(b)(6) motion if the complaint shows plainly that the cause of action is time-barred." *Lemar v. Am. Trading Corps.*, 643 F. App'x 79, 82 n.2 (3d Cir. 2016) (citing *Bethel v. Jendoco Construction Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978)). In this case, Crumpecker asserts two claims on behalf of himself and the Colorado subclass: one for violation of the Colorado Consumer Protection Act ("CCPA"), C.R.S. 6-1-105, and the other for negligent misrepresentation. (Compl. ¶¶ 119-39; 185-90). Both claims are barred by their respective two- and three-year statutes of limitation.

> 1.    *Crumpecker's CCPA claim is barred by the statute's three year statute of limitation.*

All actions brought under the CCPA must be commenced within three years after (1) "the false, misleading, or deceptive act or practice occurred," (2) "the last in a series of such acts or practices occurred," or (3) "the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice." Colo. Rev. Stat. § 6-1-115.

Here, Crumpecker alleges that Subaru violated the CCPA by failing to inform consumers "*prior to purchase and/or during the warranty period* that class engines were defective in materials, workmanship, design and manufacture and were accompanied by incorrect maintenance recommendations and maintenance intervals." (*See* Compl. ¶ 133 (emphasis added).) Crumpecker purchased his

vehicle in June 2009. (*Id.* ¶ 15.) His vehicle's engine failed and had to be replaced at 80,000 miles, after his warranty expired, in April 2018. (*Id.* ¶¶ 15, 51 (referencing 5 year/60,000 mile warranty).) Accepting those allegations as true, Crumpecker's CCPA claim could not have accrued any later than April 2018—more than three years before he filed this lawsuit. Thus, Crumpecker's CCPA claim is time barred and should be dismissed.

Crumpecker may argue that he is entitled to invoke the CCPA's one-year tolling exception. But that would require Crumpecker to plead facts that, taken as true, establish that his "failure to timely commence the action was caused by [Subaru] engaging in conduct calculated to induce [Crumpecker] to refrain from or postpone the commencement of the action." Colo. Rev. Stat. § 6-1-115; *see also In re Mercedes-Benz Antitrust Litig.*, 157 F. Supp. 2d 355, 368 (D.N.J. 2001) ("the burden of establishing a fraudulent concealment reply to a defendant's statute of limitation defense rests squarely on the plaintiff" (citing *Forbes v. Eagleson*, 228 F.3d 471, 486-87 (3d Cir. 2000))). Crumpecker has not met, and cannot meet, his pleading burden here.

Similarly, Crumpecker is foreclosed from relying on the Supreme Court's decision in *American Pipe*,[5] which held that "a timely class action tolls the claims of all putative class members." *Blake*, 927 F.3d at 708 (citing *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 552-53 (1974)). *American Pipe* does not apply to subsequently filed class actions, like this one. *Blake*, 927 F.3d at 709-10 (holding "unequivocal[ly]" that "courts may not toll new class actions under *American Pipe*, period").

---

[5] Plaintiffs' invocation of the *American Pipe* tolling doctrine in this case would be ironic, considering that one of the Supreme Court's primary justifications for imposing such tolling is the need "to avoid duplicative lawsuits." *Blake*, 927 F.3d at 708 (3d Cir. 2019) (citing *American Pipe*, 414 U.S. at 551, 553-54).

For these reasons, the Court should dismiss Crumpecker's CCPA claim as time-barred.

### 2. *Crumpecker's negligent misrepresentation claim is barred by Colorado's two-year statute of limitation.*

"Colorado's statute of limitation for negligent misrepresentation is two years." *Rosen v. Cohen*, No. 20-30482, 2020 Colo. Dist. LEXIS 4289, at *5 (D. Colo. Sept. 1, 2020 (citing Colo. Rev. Stat. § 13-80-102(1)(a)). A misrepresentation claim accrues "on the date such fraud, misrepresentation, concealment, or deceit is discovered or should have been discovered by the exercise of reasonable diligence." Colo. Rev. Stat. § 13-80-108.

Here, Crumpecker alleges that Subaru "negligently and recklessly misrepresented to the proposed class representatives and proposed class members the characteristics of class vehicles with respect to engine materials, workmanship, design and manufacture, including that the class engine had sufficient and adequate engine pistons," including "in the class vehicles' owner's manuals that incorporated incorrect engine maintenance, service recommendations and operation." (Compl. ¶ 186.) The only plausible time, under the facts alleged, that Crumpecker could have relied on these alleged misrepresentations, is when Crumpecker purchased his vehicle. Crumpecker purchased his vehicle in June 2009. (*Id.* ¶ 15.) Thus, Crumpecker's negligent misrepresentation claim accrued over a decade ago and is time-barred.

Crumpecker may attempt to argue that the statute of limitation should be tolled—even though the complaint is devoid of allegations specific to Crumpecker that would plausibly support tolling. But even taking as true the complaint's generic tolling allegations and applying them to Crumpecker, his argument would still fall short. That is because Crumpecker alleges that, in April 2018, his vehicle's engine failed and had to be replaced. (*Id.* ¶ 15.) Because any alleged defect in the

vehicle would have emanated at that time, April 2018 is the latest his claim could have accrued, assuming tolling even applied.[6] Because that occurred more than two years before he filed this lawsuit, his negligent misrepresentation claim should be dismissed as time barred.

### C.    Tresco, Piperato, and Aquino have failed to plead facts sufficient to support their negligent misrepresentation claims.

Tresco, Piperato, and Aquino each assert negligent misrepresentation claims against Subaru. Under New Jersey's choice-of-law rules, the Court must analyze the sufficiency of plaintiffs' claims under the laws of their home states—New York, California, and Illinois, respectively.

Applying their respective home state laws, plaintiffs' negligent misrepresentation claims must be dismissed. Tresco's negligent misrepresentation claim fails under New York law, because he has not alleged facts sufficient to establish a special relationship between him and Subaru. Piperato's claim fails under California's economic loss rule, because she has alleged purely economic damages. And Aquino's claim fails under Illinois's economic loss rule for the same reason, and because he has not alleged facts sufficient to fall within the few exceptions to that rule.

#### 1.    The laws of Tresco's, Piperato's, and Aquino's home states govern their negligent misrepresentation claims.

New Jersey's choice-of-law rules apply to this case. *O'Boyle v. Braverman*, 337 F. App'x 162, 165 (3d Cir. 2009). The analysis is comprised of two steps. "Procedurally, the first step is to determine whether an actual conflict exists." *P.V.*

---

[6] The same would hold true if Crumpecker attempted to invoke *American Pipe* tolling. *See supra* Section B.1.

*ex rel. T.V. v. Camp Jaycee*, 197 N.J. 132, 143 (2008).  Where a conflict exists, the second step requires the Court to apply the "most significant relationship test" of the Restatement (Second) of Conflict of Laws to determine which state's law applies. *See Cornett v. Johnson & Johnson*, 211 N.J. 362, 372 (2012). Under that test, there is a presumption that the law of the state of injury will apply "unless another state has a more significant relationship to the parties and issues." *Camp Jaycee*, 197 N.J. at 143.

Here, a conflict exists between New Jersey's law and the home state law that governs each of the plaintiffs' claims:

- ***New Jersey v. New York***. "Because New York law explicitly requires a plaintiff to allege a special relationship, there is an actual conflict between New York and New Jersey law regarding negligent misrepresentation claims." *Goodman v. Goldman, Sachs & Co.*, No. 10-1247, 2010 U.S. Dist. LEXIS 132593, at *18-19 (D.N.J. Dec. 14, 2010) (quotations omitted) ("In contrast [to New Jersey law], to state a claim under New York law, a plaintiff must allege that . . . the defendant had a duty, *as a result of a special relationship*, to give correct information . . . .") (emphasis in original); *see also Palladin Partners v. Gaon*, No. 05-3305, 2006 U.S. Dist. LEXIS 59844, at *52 (D.N.J. Aug. 22, 2006) (quotations omitted) ("Under New Jersey law, a plaintiff need not prove a special relationship but may prevail on a negligent misrepresentation claim by showing that the defendant negligently made an incorrect statement, upon which the plaintiff justifiably relied.").

- ***New Jersey v. Illinois***. A conflict exists between New Jersey's and Illinois's application of the economic loss rule to negligent misrepresentation claims. Under New Jersey law, the economic loss doctrine is construed narrowly: it does not bar negligent misrepresentation claims where "the allegedly

tortuous conduct is extraneous to the contract." *Amato v. Subaru of Am., Inc.*, No. 18-16118, 2019 U.S. Dist. LEXIS 209659, at *61 (D.N.J. Dec. 5, 2019). In contrast, Illinois's economic loss rule is broadly construed to apply unless the "plaintiff's damages were proximately caused by the negligent misrepresentation of a defendant in the business of supplying information for the guidance of others in business transactions" or "where a plaintiff sustains personal injury or property damage resulting from a sudden or dangerous occurrence." *Perdue v. Hy-Vee, Inc.*, 455 F. Supp. 3d 749, 761 (C.D. Ill. 2020).  Thus, a conflict exists between these two states' laws.

- *New Jersey v. California*. A conflict exists between New Jersey's and California's economic loss rules. In particular, for tort claims based on affirmative misrepresentations, California law recognizes a narrower exception to the economic loss doctrine than New Jersey law does. Under New Jersey law, courts consider whether the "the allegedly tortuous conduct is extraneous to the contract" when determining whether the economic loss doctrine bars negligent misrepresentation claims, *Amato*, 2019 U.S. Dist. LEXIS 209659, at *61, whereas, the exception articulated by the California Supreme Court in *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 993 (Dec. 23, 2004), is "narrow in scope and limited to a defendant's affirmative misrepresentations on which a plaintiff relies *and which exposes a plaintiff to liability for personal damages independent of the plaintiff's economic loss*." 34 Cal. 4th at 993 (emphasis added).  Thus, a conflict exists between these two states' laws.

Because conflicts exist between the laws of New Jersey and plaintiffs' home states, the Court must apply the law of the state that has the most significant relationship to plaintiffs' negligent misrepresentation claims. That analysis is guided by Sections 6 and 148 of the Restatement (Second) of Conflict of Laws.

Section 148 considers the: (1) place of plaintiff's reliance; (2) place where plaintiff received the representation; (3) place of defendant's representations; (4) the location of the parties; (5) place of the tangible thing the subject of the transaction; and (6) the place where plaintiff is to render performance under the contract. *See* Restatement § 148(2). All of these factors weigh in favor of that finding that plaintiffs' home states have the most significant relationship to their claims. All of the plaintiffs continue to reside in their home states; none of them reside in New Jersey. Plaintiffs allegedly received representations by Subaru in their home states, where the purchased their vehicles, maintained them, and had them repaired; none of them allege that Subaru made misrepresentations to them in New Jersey. Plaintiffs allege that Subaru made representations through authorized dealers located in the plaintiffs' home states, not through Subaru authorized dealers in New Jersey. And finally, to the extent an ongoing contractual relationship exists between plaintiffs and Subaru (vis-à-vis Subaru's warranty, for example), those contractual obligations would have been performed in plaintiffs' home states. These factors weigh heavily in favor of applying plaintiffs' home state laws in this case.

The factors set forth in Section 6 of the Restatement also weigh in favor of applying plaintiffs' home state laws. Section 6 considers: (1) interstate comity; (2) the interests of the parties; (3) the underlying field of law; (4) the interests of judicial administration; and, (5) the interests of the states. The Supreme Court of New Jersey has noted that factors two and four carry the least weight. *See Enry v. Estate of Merola*, 171 N.J. 86, 101–02 (2002).

On the first factor—interstate comity—the Third Circuit has been clear:

[T]he interests of interstate comity favor applying the law of the [plaintiff's] own state. Applying New Jersey law to every potential

out-of-state claimant would frustrate the policies of each [plaintiff's] state.

*Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 209 (3d Cir. 2013) (internal citation omitted).

On the second factor—the interests of the parties—the Third Circuit has been equally clear: "Because the only contacts between the parties took place in [the plaintiff's home state], it is reasonable to assume that they expected that [that state's] law would apply." *Id.* at 209–10.

The third factor—the underlying field of law—is, at best, a draw. Contract-based claims serve two purposes: compensating injured parties, which favors each plaintiff's home state, and deterring corporate misconduct, which could be construed as favoring New Jersey. *See id.* at 210.

The fourth factor—the interests of judicial administration—could ostensibly favor New Jersey, as applying a single state's law might be simpler to apply, but courts have been clear that those interests "must yield to the interests of the other factors." *Id.* (citing *Fu v. Fu*, 160 N.J. 108 (1999)).

Finally, the fifth factor—the interests of the states—plainly favors each plaintiff's home state, as "the interest [of the home state] in having its law apply to its own consumers outweighs the interests of New Jersey in protecting out-of-state consumers from consumer fraud." *Id.*

Considered together, the factors set forth in Sections 6 and 148 overwhelmingly favor application of the law of each plaintiff's home state to determine the viability of their negligence misrepresentation claims.

> 2.    *Tresco's negligent misrepresentation must be dismissed for failure to plead a special relationship beyond that of purchaser and manufacturer.*

To state a claim for negligent misrepresentation, a plaintiff must meet the "heavy burden" of pleading facts sufficient to establish, among other things, that "the defendant had a duty, as a result of a special relationship, to give correct information." *Bynum v. Fam. Dollar Stores, Inc.*, No. 20-06878, 2022 U.S. Dist. LEXIS 49968, at *15-16 (S.D.N.Y. Mar. 21, 2022); *see also Bank Hapoalim B.M. v. Bank of Am. Corp.*, No. 12-4317, 2012 U.S. Dist. LEXIS 184540, at *35 (C.D. Cal. Dec. 21, 2012) ("There is a heavy burden on plaintiffs alleging a special relationship, which must be so 'close as to be privity-like.'" (quoting *King Cty. Wash. v. IKB Deutsche Industriebank AG*, 863 F. Supp. 2d 288, 307 (S.D.N.Y. 2012))). "This [special relationship of trust or confidence] requirement carries extra weight in the commercial context, where a closer degree of trust between the parties than that of the ordinary buyer and seller is required." *Bynum*, 2022 U.S. Dist. LEXIS 49968, at *16.  "[I]n the absence of some special relationship of trust or confidence between the parties," a plaintiff's cause of action for negligent misrepresentation cannot survive.  *JTRE Manhattan Ave. LLC v. Capital One, N.A.*, No. 21-5714, 2022 U.S. Dist. LEXIS 23524, at *7 (S.D.N.Y. Feb. 9, 2022).

To determine whether a special relationship between a plaintiff and defendant exists, courts consider: "(1) whether the person making the representation held or appeared to hold unique or special expertise, (2) whether a special relationship of trust of confidence existed between the parties, and (3) whether the speaker was aware of the use to which the information would be and supplied it for that purpose." *Gordon v. Target Corp.*, No. 20-9589, 2022 U.S. Dist. LEXIS 48769, at *50 (S.D.N.Y. Mar. 18, 2022). Courts applying these factors have held that, "generally, a special relationship does not arise out of an ordinary arm's length business transaction between two parties." *Turnipseed v. Simply Orange Juice Co.*, No. 20-8677, 2022 U.S. Dist. LEXIS 38823, at *19 (S.D.N.Y. Mar. 4, 2022); *Warren v. Stop & Shop Supermarket, LLC*, No. 20-8718,

2022 U.S. Dist. LEXIS 47067, *28 (S.D.N.Y. Mar. 16, 2022) (holding that where complaint's allegations "only describe a relationship between [a] [p]laintiff and [a] [d]efendant which is that of an ordinary buyer and seller," the complaint "does not give rise to the kind of special relationship necessary to maintain a claim for negligent misrepresentation."); *Kamara v. Pepperidge Farm, Inc.*, No. 20-9012, 2021 U.S. Dist. LEXIS 216644, at *15 (S.D.N.Y. Nov. 9, 2021) (quotations and citations omitted) ("To plead a special relationship, a plaintiff must allege that he or she was a known party or parties. Being one of a class of potential recipients of a statement will not suffice."). Courts have applied that rationale with equal force to negligent misrepresentation claims brought against product manufacturers and distributors: "the relationship between [a] [d]efendant, as the manufacturer and seller, and [a] [p]laintiff as the buyer, does not rise to the level of the kind of special relationship—approaching that of privity—that would impose a duty to speak on Defendant." *Warren*, 2022 U.S. Dist. LEXIS 47067, at *28.

 In this case, Tresco asserts a negligent misrepresentation claim against SOA, the distributor of class vehicles, and SBR, the designer and manufacturer of class vehicles. (*See* Compl. ¶¶18-19; 185-90.) Setting aside his conclusory allegations, it appears that the crux of Tresco's misrepresentation claim is that SOA and SBR "include[ed] information in the class vehicles' owner's manual that incorporated incorrect engine inspection and service intervals." (*Id.* ¶ 187.) Tresco alleges that SOA's and SBR's inclusion of incorrect inspection and service intervals in owners' manuals gives rise to special relationship, "in light of defendants' exclusive and superior knowledge concerning class engine defects and the existence of related to safety concerns." (Id. ¶ 188.). These allegations, taken as true, are not sufficient to support a negligent misrepresentation claim under New York law.

 First, this is case between a buyer and the distributor and manufacturer of a product, and New York law makes clear that a dispute between parties to this sort

of transaction "does not rise to the level of the kind of special relationship" required to state a claim for negligent misrepresentation. *Warren*, 2022 U.S. Dist. LEXIS 47067, at *28.

Second, Tresco does not allege that SOA or SBR misrepresentations were directed specifically to him. Rather, the alleged misrepresentations were made in owner's manuals applicable to respective model and model year of class vehicles generally. Statements to a "class of potential recipients" does not give rise to a special relationship under New York law. *Kamara v. Pepperidge Farm, Inc.*, No. 20-9012, 2021 U.S. Dist. LEXIS 216644, at *15 (S.D.N.Y. Nov. 9, 2021).

Finally, a defendant's exclusive and superior knowledge concerning the subject of the misrepresentation, which, under certain circumstances, could give rise to a duty to disclose for *fraudulent concealment claims*, does not satisfy the special relationship element of a negligent misrepresentation claim under New York law. *See Oden v. Boston Sci. Corp.*, 330 F. Supp. 3d 877, 899, 900-01 (E.D.N.Y. June 4, 2018); *see also Bynum*, 2022 U.S. Dist. LEXIS 49968, at *16-17 ("Plaintiff asserts that his negligent misrepresentation claim is viable because Defendant had special knowledge and experience in the sale of consumer goods and knew that Plaintiff[s] would rely on those claims. These allegations, however, fall short of establishing a special relationship between Plaintiff and Defendant."); *KCG Americas LLC v. Brazilmed, LLC*, No. 15-4600, 2016 U.S. Dist. LEXIS 30497, at *23 (S.D.N.Y. Feb. 26, 2016) (quotations omitted) ("Allegations that a party has superior knowledge about the particulars of [his] own business practices is insufficient to sustain a negligent misrepresentation claim."); *RKA Film Fin., LLC v Kavanaugh*, 171 A.D.3d 678, 679-680 (N.Y. App. Div. 2019). Subaru's alleged exclusive and superior knowledge is the primary basis for Tresco claiming a special relationship with Subaru here, and that is not sufficient as a matter of law

to sustain a negligent misrepresentation claim under New York law. (Compl. ¶ 188.)

Subaru is mindful that, in the Amato Class Action, this Court previously rejected an argument that a New York plaintiff's and New Jersey plaintiff's negligent misrepresentation claims should be dismissed for failing to plead a special relationship beyond that of a purchaser and manufacturer. *See Amato*, 2019 U.S. Dist. LEXIS 209659, at *64. However, in doing so, the Court relied on cases applying New Jersey law, namely *Coba v. Ford Motor Co.* and *In re Volkswagen Timing Chain Prod. Liab. Litig.*. Unlike New York law, which governs here, New Jersey law does not require a special relationship to sustain a claim for negligent misrepresentation. Moreover, at the time the Court decided the issue in *Amato*, it did not have benefit of several 2022 opinions addressing this very issue under New York law. *See, e.g.*, *Gordon*, 2022 U.S. Dist. LEXIS at *50; *Bynum*, 2022 U.S. Dist. LEXIS at *15-16. Because New York law applies, the Court's prior determination in *Amato* is no impediment to reaching the right outcome here and dismissing Tresco's negligent misrepresentation claim.

　　　　3.　　*The economic loss doctrine bars Piperato and Aquino's negligent misrepresentation claims.*

It is well-settled under California and Illinois law that the economic loss doctrine bars common law fraud and misrepresentation claims based on allegations that a product did not perform as expected. *Sonneveldt v. Mazda Motor of Am., Inc.*, No. 19-01298, 2021 U.S. Dist. LEXIS 4190, at *24 (C.D. Cal. Jan. 4, 2021) (holding the economic loss rule applies to negligent misrepresentation claims under California law); *Rudy v. Fam. Dollar Stores, Inc.*, No. 21-3575, 2022 U.S. Dist. LEXIS 20426, at *21 (N.D. Ill. Feb. 4, 2022) (dismissing an Illinois plaintiff's negligent misrepresentation claim pursuant to the economic loss

doctrine).  Here, Piperato and Aquino assert negligent misrepresentation claims under California and Illinois law, respectively, based on allegations their class vehicles did not perform as expected.  Their claims fail as a matter of law.

        a.      California's economic loss rules bars Piperato's claim.

Under California's economic loss rule, a purchaser may only "recover in contract for purely economic loss due to disappointed expectations unless the purchaser can demonstrate harm above and beyond that caused by a contractual promise." *Glassburg v. Ford Motor Co.*, No. 2:21-cv-01333-ODW (MAAx), 2021 U.S. Dist. LEXIS 211786, at *27 (C.D. Cal. Nov. 2, 2021); *Sonneveldt*, 2021 U.S. Dist. LEXIS at *24.

Here, Piperato, who purchased her vehicle in California, alleges that Subaru negligently misrepresented "the characteristics of the class vehicles . . . including that the class engine had sufficient and adequate engine pistons." (Compl. ¶ 186). As a result, Piperato claims she suffered "monetary damages," based on her disappointed expectations about the vehicle's longevity.  (*See id.* ¶ 189.)  Piperato does not allege that Subaru's representations caused her property or personal injury.  Because Piperato's negligent misrepresentation claim seeks purely economic damages, it is barred by the economic loss rule.

Piperato may argue that her claim falls within the *Robinson* exception to the economic loss rule. *Robinson Helicopter Co.*, 34 Cal. 4th at 993. However, in a decision this Court recently endorsed, the California Supreme Court held that the *Robinson* exception is "limited to a defendant's affirmative misrepresentations on which a plaintiff relies, and which expose a plaintiff to liability for personal damages independent of the plaintiff's economic loss." *Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194, 236 (D.N.J. 2020) (quoting *Robinson Helicopter Co.*, 34 Cal. 4th at 993).  Thus, as a threshold matter, for the *Robinson* exception to

apply a plaintiff must, at a minimum, plead "harm above and beyond a broken contractual promise." *Id.* (quoting *Robinson Helicopter Co.*, 34 Cal. 4th at 993). "[M]ere speculation about the heighted risk of accidents is not the same kind of exposure to liability the court in *Robinson Helicopter* was describing as sufficient to remove a case from the economic loss rule's ambit." *Glassburg*, 2021 U.S. Dist. LEXIS at \*28 (citing *Robinson Helicopter*, 34 Cal. 4th at 986).

Here, aside from plaintiffs' generic allegations that the defect poses a serious safety issue, (*see* Compl. ¶ 9), there are no allegations that could plausibly support a finding that Piperato, in fact, experienced a safety issue. Rather, Piperato simply alleges that she needed an engine replacement because of the alleged defect, and that she had incurred monetary damages as a result. (*Id.* ¶¶ 16, 189.) Generic allegations about hypothetical safety concerns are not enough to plead around the economic loss doctrine. For example, in *Glassburg*, the plaintiff alleged that a safety defect established harm beyond economic loss. 2021 U.S. Dist. LEXIS at \*29. The court rejected the plaintiff's argument, holding that allegations that a defect emanated "only once and for an unspecified period of time" was not sufficient to establish noneconomic harm. *Id.* Because Piperato has alleged no instances in which the defect put her safety in jeopardy, she economic loss rule still applies. Piperato's negligent misrepresentation claim must be dismissed.

> b.   Illinois's economic loss rules bars Aquino's claim.

Under Illinois law, the economic loss doctrine "denies a remedy in tort to a party whose complaint is rooted in disappointed contractual or commercial expectations." *Rudy*, 2022 U.S. Dist. LEXIS 20426, at \*21 (quoting *Manley v. Hain Celestial Grp., Inc.*, 417 F. Supp. 3d 1114, 1120 (N.D. Ill. 2019)).

Here, Aquino, who purchased his vehicle in Illinois, alleges that that Subaru negligently misrepresented "the characteristics of the class vehicles . . . including

that the class engine had sufficient and adequate engine pistons." (Compl. ¶ 186). As a result, Aquino claims he suffered "monetary damages," based on his disappointed expectations about the vehicle's longevity. (*See id.* ¶ 189.) Aquino does not allege that Subaru's representations caused him property or personal injury. Absent such damage, Aquino's negligent misrepresentation claim is barred by the economic loss rule.

Aquino may argue that his allegations fall within one of three exceptions to the economic loss doctrine under Illinois law: "(1) where a plaintiff sustains personal injury or property damage resulting from a sudden or dangerous occurrence; (2) where plaintiff's damages were proximately caused by defendant's intentional, false representation; and (3) where plaintiff's damages were proximately caused by the negligent misrepresentation of a defendant in the business of supplying information for the guidance of others in business transactions." *Perdue*, 455 F. Supp. 3d at 761. The Court should reject any such argument.

First, Aquino fails to allege any personal or property damage beyond the damage to his class vehicles. Second, the "'intentional misconduct' exception to the economic loss doctrine cannot apply to negligent misrepresentation claims because by definition fraud is intentional and negligence is not." *Willard v. Tropicana Mfg. Co.*, No. 20-1501, 2021 U.S. Dist. LEXIS 247990, at *43 (N.D. Ill. Dec. 30, 2021). And third, Subaru's alleged misrepresentations were "merely ancillary to the sale of" the class vehicles, and Aquino failed to allege that Subaru was "in the business of providing information in the manner intended by the [negligent misrepresentation] exception to the economic loss doctrine." *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 218 Ill. 2d 326, 339 (2006); *Rudy*, 2022 U.S. Dist. LEXIS 20426, at *21; *see also Wallis v. Card Servs. Int'l, Inc.*, No. 10-7250, 2012 U.S. Dist. LEXIS 70932, *25 (N.D. Ill. May 22, 2012) ("The

negligent misrepresentation exception is typically applied to pure information providers."); *Trudeau v. Lanoue*, No. 04-7165, 2006 U.S. Dist. LEXIS 7956, *23 (N.D. Ill. Mar. 2, 2006) ("As the law makes clear, the reference to being in the business of supplying information for the guidance of others in *Moorman* is intended to refer to businesses that focus on such guidance such as surveyors and real estate brokers."). Because Aquino has not plead facts sufficient to invoke an exception to the economic loss rule, his negligent misrepresentation claim must be dismissed.

**D.    The Court should consolidate any claims that survive dismissal in this case with the Amato Class Action.**

In accordance with Local Civil Rule 42.1, Subaru filed a motion in the Amato Class Action to consolidate any claims in the Aquino Class Action that survive this motion to dismiss. (*See* L.R. 42.1 ("A motion to consolidate two or more civil cases pending upon the docket of the Court shall be filed in the case bearing the earliest docket number. That motion shall be adjudicated by the Judge to whom that case is assigned.").) For the reasons set forth more fully in Subaru's motion to consolidate, Subaru respectfully requests that any claims not dismissed in this matter be consolidated with the Amato Class Action, and that the Court amend the scheduling order applicable to the consolidated Amato and Aquino Class Actions as follows:

| Deadline | Amato Scheduling Order (Dkt. 83) | Consolidated Cases' Scheduling Order |
|---|---|---|
| Fact Discovery – Amato Class Action | February 25, 2022 | February 25, 2022 (no change) |

| Fact Discovery – Aquino Class Action | n/a | Factual discovery related to the newly-asserted class representatives (the "Aquino Class Representatives") and their claims in the Aquino Class Action is permitted only as follows: (a) within 21 days of this Order, Subaru shall produce all documents related to the Aquino Class Representatives' vehicles; (b) within 21 days of this Order, Subaru may serve written discovery, subject to the presumptive limits set under the Federal Rules of Civil Procedure, on the Aquino Class Representatives, to which the Aquino Class Representatives will have 14 days to respond; and (c) within 49 days of receiving the Aquino Class Representatives' written discovery responses, Subaru may depose each Aquino Class Representative. No additional fact discovery by any of the parties will be permitted. All discovery motions and applications pursuant to L. CIV. R. 37.1(a)(1) related to the discovery outlined in this section shall be filed no later than 77 days after the entry of this Order. |
|---|---|---|

| | | |
|---|---|---|
| All expert reports and expert disclosures pursuant to FED. R. CIV. P. 26(a)(2) on behalf of Plaintiffs | March 1, 2022 | Within 21 days of this Order, Plaintiffs may submit a narrow amendment to their damages expert report to calculate the estimated damages for the Colorado, Illinois, California, and New York subclasses. |
| All expert reports and expert disclosures pursuant to FED. R. CIV. P. 26(a)(2) on behalf of Defendants | April 29, 2022 | Within 56 days of this Order, Defendants may submit expert reports and expert disclosures pursuant to FED. R. CIV. P. 26(a)(2). |
| Any rebuttal expert reports | May 31, 2022 | Within 85 days of this Order, the parties may submit rebuttal expert reports. |
| Depositions of proposed expert witnesses | June 30, 2022 | Within 120 days of this Order, the parties must complete depositions of proposed expert witnesses. |
| Telephonic Status Conference | June 7, 2022 at 2:00 P.M. | To be rescheduled by the Court. |
| Any motion for class certification | August 1, 2022 | Any motion for class certification shall be filed on or before September 30, 2022, or 30 days after the Court decides the Aquino Motion to Dismiss, whichever is later. |
| Dispositive Motions | August 1, 2022 | Any dispositive motions shall be filed on or before September 30, 2022, or 30 days after the Court decides the Aquino Motion to Dismiss, whichever is later. |

- 36

Consolidating these cases and imposing a relatively short extension of the Amato Class Action deadlines will help mitigate the undue prejudice caused by Class Counsel filing duplicative class actions, while also serving the interest of justice and promoting judicial efficiency and economy.

## IV.    Conclusion

For the foregoing reasons, the Court should grant Subaru's motion to dismiss and consolidate any surviving claims or subclasses claims with the Amato Class Action.

Dated: April 11, 2022

Respectfully submitted,

*s/Neal Walters*

Neal Walters (ID No. 020901993)
waltersn@ballardspahr.com
BALLARD SPAHR LLP
700 East Gate Drive, Suite 330
Mount Laurel, New Jersey 08054-0015
(856) 761-2400
(856) 761-1020 fax