**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| RICARDO AQUINO, GEORGE CRUMPECKER, JONATHAN PIPERATO and STEPHEN TRESCO, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>v.<br><br>SUBARU OF AMERICA, INC., and SUBARU CORPORATION,<br><br>      Defendants. | Civil Action No. 1:22-cv-00990 |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**MOTION TO DISMISS IN PART AND CONSOLIDATE**

**KANTROWITZ, GOLDHAMER**
**& GRAIFMAN, P.C.**
Gary S. Graifman
Daniel Edelman
135 Chestnut Ridge
Montvale, New Jersey 07645
Tel: (201) 391-7000
Fax: (201) 307-1086
Email: ggraifman@kgglaw.com
dedelman@kgglaw.com

**THOMAS P. SOBRAN, P.C.**
Thomas P. Sobran
7 Evergreen Lane
Hingham, MA 02043
Tel: (781) 741-6075
Fax: (781) 741-6074
Email: tsobran@sobranlaw.com

*Counsel for Plaintiffs*

# **TABLE OF CONTENTS**

I.   INTRODUCTION......................................................................................................1

   A.   The *Aquino* action does not impermissibly duplicate claims in *Amato*......................2

   B.   The discovery rule tolls the stature of limitations........................................................3

   C.   Regardless of the outcome of the choice of laws analysis, Tresco, Piperato and
        Aquino have sufficiently alleged their negligent misrepresentation claims..............4

II.  STATEMENT OF FACTS.........................................................................................5

   A.   Defendants' knowledge of the piston ringlands defect preceded all Plaintiffs'
        Vehicle purchases......................................................................................................10

   B.   Defendants' Concealment of the Piston Ringlands Defect......................................12

III. LEGAL STANDARD...............................................................................................14

IV.  LEGAL ARGUMENT...............................................................................................15

   A.   The Court Should not dismiss the Aquino claims asserted on behalf of California
        and New York subclasses as those claims were voluntarily dismissed in the
        *Amato* action and are therefore not duplicative.......................................................15

       1.   The California claims alleged in *Aquino* are not duplicative because the
           California claims in *Amato* were terminated upon the filing of stipulation
           Dismissing Connolly as a party...................................................................17

       2.   The pre-certification dismissal and withdrawal of Connolly and Lall mooted
           Their claims in *Amato*...................................................................................18

       3.   The sole reference to a New York claim in Amato is clearly a scrivener's
           Error...............................................................................................................19

   B.   Plaintiff Crumpecker's consumer protection and negligent misrepresentation
        claims are timely.......................................................................................................21

       1.   Crumpecker's claims did not accrue until time of discovery.........................22

   C.   Tresco Piperato and Aquino have pled facts sufficient to support their negligent
        misrepresentation claims...........................................................................................25

       1.   Choice if laws analysis is premature at the pleading stage.............................26

a. The negligent misrepresentation claim plausibly alleges misrepresentation of material facts concerning class engine pistons..................................................................................27

b. The Complaint alleges defendants' exclusive, superior knowledge of the piston ringlands defect and that defendants owed a duty of disclosure.................................................................................28

2. Tresco adequately alleges negligent misrepresentation under both New Jersey and New York law........................................................................................30

3. Exemptions To The Privity Requirement........................................................34

4. Negligent misrepresentation law has not changed since *Amato* and Defendant's case cited as authority are distinguishable................................35

5. Piperato (California) and Aquino's (Illinois) negligent misrepresentation claims are not barred by the economic loss doctrine......................................37

D. The Court should not consolidate the *Aquino* and *Amato* actions.........................38

V. CONCLUSION……………………………………………………………………..40

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                 **Page(s)**

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*,
 404 F.3d 566 (2d Cir. 2005) ........................................................................ 32

*Amato v. Subaru*,
 2019 WL 6607148 (D.N.J. December 5, 2019).............................................Passim

*Amerisure Ins. Co. v. Scottsdale Ins. Co.*,
 795 F.Supp.2d 819 (S.D. Ind. June 15, 2011) ............................................ 20

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (May 21, 2007) ...................................................................... 15

*Bernor v. Takeda Pharm. Am., Inc.*,
 2018 WL 588563 (C.D. Cal. Jan. 25, 2018)................................................. 18

*Billinger v. Weinhold*,
 531 F.App'x 928 (10 Cir. 2013) .................................................................. 21

*Borough of Olyphant v PPL Corp.*,
 135 Fed. App'x. 80 (3d. Cir. 2005) ............................................................. 39

*Bret Harte Union High Sch. Dist. v. FieldTurf, USA, Inc.*,
 2016 WL 3519294 (E.D. Cal. June 27, 2016) ............................................. 38

*Bynum v. Fam. Dollar Stores, Inc.*,
 2022 U.S. Dist. LEXIS 49968 (S.D.N.Y. Mar. 21, 2022)........................... 36

*Catalano v. BMW of N. Am., LLC*,
 167 F.Supp. 3d 540 (S.D.N.Y. 2016) .......................................................... 34

*Commercial Space Mgmt. Co. v. Boeing Co.*,
 193 F.3d 1074 (9th Cir. 1999) .................................................................... 18

*Connelly v. Lane Const. Corp.*,
 809 F.3d 780 (3d Cir. 2016) ........................................................................ 15

*Decius v. National Service Industries, Inc.*,
 2001 WL 1621924 (S.D.Fl. Nov. 1, 2001) ................................................. 20

*Dewey v. Volkswagen AG*,
 558 F. Supp. 2d 505 (D.N.J. 2008) ......................................................... 25, 33

*Dimon Inc. v. Folium, Inc.*,48 F.Supp.2d 359 (S.D.N.Y. May 3, 1999)
48 F.Supp.2d 359 (S.D.N.Y. May 3, 1999). ............................................................................ 31

*Easton & Co. v. Mutual Benefit Life Insurance Co.*,
1992 WL 448794 (D.N.J. Nov. 4, 1992) ...................................................................... 38, 39

*Employers-Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Anchor Capital Advisors*,
498 F.3d 920 (9th Cir. 2007) ............................................................................................ 18

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*,
375 F.3d 168 (2d Cir.2004) ....................................................................................... 32, 33

*Farahmand v. Rumsfeld*,
2002 WL 31630709 (E.D.Pa. Nov. 20, 2002) ................................................................... 40

*Feldman v. Mercedes-Benz USA, LLC et al.*,
2012 WL 6596830 (D.N.J. Dec. 18, 2012)....................................................................... 29

*First Nat'l Bank of Toms River, N.J. v. Marine City, Inc.*,
411 F.2d 674 (3d. Cir. 1969) ............................................................................................ 17

*George v. Jaguar Land Rover N. Am., LLC*,
2021 WL 5195788 (D.N.J. Nov. 8, 2021) ......................................................................... 34

*Gordon v. Target Corp.*,
2022 U.S. Dist. LEXIS 48769 (S.D.N.Y. Mar. 18, 2022)...................................................... 36

*Hedges v. United States*,
404 F.3d 744 (3d Cir. 2005) ............................................................................................ 15

*Hitt v. Arizona Beverage Co. LLC*,
2009 WL 4261192 (S.D. Cal. Nov. 24, 2009)..................................................................... 19

*Hubbard v. GMC,* Case No. 95-7362,
1996 U.S. Dist. LEXIS 6974 (S.D.N.Y. May 22, 1996) ........................................................ 34

*In re Bath & Kitchen Fixtures Antitrust Litig.*,
535 F.3d 161 (3d Cir. 2008) ............................................................................................ 17

*In re Chi. Flood Litig.*,
680 N.E.2d 265 (Ill. 1997).............................................................................................. 38

*In re Consolidated Parlodel Litigation*,
182 F.R.D. 441 (D.N.J.1998) ........................................................................................... 38

*In re Subaru Battery Drain Products Liability Litigation*,
2021 WL 1207791 (D.N.J. March 31, 2021)................................................................. 34, 35

*In re Volkswagen Timing Chain Prod. Liab. Litig.*,
  2017 WL 1902160 (D.N.J. May 8, 2017)...........................................................Passim

*Kamara v. Pepperidge Farm, Inc.,* No. 20-9012,
  2021 U.S. Dist. LEXIS 216644, at *4 (S.D.N.Y. Nov. 9, 2021)............................... 36

*Kimmell v. Schaefer,*
  89 N.Y.2d 257 (1996)............................................................................... 31, 32

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
  313 U.S. 487 (1941) ......................................................................................... 27

*Klimarski v. Parexel Intern.*,
  2005 WL 857350 (E.D.Pa Apr. 4, 2005).......................................................... 38

*Kuzian v. Electrolux Home Prods., Inc.*,
  937 F.Supp.2d (D.N.J. 2013).......................................................................... 31

*Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp.*,
  149 F.R.D. 65 (D.N.J. May 14, 1993) .............................................................. 39

*Lightning Lube, Inc. v. Witco,Corp.*,
  4 F.3, 1158 (3d Cir. 1993) ................................................................................ 29

*Majdipour v. Jaguar Land Rover N. Am., LLC*,
  2013 WL 5574626 (D.N.J. Oct. 9, 2013) ..................................................... 29, 33

*Mickens v. Ford Motor Co.*,
  900 F. Supp. 2d 427 (D.N.J. 2012)................................................................... 15

*Nasik Breeding & Research Farm Ltd. v. Merck & Co., Inc.*,
  165 F.Supp.2d 514 (S.D.N.Y. Aug. 30, 2001) ................................................. 31

*Nichols v. Burlington N. and Santa Fe Ry. Co.*,
  56 P.3d 106 (Colo. App. 2002)....................................................................... 23

*Noga v. Fulton Financial Corp. Employee Benefit Plan*,
  19 F.4th 264 (3d Cir. 2021) .............................................................................. 17

*Norfolk Southern Railway Co. v. New York Terminals, LLC*,
  2016 WL 7338531 (D.N.J. Dec. 19, 2016)................................................... 39, 40

*Oaster v. Robertson*,
  173 F.Supp3d 1150 (D.Colo. March 28, 2016) ............................................... 22

*O'Connor v. BMW of North America, LLC,*
2020 WL 1303285 (D. Colo. March 19, 2020) ................................................................... 24, 25

*Opheim v. Aktiengesellschaft,*
2021 WL 2621689 (D.N.J. June 25, 2021) ......................................................................... 35, 38

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank,*
647 N.E.2d 741 (N.Y. 1995) ................................................................................................. 29

*Peterson v. Jensen,*
371 F.3d 1199 (June 8, 2004) ................................................................................................ 21

*Roth v. CNR Products, Inc.,*
2020 WL 5747809 (W.D. September 25, 2020) ...................................................................... 20

*Saltiel v. GSI Consultants, Inc.,*
170 N.J. 297 (2002) .............................................................................................................. 28

*Schwartzco Enterprises LLC v. TMH Management, LLC,*
60 F.Supp.3d 331 (E.D.N.Y. Nov. 17, 2014) .......................................................................... 31

*Skilstaf, Inc. v. CVS Caremark Corp.,*
2010 WL 199717 (N.D. Cal. Jan. 13, 2010) ........................................................................... 19

*Skilstaf, Inc. v. CVS Caremark Corp.*
669 F.3d 1005 (9th Cir. 2012) ............................................................................................... 19

*Smith v. Phillips,*
881 F.2d 902 (10th Cir. 1989) ............................................................................................... 18

*State Nat'l Ins. Co. v. Cnty. of Camden,*
824 F.3d 399 (3d Cir. 2016) .................................................................................................. 17

*Subaru Distribs. Corp. v. Subaru of Am., Inc.,*
425 F.3d 119 (2d Cir. 2005) .................................................................................................. 34

*Tello v. Dean Witter Reynolds, Inc.,*
410 F.3d 1275 (June 1, 2005) ................................................................................................ 21

*Toys "R" Us, Inc. v. Step Two, S.A.,*
318 F.3d 446 (3d Cir. 2003) .................................................................................................. 15

*Turnipseed v. Simply Orange Juice Co.,* No. 20-8677,
2022 U.S. Dist. LEXIS 38823 (S.D.N.Y. Mar. 4, 2022) ........................................................... 36

*Ultramares Corporation v. Touche,*
255 N.Y. 170 (1931) ............................................................................................................. 33

*Wall v. Dillon County Detention Center.*,
  2015 WL 1145035 (D.S.C.  Jan. 13, 2015) ............................................................... 20

*Waste Distillation Tech., Inc. v. Pan American Resources, Inc.*,
  775 F.Supp. 759 (D.Del.1991) ................................................................................. 39

*Whitington v. Sokol*,
  491 F.Supp.2d 1012 (D. Colo 2007) ........................................................................ 21

*Wilcox v. Taco Bell of America, Inc.*,
  2011 WL 3566687 (M.D. FL. August 15, 2011)....................................................... 20

Statutes

C.R.S.A. § 6-1-115 ........................................................................................................ 22
C.R.S.A. § 13-80-108(3)................................................................................................. 22

Rules

Fed. R. Civ. P. 41 .......................................................................................................... 17
Fed. R. Civ. P. 42(a) ..................................................................................................... 39
Fed. R. Civ. P. 8(a) ............................................................................................... 14, 25
Fed. R. Civ. P. 9(b) ...................................................................................... 25, 30, 32
Fed. R. Civ. P. 41 .............................................................................................. 16, 17, 18

## I.      INTRODUCTION

Subaru Corporation (hereinafter "SBR") and Subaru of America, Inc. (hereinafter "SoA") (hereinafter collectively referred to as "Subaru" or "Defendants") withheld material disclosures concerning engine components known to the Defendants to be defective and incorporated in 2009 through and including 2018 model year Impreza WRX and WRX STi passenger vehicles (hereinafter "class vehicle(s)").   As a result of these defective components, class vehicle engines experience premature cataclysmic failures and require between $5,000.00 to $6,500.00 or more in repairs to remedy the defects.   The proposed class representatives and members of the proposed classes request monetary damages against the Defendants based upon their breach of express warranty, breach of implied warranty, misrepresentation and unfair and deceptive business practices.

This class action case was commenced on February 24, 2022 to preserve the rights of class vehicle owners whose causes of action did not accrue until mid to late 2021 (long after it would have been practical, or even permissible) to amend the complaint in *Amato*[1] (an earlier filed parallel class action) to add the Plaintiffs in *Aquino* as parties.[2]   Class Counsel concluded that the only realistic option for

---

[1] *Amato, et al. v. Subaru Corporation, et al.*, United States District Court for the District of New Jersey, Civil Action No. 2:18-cv-16118-JHR.

[2] *See Aquino* complaint ("Complaint") at ¶ 14 Ricardo Aquino's ("Aquino") engine failed in July 2021; ¶ 16 Jonathan Piperato's ("Piperato") engine failed in May 2021; ¶ 17 Stephen Tresco ("Tresco") purchased his vehicle in October 2020.   George Crumpecker ("Crumpecker") (collectively "Plaintiffs") did know of the existence of the Subaru ringlands class action until late

vindicating the rights of the *Aquino* Plaintiffs and proposed state subclasses was to commence *Aquino* as a separate action rather than request leave of Court to amend the *Amato* complaint.  Three factors drove this course of conduct.  First, *Amato* fact discovery was winding up, aside from ministerial housekeeping.  Second, trying to shoehorn the *Aquino* Plaintiffs into *Amato* would substantially delay *Amato* which was fast approaching the critical juncture of expert witness disclosure and class certification.  Third, commencing *Aquino* was consistent with the representations of Plaintiffs' counsel and the agreement reached with counsel for Subaru that *Amato* would not be amended to include new Plaintiffs or claims which comported with the operative scheduling order governing complaint amendment.

### A.   The *Aquino* action does not impermissibly duplicate claims in *Amato.*

The proposed class representatives in *Amato* represent prospective state subclasses and consumer claims that are wholly distinct from the proposed class representatives, subclasses and claims alleged in *Aquino*.   Thus, Defendants' contention that the *Aquino* action duplicates *Amato* is false

Although the *Aquino* Plaintiffs allege product defect claims similar to those in *Amato,* the *Aquino* Plaintiffs represent different state subclasses than those in *Amato* and there are no overlapping plaintiffs.  Plaintiff Aquino asserts consumer

---

Autumn of 2021.  The Scheduling Order set September 25, 2020 (a year <u>before</u> the *Aquino* plaintiffs' class engines failed), as the deadline for adding new plaintiffs to the *Amato* action. *See Amato* Scheduling Order ECF no. 38.

fraud claims on behalf of an Illinois subclass alleging violations of Illinois' Consumer Fraud and Deceptive Trade Practices Act (Count I). Plaintiff Crumpecker asserts claims on behalf of a Colorado subclass alleging violations of Colorado's Consumer Protection Act (Count II). Plaintiff Piperato asserts claims on behalf of a California subclass alleging violations of California's Unfair Competition Law (Count III) and the California Consumer Legal Remedies Act (Count IV). Plaintiff Tresco asserts claims on behalf of a New York subclass alleging violations of New York's Consumer Fraud Statute (Gen. Bus. Law § 349) (Count V). Consequently, there is simply no merit to Subaru's contention that *Aquino* duplicates *Amato*. For further elaboration, the Court is respectfully referred to the Opposition of Plaintiffs James B. Moore, George Sandoval and Andrew Hinshaw to Subaru of America, Inc. and Subaru Corporation's Motion to Consolidate and for Sanctions filed contemporaneously with this opposition.

### B. The discovery rule tolls the statute of limitations

Subaru argues that plaintiff Crumpecker's claims for negligent misrepresentation and violations of the Colorado Consumer Protection Act ("CCPA") are time barred. As an initial matter, it is premature for claims to be dismissed as untimely at the pleading stage. Moreover, Plaintiffs allege that Subaru continually misrepresented and concealed the nature and existence of the Piston Ringlands Defect. Because the accrual of claims involving allegations of

misrepresentation and concealment are tolled by the discovery rule, Subaru cannot satisfy its burden of showing that it is apparent from the face of the Complaint that Plaintiffs will not be able to prove that their claims are timely.

### C. Regardless of the outcome of the choice of laws analysis, Tresco, Piperato and Aquino have sufficiently alleged their negligent misrepresentation claims

In *Amato,* Defendants asserted the same discredited argument they raise here, that "Plaintiffs' negligent misrepresentation claim fail[s] to plead a special relationship beyond that of purchaser and manufacturer." *Amato,* 2019 WL 6607148, at *20. This Court held that Defendants' "fail[ed] to sufficiently explain a conflict between laws of [New York and New Jersey]." *Id.* Consequently, the Court applied New Jersey law to plaintiff Lall's negligent misrepresentation claim brought on behalf of a New York subclass, and denied Defendants' motion to dismiss. Negligent misrepresentation law has not changed in New York or New Jersey in the two years since this Court's 2019 decision in *Amato.* Accordingly, New Jersey law should be applied to Tresco's negligent misrepresentation claim brought on behalf of the New York subclass.[3]

---

[3] Regardless of whether New Jersey or New York law applies, this Court acknowledged that specific ambiguous partial disclosures or statements by manufacturers, such as those set forth more fully below, may impose a duty to disclose. *Id.* Affirmative misrepresentations by a vehicle manufacturer arise "when the manufacturer has exclusive or superior knowledge regarding the defect or if the defect relates to a safety concern." *Id.* (quoting *In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160, at *21).

Subaru misconstrues the economic loss doctrine as posing an absolute bar to Piperato and Aquino's negligent misrepresentation claims. As this Court held in *Amato,* "[a]n incorrect statement, negligently made and justifiably relied upon, may be the basis for recovery of damages for economic loss or injury sustained as a consequence of that reliance." *Amato,* at *20. California (Piperato's home state) recognizes an exception to the economic loss doctrine when fraudulent omissions or concealment by automobile manufacturers is alleged. Similarly, California and Illinois (Aquino's home state) refuse to apply the economic loss doctrine and allowed tort claims to proceed based on conduct that is either independent of a contract or where there is a risk of personal injury.

## II.    STATEMENT OF FACTS

Defendants market and sell Impreza WRX and STi series model vehicles as high-performance sports cars. What Subaru does not tell purchasers is that the WRX's engine is prone to unanticipated catastrophic failure due to engine defects that creates the potential for loss of engine power, stalling and/or leaving the driver stranded in the middle of the road without warning. Either of these scenarios constitute a clearly recognized safety hazard. Complaint ¶¶ 8-9. Class vehicles are defective with respect to three interconnected issues: (1) improperly designed and *manufactured* pistons; (2) an engine management system that fails to properly manage fuel, turbocharger boost and other engine parameters; and, (3) and a PCV

(positive crankcase ventilation) system that allows low octane oil vapors and other gases from the crankcase to be recirculated to the combustion chamber resulting in pre-ignition detonation. These defects subject class engines to premature catastrophic piston ringlands failure (the "Piston Ringlands Defect"). Complaint ¶ 4. Piston ringlands are machined into the aluminum piston castings and hold the three piston rings in position. *See* Complaint, Fig. 1 for exemplar EJ-25 piston depiction and piston nomenclature. Complaint Fig. 2 depicts a Subaru EJ-25 piston with damaged ringlands.

In order to create the high performance WRX and WRX STi series vehicles sought after by Subaru's marketing executives, Defendants made modifications to nearly double the horsepower output of the WRX and WRX STi engines over the standard base 2.5-liter engine. Complaint ¶ 5. These performance improvements created substantially increased horsepower without including other necessary engine modifications to prevent damage to the piston ringlands caused by additional loading forces generated by the increased engine power output. *Id*. This is particularly true since the 2.5-liter engine used for class engines was itself derived from a lower output earlier production 2.0-liter engine that had more durable forged pistons. *Id*. The net effect was to create a more powerful output engine with poorly designed PVC and engine management systems equipped with pistons improperly manufactured out of inferior materials that prematurely failed. Complaint ¶¶ 4-7,

34-35.  Shortly after the production of class engines commenced, Subaru had actual knowledge that the Piston Ringlands Defect was causing extensive irreversible premature performance degradation in class engines. Complaint ¶ 48.

Subaru concealed class vehicle engine defects from Plaintiffs and the proposed classes.[4]  Aquino's 2018 class vehicle engine experienced the Piston Ringlands Defect at 64,640 miles in July 2021 and required premature engine replacement.  Crumpecker's 2009 class vehicle engine experienced the Piston Ringlands Defect at 80,000 miles in April 2018 requiring more than $8,000.00 in out of warranty repairs.  Complaint ¶¶ 14-15. Piperato incurred repair costs in excess of $13,000.00 when his 2016 class vehicle engine failed at 78,000 miles in May 2021 because of the Piston Ringlands Defect. Complaint ¶ 16.  Tresco purchased his 2018 class vehicle in October 2020, which experienced ringlands failure at 31,000 miles, at an estimated repair cost of $7,000.00-$12,000.00.  Complaint ¶ 17.

The allegations concerning the Piston Ringlands Defect are succinctly set forth at ¶¶ 34-35 of the Complaint.  Paragraph 34 states:

> EJ255, EJ257 and FA class engines have been subject to constant
> upgrades in performance since their introduction without

---

[4] Class vehicles are defined as 2009 through 2018 model year Impreza WRX and WRX STi vehicles at ¶ 1.  Depending on the model and year, class vehicles use either the EJ255, EJ257 or FA20 engines ("class engines"). Complaint ¶¶ 3, 34-35.  The Complaint references 2008 WRX and WRX STi vehicles listed in the National Highway Traffic Safety Administration reports (that Subaru is legally required to monitor) referenced in the Complaint that experienced class engine ringlands failures.  Complaint ¶¶ 33, 48.  Failure of these earlier model year class engines demonstrates Subaru's knowledge of the Piston Ringlands Defect in 2009 class vehicles.  These failures occurred years before any of the Plaintiffs' class engines/vehicles were manufactured.

corresponding modifications to engine[] internal components to handle the more than considerable horsepower and torque increases, creating a more powerful engine output than the materials were originally meant to handle.  As a consequence of using unmodified stock materials from the standard 2.5 liter base engine in WRX and WRX STi more powerful high output applications, class engines cannot and do not tolerate these performance increases without predictable premature internal component failure at the engine piston ringlands.

Paragraphs 35 and 37 of the Complaint describe a severely mismatched engine with problems exacerbated by the need to comply with EPA vehicle emission standards and fuel economy requirements.  Complaint ¶¶ 35-37.  This caused Defendants to run leaner air-fuel mixtures in the class engines and modify engine operation parameters.  The result was to "further strain[] the already overstressed internal engine components of the class vehicles including the piston ringland [load] bearing surfaces." Complaint ¶ 37; *see also*, Complaint ¶¶ 4-7.

In mid 2018, the Defendants "announced in their press release and consumer advertising that the 2019 model year WRX STi was '[p]owered by a 2.5-liter turbocharged BOXER engine, the WRX STI increases horsepower to 310 with the help of a new air intake and high flow performance exhaust. A **retuned ECU** and **stronger pistons** also contribute to the increased engine performance.'" (emphasis in original).  Complaint ¶ 36.  *See also* Complaint Ex. A.  "This admission [by Subaru] confirms that the WRX and WRX STi class engines had existing insufficient strength pistons because a mere 1.6% increase in engine horse power wouldn't

require higher strength pistons given dynamic factor of safety overload design considerations." *Id*.  In reality, these modifications were implemented to remedy long-standing Subaru piston ringland issues and specifically address the class engine Ringlands Piston Defect. Complaint ¶¶ 34-35.

The consequences of the engine Piston Ringlands Defect are severe and include the sudden loss of power and/or stalling that significantly compromises the owner's ability to maintain vehicle control. Complaint ¶¶ 8-9.  This failure also causes sudden and catastrophic engine self-destruction when the pistons fracture, break apart and/or seize. *Id*., *see also* Complaint Figure 2.  The Piston Ringlands Defect poses a serious safety issue as a loss of engine power during operation of the vehicle on the road, without warning, could result in stalling, loss of power steering and reduced braking. Complaint ¶ 9.  Despite this, the Owner's Manual and Warranty & Maintenance Booklet for class vehicles do not contain any inspection, maintenance or service information for the defective class engine pistons or piston ringlands. Complaint ¶ 10.  It has been estimated that approximately twenty-five percent (25%) of all 2.5-liter STi engines experience premature ringlands failure, a phenomenally high failure rate in the world of automotive engineering.  Complaint n.10.  Class engine Piston Ringlands Defect failure can cost $8,000.00 to $12,000.00 to repair if a new engine block is required. *Id*.

### A. Defendants' knowledge of the piston ringlands defect preceded all Plaintiffs' vehicle purchases

The Complaint details Defendants' prior knowledge and concealment of the defect. For example, the Complaint documents the design history of the engine, alternative fabrication materials, and manufacturing methods by Subaru since before 2008 in an attempt to fix the problem. These modifications demonstrate that there was a continuing problem with the EJ255 and EJ257 engines since their introduction that has yet to be resolved. This problem also effects the FA20 direct injection engine derived from the EJ255 engine. Complaint ¶¶ 34-35 & n.4.[5]

Defendants certainly knew no later than early 2008 of the class engine Piston Ringlands Defect, as this was "the date indicative of a design and/or manufacturing change" intended to remedy the ringlands defect. Complaint ¶ 52 & n.4. The Complaint further alleges "[p]rior to manufacturing and then distributing a new part, Defendants perform substantial field inspections, testing and quality review of vehicles in service to determine the root cause and diagnosis of the problem." Given

---

[5] The Complaint n.4 recites in its entirety:

"All 2.5 liter turbo engines manufactured in certain months experienced engine quality control issues requiring SoA to issue an immediate a stop sale order on April 7, 2008 for 2008-2009 Subaru vehicles sold in the United States. The purpose of the stop sale was to allow Subaru and SoA to investigate 'Engine Knocking Noise' affecting the 2.5 liter engines after '[a]n internal investigation confirm[ed] an internal wear issue on the failed units.' Subaru also developed a modification to the Engine Control Module software logic that improved combustion management to reduce ringland failure at higher engine revolutions."

that the process of creating the new specifications for modifications, and the lead-up to commence manufacturing "takes at least 12 months of lead time under normal circumstances," the Defendants knew by early 2008 that the engines in the class vehicles inherited the Piston Ringlands Defect and would prematurely fail. Complaint ¶¶ 38, 40.  Despite this knowledge, "defendants continued to sell class vehicles with an engine that was defective." Complaint ¶ 52.

Defendants as automobile manufacturer (*e.g*., SBR) and representative U.S. agent (SoA) are required by law to carefully monitor the National Highway Traffic Safety Administration's Office of Defect Investigation ("NHTSA-ODI") database because they are obligated to keep abreast of reported defects and notify NHTSA of any defects that raise a safety concern within five (5) days under the TREAD Act. Complaint ¶ 33.  The Complaint details multiple complaints made to NHTSA-ODI as early as 2009 for events of failure which occurred as early as mid-2008. *See* NHTSA-ODI excerpts at ¶ 33.  These specific factual allegations and others further document how Defendants were placed on notice no later than 2008 of the Piston Ringlands Defect.  Complaint ¶ 64.

The Complaint details the hierarchy of investigative departments that Subaru purposefully maintains to track down, analyze and determine the root cause of defects such as the Piston Ringlands Defect, including a "Product Safety Manager" assigned to monitor defects (including the Piston Ringlands Defect), NHTSA

database and a "Field Service Engineer" assigned to "proactively monitor and investigate the product quality" issues. ¶ 39.   This "[a]dditional information supporting allegations of fraud and fraudulent conduct is in the control of the defendants.  This information includes but is not limited to technical root cause analyses, communications with class vehicles owners, remedial measures, warranty claims and internal corporate communications concerning how to deal with consumers who claim their class engines' engine contained the Piston Ringland Defect." Complaint ¶ 65.

Accordingly, there can be no dispute concerning Subaru's prior knowledge of the Piston Ringlands Defect prior to the sale of Plaintiffs' class vehicles.

**B.   Defendants' concealment of the piston ringlands defect**

Despite knowledge of the Piston Ringlands Defect that occurred no later than April 7, 2008, (when SoA issued a stop sale order and then modified "the Engine Control Module software logic that improved combustion management to reduce ringland failure at higher engine revolutions")[6], Defendants intentionally concealed the defect and issued false information to mislead Plaintiffs and the class.  Complaint n.4.  The Defendants "failed to inform class vehicle owners and lessees prior to purchase or lease or during the express warranty period that their engine was defective as a result of the Piston Ringlands Defect and would fail shortly after the

---

[6] *See* Complaint at n.4.

warranty period expired." Complaint ¶ 49. Although "class engines were failing due to materials, workmanship, manufacture, or design defects," Defendants fraudulently attributed failed ringlands to other factors and/or exculpating conditions for which they would have no responsibility. Complaint ¶¶ 44, 60.  Plaintiffs and other class vehicle owners "did not possess sufficient technical expertise to recognize the symptoms of impending engine failure" even though the information "was well known to defendants, but not revealed." Complaint ¶ 53; *see also* Complaint ¶¶ 42, 44.  The Complaint further alleges Plaintiffs and class members relied on fraudulent statements and omissions of the Defendants, including the recommended maintenance schedule program, Defendants' failure to disclose any known engine defects and the expected class engine durational longevity.  In fact, "[t]he defendants actively concealed the true reasonably expected duration of the class engine's pistons from the proposed class representative and all class vehicle purchasers." Complaint ¶¶ 55-58.  Defendants' customer service telephone representatives made false and fraudulent misrepresentations to class members as to the cause and existence of defects in the class vehicles although Subaru was receiving hundreds of consumer complaints that the engines in the class vehicles prematurely failed as a result of the Piston Ringlands Defect. Complaint ¶ 60. Defendants sought to conceal the Piston Ringlands Defect during the warranty

period so that the repair costs would be shifted to the proposed class vehicle owners once the warranty expired and the class engines failed. Complaint ¶ 63.

The Defendants continuously and affirmatively concealed the actual characteristics of class vehicles from the proposed class representative and other purchasers.  The Defendants breached their affirmative duty of disclosure to class vehicles owners (and particularly to owners who inquired as to the cause of class vehicles engine failures).[7] Complaint ¶¶ 60, 71 & n.17.

Confronted with Piston Ringlands Defect allegations and widespread reports of owners nationwide experiencing identical issues with WRX and WRX STi class vehicles, Subaru's response has been to avoid all responsibility, leaving consumers to pay for the full cost of the engine repair or replacement.[8]

The Complaint alleges violations of California, Colorado, Illinois and New York consumer protection statutes together with negligent misrepresentation.

### III.   LEGAL STANDARD

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atl. Corp.*

---

[7] Since unexpected engine failure is a serious safety issue particularly on limited access highways, the Defendants had an affirmative duty to disclose class vehicle defects together with associated risks.

[8] Plaintiffs did not possess sufficient technical expertise to recognize symptoms of impending engine piston ringlands failure that would occur shortly after the warranty expired.  This technical information was in the possession of the Defendants but actively and affirmatively concealed. Complaint ¶¶ 44, 49, 52, 53, 63.

*v. Twombly,* 550 U.S. 544. 570 (2007).   In determining whether dismissal is warranted for failure to state a claim under Rule 12(b)(6), the reviewing court must accept all allegations in the complaint as true and construe all inferences in a light most favorable to the non-moving party.  *Connelly v. Lane Const. Corp.,* 809 F.3d 780, 788-90 (3d Cir. 2016).; *Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 457 (3d Cir. 2003).  Defendants have the burden of showing that Plaintiffs have not stated a facially plausible claim. *Mickens v. Ford Motor Co.,* 900 F. Supp. 2d 427, 434 (D.N.J. 2012) (citing *Hedges v. United States,* 404 F.3d 744, 750 (3d Cir. 2005)).  A complaint demonstrates "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Twombly,* at 570.

## IV.   LEGAL ARGUMENT

### A. The Court should not dismiss the *Aquino* claims asserted on behalf of California and New York subclasses as those claims were voluntarily dismissed in the *Amato* action and are therefore not duplicative

Subaru takes the novel position that the California and New York subclass claims asserted in *Amato* continue to survive, despite the fact that there are no class representatives remaining in *Amato* to assert any claims on behalf of the California and New York subclasses.  On November 16, 2021, the parties entered a stipulation dismissing plaintiff Connolly (*Amato* ECF no. 77), the sole California class

representative, from the *Amato* action[9].  Pursuant to Rule 41(a)(1)(A)(ii), all claims alleged by Connolly on behalf of the California subclass terminated upon entry of the parties' stipulation.

Plaintiffs' counsel withdrew the New York subclass claims in *Amato* when they amended their pleadings to remove Lall as a plaintiff and proposed New York subclass representative from the second amended complaint filed Sept. 25, 2020. *See Amato* ECF no. 41.  No New York state subclass representative was included the subsequent *Amato* third amended complaint as it was the intent of Plaintiffs' counsel to proceed without a New York representative or subclass.  Despite removing all reference to Lall and his allegations from the *Amato* second and third amended complaints, Defendants argue that an apparent scrivener's error that left a vestigial reference to the New York subclass in the sub-caption of the negligent misrepresentation claim in the *Amato* Third Amended Complaint ("TAC"), evidences that Plaintiffs did not abandon their New York subclass negligent misrepresentation claim.  *See Amato* TAC at 53.

---

[9] Prior to entering the Stipulation dismissing Connolly, Class Counsel emailed Defendants' counsel stating, "this confirms that we will be dismissing the claims of Plaintiffs Connelly [sic] and Amato with prejudice from the *Amato* Action.  As further confirmed, we do not intend to add any further plaintiffs to the *Amato* Action."

As Subaru would have it, Plaintiffs' New York and California subclass claims in *Amato* endure, despite having no class representative for either the California or New York subclasses prior to class certification.

### 1. The California claims alleged in *Aquino* are not duplicative because the California claims in *Amato* were terminated upon the filing of stipulation dismissing Connolly as a party

Voluntary dismissal is generally governed by Rule 41(a), which permits dismissal of single parties in multiparty actions. Rule 41(a)(1)(A)(ii) provides that the plaintiff may dismiss an action without court approval by filing a stipulation of dismissal signed by all parties who have appeared. Fed. R. Civ. P. 41. "Because a dismissal under Rule 41(a)(1)(A)(ii) does not require a court order or approval, we have held that '[t]he entry of such a stipulation of dismissal is effective automatically.'" *State Nat'l Ins. Co. v. Cnty. of Camden,* 824 F.3d 399, 406 (3d Cir. 2016) (quoting *First Nat'l Bank of Toms River, N.J. v. Marine City, Inc.,* 411 F.2d 674, 677 (3d. Cir. 1969)); *Noga v. Fulton Financial Corp. Employee Benefit Plan,* 19 F.4th 264, 270-271 (3d Cir. 2021); *In re Bath & Kitchen Fixtures Antitrust Litig.,* 535 F.3d 161, 165 (3d Cir. 2008). "Every court to have considered the nature of a voluntary stipulation of dismissal under Rule 41(a)(1)(A)(ii) has come to the

conclusion that it is immediately self-executing.  No separate entry or order is required to effectuate the dismissal."[10]

As noted above, on November 16, 2021, the parties entered a voluntary pre-certification stipulation dismissing Connolly, the sole California class representative from the *Amato* action.  *See, Amato,* ECF no. 77.  As of that date, Connolly's claims on behalf of himself and the California subclass terminated "as if no action had ever been filed."  Consequently, the California subclass claims asserted in *Aquino,* which was commenced on February 24, 2022, did not overlap, much less duplicate, any pending claims in *Amato.*

### 2. The pre-certification dismissal and withdrawal of Connolly and Lall mooted their claims in *Amato*

In *Amato,* Connolly and Lall were the only named plaintiffs representing the putative classes from California and New York, respectively.  When these named plaintiffs voluntarily dismissed and withdrew their respective claims against Defendants, "their claims became moot, thereby depriving the Court of subject matter jurisdiction." *Bernor v. Takeda Pharm. Am., Inc.,* No. LACV 12-04856, 2018 WL 588563, at *5 (C.D. Cal. Jan. 25, 2018) (citing, *inter alia, Employers-Teamsters*

---

[10] *See also State Nat'l Ins. Co.,* 824 F.3d 399, 406-07; *Commercial Space Mgmt. Co. v. Boeing Co.,* 193 F.3d 1074, 1079-80 (9th Cir. 1999) ("It follows… that the district court has no role to play once a notice of dismissal under Rule 41(a)(1) is filed.  The action is terminated at that point, as if no action had ever been filed.").  "Once the voluntary stipulation is filed, the action on the merits is at an end."  *State Nat'l Ins. Co.,* 824 F.3d 399, 407; *Smith v. Phillips,* 881 F.2d 902, 904 (10th Cir. 1989).

*Local Nos. 175 & 505 Pension Trust Fund v. Anchor Capital Advisors,* 498 F.3d 920, 924 (9th Cir. 2007)).

Neither Piperato nor Tresco requested to substitute into *Amato* as new class representatives for the putative California and New York classes.  Further, because the California and New York subclasses have not been certified, the substitution of class representatives, if requested, would not have been permitted. *See, Skilstaf, Inc. v. CVS Caremark Corp.,* No. C 09-02514 SI, 2010 WL 199717, at *6 (N.D. Cal. Jan. 13, 2010) ("Ordinarily, substitution of class representatives is permitted only after a class has already been certified.  This is because when the named plaintiff's claim is dismissed at the pleading stage, there is no longer an Article III 'case or controversy' between the parties, and the action must be dismissed.") (citations omitted)), *aff'd,* 669 F.3d 1005 (9th Cir. 2012); *Hitt v. Arizona Beverage Co. LLC,* No. 08-cv-809 WQH-POR, 2009 WL 4261192, at *5 (S.D. Cal. Nov. 24, 2009) ("When deciding whether substitution of plaintiffs may be permitted after the named plaintiff's claims are voluntarily dismissed or otherwise become moot, the paramount consideration is whether the putative class has been certified.").

Consequently, the only way that Piperato (on behalf of the California class) and Tresco (on behalf of the New York class) could vindicate their rights and members of the subclasses was to commence the *Aquino* class action.

### 3.  The sole reference to a New York claim in *Amato* is clearly a scrivener's error

The *Amato* complaint was amended to remove Lall as a party and to dismiss the claims he asserted on behalf of the New York subclass.   While removing reference to Lall and his claims from the amended *Amato* complaints, a single reference to the New York class inadvertently remained in the negligent misrepresentation claim caption.   It was an oversight, as Class Counsels' intention was clearly to amend the pleadings to remove Lall and the New York subclass.   *See, e.g., Wall v. Dillon County Detention Center.,* 2015 WL 1145035 (D.S.C.  Jan. 13, 2015) (scrivener's error in Title VII count mistakenly alleging race discrimination and retaliation instead of sex and age discrimination deemed abandoned); *Decius v. National Service Industries, Inc.,* 2001 WL 1621924, at *1 (S.D.Fl. Nov. 1, 2001) (court presumed a scrivener's error in allegations when discussing facts alleged the complaint); *Roth v. CNR Products, Inc.,* 2020 WL 5747809, at *3 ("A simple Scrinver's error does not justify the sanction of attorney's fees and costs."); *Wilcox v. Taco Bell of America, Inc.,* 2011 WL 3566687, at *4 ("Although Defendants assert that this court lacks subject matter jurisdiction over this dispute, they move to dismiss pursuant to Rule 12(b)(6) and the FAA.  The Court will assume that the citation to Rule 12(b)(6) was a scrivener's error, and instead focus on the FAA."); *Amerisure Ins. Co. v. Scottsdale Ins. Co.,* 795 F.Supp.2d 819, 827-28 (S.D. Ind. June 15, 2011) (the pleadings taken as a whole supported that cross-claim demanding reimbursement of $450,000 contribution rather than $950,000 was merely a

scrivener's error and that the other party had full notice of the claim). Reading the *Amato* TAC in its entirety, it is clear that Plaintiffs intended to withdraw all New York subclasses' allegations and claims including negligent misrepresentation. Thus, Tresco's negligent misrepresentation claim in *Aquino* is not duplicative.

### B. Plaintiff Crumpecker's consumer protection and negligent misrepresentation claims are timely

The statute of limitations is an affirmative defense. *Billinger v. Weinhold,* 531 F.App'x 928, 929 (10 Cir. 2013). Plaintiffs are not required to negate an affirmative defense in their complaint and a claim may only be dismissed as untimely at the Rule 12(b)(6) stage "only if it appears beyond a doubt that Plaintiffs can prove no set of facts that toll the statute." *Whitington v. Sokol,* 491 F.Supp.2d 1012, 1018 (D. Colo 2007) (citing *Tello v. Dean Witter Reynolds, Inc.,* 410 F.3d 1275, 1288 n. 13 (11th Cir. 2005)); *Peterson v. Jensen,* 371 F.3d 1199, 1201 (court should not dismiss a complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim entitling him to relief). Defendants failed to satisfy their burden of showing it is apparent from the face of the Complaint, when read with the required liberality, that Plaintiffs will not be able to prove their claims are timely.

Defendants argue that Crumpecker's negligent misrepresentation claim is untimely because his claim accrued when he purchased his vehicle in 2009. Brief in Support of Defendants' Motion to Dismiss, in Part, and for Consolidation of

Remaining Claims ("Def. Br.") at p. 21.   For Crumpecker's CCPA claim, Defendants argue that that claim could not have accrued any later than April 2018, when Crumpecker's vehicle's engine failed and had to be replaced.  Def. Br. at 20. Defendants are wrong at both turns.

### 1.  Crumpecker's claims did not accrue until time of discovery

Under Colorado law, the accrual of claims for misrepresentation and concealment are governed by the discovery rule.  C.R.S.A. § 13-80-108(3).  Thus, Crumpecker's claims alleging negligent misrepresentation did not begin to accrue until the date where the misrepresentation and/or concealment was discovered or should have reasonably been discovered. *Id.*   ("A cause of action for fraud, misrepresentation, concealment, or deceit shall be considered to accrue on the date such fraud, misrepresentation, concealment, or deceit is discovered or should have been discovered by the exercise of reasonable diligence.").

Crumpecker's consumer protection claim alleging violations of the CCPA also benefits from the discovery rule. *See Oaster v. Robertson,* 173 F.Supp3d 1150, 1174 (applying the discovery rule to CCFA claim).  C.R.S.A. § 6-1-115 provides:

> All actions brought under this article must be commenced within three years after the date on which the false, misleading, or deceptive act or practice occurred or the date on which the last in a series of such acts or practices occurred or within three years ***after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice***. (emphasis added)

Crumpecker acquired his class vehicle in June 2009. Complaint ¶ 15. Although he alleges that his class vehicle experienced premature engine failure in April 2018, Crumpecker did not learn that his class engine was defective until well after his engine failed. Complaint ¶¶ 15, 59. Far from disclosing the class vehicle engine Piston Ringland Defect, Defendants' customer service telephone representatives made false representations as to the cause and existence of defects in class vehicles, and Defendants' employees denied the existence of the Piston Ringland Defect. Complaint ¶ 60.[11] Accordingly, neither Crumpecker, nor any of the Plaintiffs allege they knew of the Piston Ringland Defect with their engines (as opposed to a symptom of the undisclosed defect) when they observed either excessive oil consumption, engine knock, or total engine failure—nor could they. Instead, Plaintiffs allege just the opposite: while they knew of various symptoms degrading their class vehicles' engine performance, they were unaware that these symptoms were the product of a defective engine because Subaru kept telling them

---

[11] While Defendants argue that the only plausible time that Plaintiff Crumpecker could have relied on Defendants' alleged misrepresentations is when Crumpecker purchased his car in 2009, Def. Br. at 21, at no point was Crumpecker aware of the underlying cause of his vehicle's engine defects. In accordance with Colorado law, "[the] claim for relief accrues when a reasonable person knows or should have known of both the injury **and its governing cause**. This rule requires an objective inquiry into when the plaintiff knew or, in the exercise of reasonable diligence, should have known the essential facts of the injury **and its cause**." *Nichols v. Burlington N. and Santa Fe Ry. Co.*, 56 P.3d 106, 109 (Colo. App. 2002) (emphasis added) (finding that, under the discovery rule, a claim accrues where a claimant is aware of the problem and its probable cause, and that mere suspicion of a cause is not enough for a claim's accrual).

that their engines were operating normally and that their engines were free of defects. Having been reassured over and over that symptoms of their class vehicles' defective engines were allegedly not something that required a repair and not the result of an underlying defect, Crumpecker (nor the other Plaintiffs) could not have known or discovered the defect when they purchased their cars and subsequently brought them to Subaru dealers to diagnose, repair or replace their class engines.

Defendants' misrepresentations to Plaintiffs each time they presented their vehicles to Subaru dealers during the warranty period form the basis of Plaintiffs' negligent misrepresentation and consumer protection (*e.g.,* CCPA) claims. Negligent misrepresentation and CCPA claims did not accrue at the time of purchase because Defendants continued to make misrepresentations long after that date.

In another automotive case in Colorado, BMW raised the same theory Subaru argues here that a CFAA claim alleging certain engine defects accrued at the time plaintiffs purchased their vehicles, and that their subsequent actions were untimely. *See, O'Connor v. BMW of North America, LLC,* 2020 WL 1303285, at *3-4. The *O'Connor* court applied the discovery rule and rejected the defendant's argument that the claim accrued at the time of purchase. "Plaintiffs allege that they were precluded from knowing the severity of the defect because of Defendant's misrepresentations and concealment … Based on Plaintiffs' allegations in the First Amended Complaint, Defendant failed to disclose the defect to Plaintiffs …

Plaintiffs assert that Defendant continued to represent to BMW consumers that the oil consumption was normal and not a defect, despite Defendant's knowledge to the contrary." *O'Connor,* 2020 WL 1303285, at *4. "[V]iewed in the light most favorable to Plaintiffs, their allegations plausibly suggest that Plaintiffs were unaware of the defect and Defendant concealed the fact that the engines may have been defective. Therefore, the accrual of Plaintiffs' CCPA claims involves a question of fact that cannot be resolved at this stage." *Id.*

## C. Tresco Piperato and Aquino have pled facts sufficient to support their negligent misrepresentation claims

"Plaintiffs' negligent misrepresentation claim is subject only to the notice pleading standard of Federal Rule of Civil Procedure 8(a)." *Dewey v. Volkswagen AG,* 558 F. Supp. 2d 505, 529 (D.N.J. 2008). Paragraph 47 of the Complaint states that "defendants fraudulently, intentionally, negligently and/or recklessly concealed from the proposed class representatives and proposed class members the Piston Ringland Defect in class engines even though the defendants knew or should have known of design, materials and manufacturing defects in class vehicles due to defendants' testing of class engines and other activities." Looking at the same set of facts, this Court held in *Amato,* "Plaintiffs' have adequately pled both misrepresentations and omissions under the Rule 9(b) and 8 standards." *Amato,* 2019 WL 6607148, at *20.

## 1.  Choice of laws analysis is premature at the pleading stage

This is Defendants' second attempt to convince this Court to apply the laws of a plaintiff's home state to their negligent misrepresentation claims.  In *Amato,* Defendants asserted the same argument they present here that "[p]laintiffs' negligent misrepresentation claim fail[s] to plead a special relationship beyond that of purchaser and manufacturer."  *Amato,* 2019 WL 6607148, at *20.  However, this Court held that Defendants' "fail[ed] to sufficiently explain a conflict between laws of [New York and New Jersey]." *Id*.  Similarly, Defendants fail to demonstrate a conflict between the laws of California or Illinois with New Jersey relating to negligent misrepresentation.  Because the law governing negligent misrepresentation is fairly settled, and certainly has not changed in any of these jurisdictions within the last two years since this Court's 2019 decision in *Amato,* this Court should apply New Jersey law to the *Aquino* negligent misrepresentation claims as in *Amato.*

Defendants incorrectly argue choice-of-law rules dictate that the law of each Plaintiff's home state governs his claims, and, to the extent they are asserted under New Jersey law, they must be dismissed.  However, Defendants are correct that New Jersey's choice of law principles are applicable here since federal courts with diversity jurisdiction apply the choice of law principles of the forum state. *In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160, at *10 (D.N.J. May

8, 2017) (citing to *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941).  Not only have Defendants failed to articulate an actual conflict between New Jersey law and those of the *Aquino* Plaintiffs, there also not enough facts in the record to support a choice of law analysis at this stage. "[T]he choice of law analysis has routinely been found to be premature at the motion to dismiss phase of a class action lawsuit, especially when certain discovery is needed to further develop the facts that will be used in the choice of law analysis." *In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160, at *10 (citing cases) ("the most significant relationship test is a fact-sensitive inquiry"). *Id.*  Since no discovery has taken place in *Aquino*, the record as to which state bears the most significant relationship is far too undeveloped at this stage to support a "fact-sensitive inquiry" for choice of law analysis.

> **a. The negligent misrepresentation claim plausibly alleges misrepresentation of material facts concerning class engine pistons**

Subaru argues that when applying New York law, plaintiff Tresco's negligent misrepresentation claim fails to allege privity or a special relationship so close as to approach that of privity between himself and Defendants that would impose a duty to speak on Defendants.  Def. Br. at 27-28.

"[W]hile New Jersey Courts have found no special relationship between individual consumers and automobile manufacturers that would impose a duty to

disclose on the manufacturers, they have also found specific ambiguous partial disclosures or statements by [manufacturers] may impose such duty to disclose on the manufacturers." *Amato,* 2019 WL 6607148, at *21. Under New York law, "affirmative misrepresentations and omissions by a vehicle manufacturer may lie when the manufacturer has exclusive or superior knowledge regarding the defect or if the defect relates to a safety concern." *In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160, at *21.[12]

### b. The Complaint alleges defendants' exclusive, superior knowledge of the piston ringlands defect and that defendants owed a duty of disclosure

A complaint's allegations of a defendant's material omissions support a negligent misrepresentation claim if the defendants owed an independent legal duty to disclose. *Saltiel v. GSI Consultants, Inc.*, 170 N.J. 297, 315 (2002). Here, the Defendants owed a duty to disclose class vehicle engine piston defects and safety implications since they were in exclusive possession of material information

---

[12] The Complaint articulates Defendants' affirmative representations and incomplete representations that misled class vehicle owners concerning the useful and expected life of class vehicles, recommended scheduled maintenance and the cause of class engine piston failures. Complaint ¶¶ 44, 61-62, 65-67, 77-78, 100. These representations created a reasonable belief that the engine pistons were non-maintenance engine lifetime components with a useful life expectancy in excess of 120,000 miles. Complaint ¶ 61. The affirmative statements appeared in the Owner's Manual and Warranty & Maintenance Booklet materials. Complaint ¶¶ 61, 100. The Complaint also alleges that the Defendants' customer service representatives affirmatively misrepresented the existence of engine piston defects and the cause for class vehicles' failures and consequent warranty coverage. Complaint ¶¶ 66-67.

concerning the defect. Complaint ¶¶ 75-77, 102, 223. These allegations are sufficient to establish that the Defendants possessed superior and exclusive knowledge of the defect and, as such, owed a duty of full disclosure to class vehicle owners. *See Majdipour v. Jaguar Land Rover N. Am., LLC*, 2013 WL 5574626, at *17 (D.N.J. Oct. 9, 2013) (duty of disclosure owed where manufacturer with exclusive knowledge of defect through "pre-release testing data, early consumer complaints . . . testing conducted in response to those complaints, high failure rates and replacement parts sales data contained in [Land Rover's] warranty databases, as well as high reimbursement claims paid to Land Rover dealers"); *Feldman v. Mercedes-Benz USA, LLC et al.*, 2012 WL 6596830, at *11 (D.N.J. Dec. 18, 2012); *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 647 N.E.2d 741, 745 (N.Y. 1995).[13]

A second independent duty of disclosure is present here since the Defendants misrepresented the attributes of the class engine's piston maintenance and owed a duty to correct the prior misrepresentations. "[W]here a claim for fraud is based on silence or concealment, New Jersey courts will not imply a duty to disclose, unless such disclosure is necessary to make a previous statement true ... " *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1158 (3d Cir. 1993). "[W]hen the defendant purports to convey the 'whole truth' about a subject, 'misleading half-truths' about

---

[13] The Defendants also owed a duty to class vehicle owners to correct their improper maintenance recommendations and intervals set forth in the Owner's Manual and Warranty & Maintenance Booklet materials that affected vehicle operation and safety. Complaint ¶¶ 75-78.

the subject may constitute positive assertions for the purpose of negligent misrepresentation." *OCM Principal Opportunities Fund v. CIBC World Mkts. Corp*., 157 Cal.App.4th 835, 854, 68 Cal.Rptr.3d. 828 (2007). Here, the Complaint alleges that Defendants conveyed attributes of class engine pistons to purchasers through the owner's manual, service pamphlet and other materials. Complaint ¶¶ 61, 73, 125, 178. Defendants' failure to disclose piston defect information in their exclusive possession amounted to "misleading half-truths" and constitute positive assertions for purposes of claims of negligent misrepresentation. Accordingly, the Defendants owed a duty of disclosure to correct the prior misrepresentations.

The Defendants' affirmative statements alleged in the Complaint are more than sufficient to maintain the negligent misrepresentation count. *Amato,* 2019 WL 6607148, at *20-21 (Plaintiffs' allegations satisfied Rule 8 and 9(b) pleading standards); *In re Volkswagen Timing Chain Prod. Liab. Litig*., 2017 WL 1902160, at *18 (describing actionable affirmative misrepresentations based on statements in warranty manuals, maintenance schedules, warranty application and cause of component failure that are substantially similar to the allegations made here).

### 2. Tresco adequately alleges negligent misrepresentation under both New Jersey and New York law.

Subaru argues that plaintiff Tresco's negligent misrepresentation claim must be dismissed for failure to plead a special relationship beyond that of purchaser and manufacturer. Def. Br. at Section III(C)(2). "Under New York law a claim for

negligent misrepresentation requires the plaintiff to demonstrate (1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." *Kuzian v Electrolux Home Products, Inc.,* 937 F.Supp.2d 599, 615 (D.N.J. 2013)(citations omitted).  The factors used to determine whether a special relationship exists are: (1) "whether the person making the representation held or appeared to hold unique or special expertise," (2) "whether a special relationship of trust of confidence existed between the parties," and (3) "whether the speaker was aware of the use to which the information would be supplied it for that purpose." *Kimmell v. Schaefer,* 89 N.Y.2d 257, 265 (1996).

"The issue of whether or not a special relationship exists is generally not susceptible to resolution at the pleading stage." *Nasik Breeding & Research Farm Ltd. v. Merck & Co., Inc.,* 165 F.Supp.2d 514 536 (S.D.N.Y. Aug. 30, 2001); *Dimon Inc. v. Folium, Inc.,* 48 F.Supp.2d 359, 373 (S.D.N.Y. May 3, 1999).   Courts entertaining a motion to dismiss a negligent misrepresentation claim on the grounds that no special relationship exists "proceed[] with marked caution because, under New York law, determining whether a special relationship exists ordinarily requires a fact-intensive case-by-case inquiry." *Schwartzco Enterprises LLC v. TMH Management, LLC,* 60 F.Supp.3d 331, 350 (E.D.N.Y. Nov. 17, 2014) (internal quotations omitted); *Grupo Sistemas Integrales de Telecomunicacion de C.V. v. AT*

*& T Communications, Inc.,* No. 92-7862 (KMW), 19936 WL 312535, at *9 (S.D.N.Y. June 10, 1996) ("[T]hose courts that have found, applying New York law, that no special relationship existed have typically done so, not at the pleading stage, but after trial, on the basis that plaintiffs failed to carry their evidentiary burden.").

In the event that this Court conducts a special relationship analysis of Tresco's claims, the Second Circuit Court of Appeals has held that, for pleading purposes, a special relationship of trust or confidence is not required where the plaintiff "emphatically alleges" that the defendant held a unique or special expertise, and that the defendant provided information knowing how that information would be used by the plaintiff. *See Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.,* 375 F.3d 168, 188 (2d Cir.2004) ("[A] sparsely pled special relationship of trust or confidence is not fatal to a claim for negligent misrepresentation where the complaint emphatically alleges the other two factors enunciated in *Kimmell*."). *Eternity Global's* holding is wholly consistent with *In re Volkswagen Timing Chain Prod. Liab. Litig.*, which this Court cited with approval when denying Defendants' motion to dismiss the New York negligent misrepresentation claim in *Amato*. This Court held that "Plaintiffs' have adequately pled both misrepresentations and omissions under the Rule 9(b) and 8 standards."[14]   2017 WL 6607148, at *20.   As

---

[14] Claims for negligent misrepresentation under New York law must be pled in accordance with the specificity criteria of Rule 9(b).  *See, Aetna Cas. & Sur. Co. v. Aniero Concrete Co.,* 404 F.3d 566, 583 (2d Cir. 2005).

discussed above, Plaintiffs' allegations that Defendants were in exclusive possession of material information concerning the piston defect and therefore owed a duty to disclose the safety implications  (Complaint ¶¶ 75-77, 102, 223) are sufficient to establish that the Defendants possessed superior and exclusive knowledge of the defect. *See Amato,* 2017 WL 6607148, at *21; *In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160, at *21; *Majdipour v. Jaguar Land Rover N. Am., LLC*, 2013 WL 5574626, at *17 (D.N.J. Oct. 9, 2013).

The Complaint further alleges that Defendants conveyed attributes of class engine pistons to purchasers through the owner's manual, service pamphlet and other materials. Complaint ¶¶ 61, 73, 125, 178.  Consequently, under *Eternity Global's* framework, Tresco's negligent misrepresentation claim should not be dismissed for failure to plead a special relationship.

In *Amato,* this Court recognized that "courts have permitted negligent misrepresentation claims between consumers and car manufacturers."  2017 WL 6607148, at *21*; see Dewey,* 558 F.Supp. 2d at 529 (denying motion to dismiss New York plaintiff's negligent misrepresentation claim based on lack of privity or its functional equivalent).[15]

---

[15] As the *Dewey* court reasoned, New York courts "established the privity rule because of the concern that liability without privity or its equivalent may expose entities to liability in an indeterminate amount for an indeterminate time to an indeterminate class."  *Dewey,* 558 F.Supp.2d at 530 (quoting *Ultramares Corporation v. Touche,* 255 N.Y. 170 (1931) (internal quotation marks omitted).

### 3.   Exemptions to the privity requirement

In the context of breach of warranty claims, "New York Law recognizes the following exceptions to that general privity requirement: (1) privity is not required where the product in question is a 'thing of danger;' and (2) privity is satisfied where plaintiff is asserting the claim as a third-party beneficiary." *Amato,* 2019 WL 6607148, at *13; *Hubbard v. GMC,* Case No. 95-7362, 1996 U.S. Dist. LEXIS 6974, at *16 (S.D.N.Y. May 22, 1996)( privity is not required when the product in question is a "thing of danger…where an article is of such a character that when used for the purpose for which it is made it is likely to be a source of danger to several or many people if not properly designed and fashioned…"); *In re Volkswagen Timing Chain Prod. Liab. Litig*., 2017 WL 1902160, at *16 (recognizing third party beneficiary exception to privity requirement under New York law); *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 124 (2d Cir. 2005) ("A contractual requirement that the promisor render performance directly to the third party shows an intent to benefit the third party.").   New York does not require privity where, as here, a consumer is the third party beneficiary of the contract between the manufacturer and dealership.   *See, Catalano v. BMW of N. Am., LLC,* 167 F.Supp. 3d 540, 557 (S.D.N.Y. 2016); *George v. Jaguar Land Rover N. Am., LLC,* 2021 WL 5195788 (D.N.J. Nov. 8, 2021)(same); *In re Subaru Battery Drain Products Liability*

*Litigation,* 2021 WL 1207791, at * 17(D.N.J. Mar. 31, 2021)(Rodriguez, J.).  This Court has held that "[w]ith respect to New York law, courts have found that the privity analysis is too fact intensive to resolve at the motion to dismiss stage where Plaintiffs plead a third-party beneficiary relationship." *In re Subaru Battery Drain Products Liability Litigation,* 2021 WL 1207791, at *17.

Additionally, "some states recognize that a dealership may act as an agent of the manufacturer such that the plaintiff's purchase from the dealership creates a 'direct nexus' to the manufacturer." *Opheim v. Aktiengesellschaft,* Civ. No. 20-02483 (KM) (ESK), 2021 WL 2621689, at *9 (D.N.J. June 25, 2021) ("Plaintiffs plausibly are in privity with the manufacturers here because either they, as end-users, are the beneficiaries of the manufacturers' contracts with dealerships, or the dealerships can be said to act as agents for the manufacturer.").

### 4.  Negligent misrepresentation law has not changed since *Amato* and Defendants' cases cited as authority are distinguishable

Defendant argues that this Court's holding in *Amato* denying their motion to dismiss Lall's negligent misrepresentation claim "is no impediment to reaching the 'right outcome'" (Def. Br. at 30) regarding Tresco's negligent misrepresentation claim.

As discussed earlier, the law governing negligent misrepresentation has not changed since *Amato* was decided.  The Defendants cite to inapposite product mislabeling cases decided in 2022 to argue that this Court wrongly decided *Amato*

by refusing to dismiss Lall's negligent misrepresentation claim.  Def. Br. at 30.

Unlike here (and *Amato*), Defendants' cases do not have allegations of defective

products that pose inherent danger or safety risks.  Moreover, the authority cited by

the Defendants do not allege duties owed to third party beneficiaries, an agency

relationship, or a defendant's superior knowledge of the defect.  Instead, Defendants'

cases primarily concern allegations of mislabeled products that deceived consumers.

*See, e.g. Bynum v. Fam. Dollar Stores, Inc.,* 2022 U.S. Dist. LEXIS 49968 (S.D.N.Y.

Mar. 21, 2022) (Plaintiff alleged that packaging for "smoked" almonds deceived him

into believing that the product obtained its flavoring from a natural smoking process,

and that had he known that the product was only flavored with added "natural smoke

flavor," he would not have purchased the product or would have paid less.);

*Turnipseed v. Simply Orange Juice Co.,* No. 20-8677, 2022 U.S. Dist. LEXIS 38823

(S.D.N.Y. Mar. 4, 2022) (putative class alleged that defendant misrepresented to

consumers the extent to which its vanilla-flavored almond milk was flavored from

vanilla beans as opposed to natural or artificial flavors); *Gordon v. Target Corp.,*

2022 U.S. Dist. LEXIS 48769, at **7-13 (S.D.N.Y. Mar. 18, 2022) (plaintiff alleged

that in response to declining sales of infant formulas, defendant mislabeled its

"Transition Formulas" for toddlers between 12 and 36 months old, which plaintiff

alleged to be re-branded infant formula that failed to meet toddlers' nutritional

needs, contained too much sugar, and were deceptively packaged); *Kamara v.*

*Pepperidge Farm, Inc.,* No. 20-9012, 2021 U.S. Dist. LEXIS 216644, at *4 (S.D.N.Y. Nov. 9, 2021) (plaintiff alleged that "Golden Butter" crackers misrepresented the product and defrauded consumers because the crackers were made with vegetable oil as opposed to butter).  None of Defendant's "new" authorities should alter the conclusion this Court reached on Lall's negligent misrepresentation claim in *Amato.*  Consequently, Defendant's motion to dismiss Tresco's negligent misrepresentation claim should be denied.

### 5.    Piperato (California) and Aquino's (Illinois) negligent misrepresentation claims are not barred by the economic loss doctrine

Subaru argues that under California and Illinois law, Piperato and Aquino's claims for negligent misrepresentation are barred by the economic loss rule in their respective states.  Def. Br. at 30.  Like New Jersey, the economic loss doctrine in California and Illinois does not bar claims for negligent misrepresentation.  *See, Amato,* 2019 WL 6607148, at *20 ("[a]n incorrect statement, negligently made and justifiably relied upon, may be the basis for recovery of damages for economic loss or injury sustained as a consequence of that reliance.") (citations omitted).  These jurisdictions have exceptions to the economic loss doctrine that allow tort claims based on conduct that is either independent of a contract or where there is a risk of personal injury.  *See, In re Volkswagen Timing Chain Prod. Liab. Litig*., 2017 WL 1902160, at *21 (collecting cases) ("those states allow claims to proceed when the

tort claim is based on conduct that is either independent of a contract or where there is a risk of personal injury."); *Opheim,* 2021 WL 2621689, at *17;  *See also, Bret Harte Union High Sch. Dist. v. FieldTurf, USA, Inc.,* 2016 WL 3519294, at *5 (E.D. Cal. June 27, 2016); *In re Chi. Flood Litig.,* 680 N.E.2d 265, 274-75 (Ill. 1997). Here, Plaintiffs allege that Defendants' misrepresentations and omissions are independent of any contract and the Piston Ringland Defect poses a serious risk of injury.   See, Complaint at ¶ 9 and ¶¶ 71, 86.

As this Court noted in *Amato,* allegations concerning "Defendants' superior knowledge of the Piston Ringland Defect, and independent duty to disclose, one outside of any contractual duty" will survive a motion to dismiss predicated on the economic loss doctrine.   *Amato,* 2019 WL 6607148, at *21; *see also, In re Volkswagen Timing Chain Prod. Liab. Litig.,* 2017 WL 1902160, at *18. Consequently, the *Aquino* negligent misrepresentation claims should not be dismissed.

### D.   The Court should not consolidate the *Aquino* and *Amato* actions

The moving party bears the burden of proof on a motion for consolidation. *See In re Consolidated Parlodel Litigation,* 182 F.R.D. 441, 444 (D.N.J.1998); *Klimarski v. Parexel Intern.,* No. CIV. A. 05-298, 2005 WL 857350, at *2 (E.D.Pa Apr. 4, 2005).  A threshold requirement for consolidation is whether there exists a common question of law or fact. *See In re Consolidated Parlodel*

*Litigation,* 182 F.R.D. at 444; *Easton & Co. v. Mutual Benefit Life Insurance Co.,* CIV. A. NOS. 91-4012, 92-2095, 1992 WL 448794, at *4 (D.N.J. Nov. 4, 1992); Fed. R. Civ. P. 42(a).[16]

A district court has "broad discretion" when determining whether consolidation is appropriate. *Borough of Olyphant v PPL Corp.,* 135 Fed. App'x. 80, 82 (3d. Cir. 2005). When exercising this discretion, a court should weigh the benefits of judicial economy "against the potential for new delays, expense, confusion or prejudice." *Easton,* 1992 WL 448794, at *4.

Consolidation of the *Aquino* and *Amato* actions will cause unnecessary delay and confusion. As this Court well knows, *Amato* was commenced in 2018, and is years ahead of *Aquino* procedurally. In *Amato,* the parties have completed fact discovery, exchanged expert reports, and set forth a briefing schedule for the forthcoming class certification motion. By contrast, *Aquino* is in the pleading stage, as this pre-answer motion evidences. The consequence of consolidation on *Amato* will be the needless delay of untold months, as *Aquino* has not even begun discovery. *See, e.g., Borough of Olyphant,* 135 Fed. App'x. at 82 (finding that the district court

---

[16] While the existence of common issues is a prerequisite for consolidation, their mere presence does not compel consolidation. *Norfolk Southern Railway Co. v. New York Terminals, LLC,* 2016 WL 7338531, at *1 (D.N.J. Dec. 19, 2016); *Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp. et al.,* 149 F.R.D. 65, 81 (D.N.J. May 14, 1993). Rather, a court may consolidate cases if, in its discretion, "consolidation would facilitate the administration of justice." *Waste Distillation Tech., Inc. v. Pan American Resources, Inc.,* 775 F.Supp. 759, 761 (D.Del.1991).

did not abuse its discretion in denying motion to consolidate where discovery was closed in one case, but had just begun in the other); *Norfolk Southern Railway Co.,* 2016 WL 7338531, at *2.

In *Amato,* the Court has already determined it will apply the law of New Jersey to the *Amato* negligent misrepresentation claims.  If these actions are consolidated, this Court may apply the laws of the *Aquino* Plaintiffs' home states (*e.g.*, Illinois for Aquino, Colorado for Crumpecker, California for Piperato, and New York for Tresco), to their negligent misrepresentation claims.  Consequently, the jury will be required to apply the laws of no fewer than five different States to the negligent misrepresentation claim alone.  Consequently, the Court should decline Subaru's invitation to consolidate the *Aquino* and *Amato* actions.  *See, e.g., Farahmand,* 2002 WL 31630709, at *2 (denying motion to consolidate a trial where disparate issues between the cases would "needlessly delay both cases and likely confuse a jury" and "the two cases are at different stages with different claims.").

## V.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be denied in its entirety, and the *Amato* and *Aquino* actions should not be consolidated.

Dated: May 23, 2022                    Respectfully submitted,

**KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.**

40

s/ Gary S. Graifman
By: Gary S. Graifman
Daniel Edelman
135 Chestnut Ridge
Montvale, New Jersey 07645
Tel:   (201) 391-7000
Fax:   (201) 307-1086
Email: ggraifman@kgglaw.com
        dedelman@kgglaw.com

**THOMAS P. SOBRAN, P.C.**
Thomas P. Sobran
7 Evergreen Lane
Hingham, MA 02043
Tel:   (781) 741-6075
Fax:   (781) 741-6074
Email:        tsobran@sobranlaw.com
(admitted *pro hac vice*)

***Counsel for Plaintiffs***

41