## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RICHARD AQUINO, et al., individually and on behalf of all others similarly situated, | Case No.: 1:22-cv-00990-JHR-AMD |
| Plaintiffs, | **OPINION** |
| v. | |
| SUBARU OF AMERICA, INC., *et al.* | |
| Defendants. | |

This matter is before the Court on the motion to dismiss, in part, and for consolidation of remaining claims with *Amato v. Subaru of Am., Inc.*, No. CV 18-16118 filed by Defendant Subaru of America, Inc. Dkt. 80. Having considered the parties' submissions, the Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth herein, the Court will grant the motion in part and deny the motion in part.

## I.  Factual Background

As detailed in the procedural history section, *infra*, this matter is one among the three similar class-actions brought against Subaru of America, Inc. ("SOA") and Subaru Corporation ("SBR") (together, "Subaru"). Richard Aquino and other members of the purported class (together, "Plaintiffs") are individuals who purchased or leased 2009 through 2018 model year Subaru Impreza WRX and WRX STi passenger vehicles

alleged to contain defective engine components. The complaint [Dkt. 2] ("Complaint") alleges that as a result of these defective components, class vehicles experience premature cataclysmic engine piston ringlands failure (the "Piston Ringlands Defect") requiring between $5,000.00 to $6,500.00 or more in repairs to remedy. Plaintiffs claim that Subaru had actual knowledge of the alleged defect, which they concealed from consumers. Compl. ¶ 1. The proposed class representatives and members of the proposed classes request monetary damages against Subaru based upon claims of breach of express warranty, breach of implied warranty, misrepresentation and unfair and deceptive business practices.

## II.   Procedural History

### a.  The Thompson Class Action

In March 2018, Christopher Thompson filed a putative class action complaint against SOA and SBR in the United States District Court for the District of New Jersey, Case No. 1:18-cv- 03736. The Thompson class action alleged that Subaru's 2009 through 2014 WRX and WRX STi vehicles suffered from a "Piston Ringlands Defect." Based on those allegations, Thompson asserted warranty and consumer fraud claims against Subaru on behalf of a putative nationwide class and a California subclass. *See* Thompson Dkt. 1, ¶¶ 1, 4, 112-181. Class Counsel represented Thompson in the lawsuit. *See id.* at p. 48.

On September 4, 2018, Subaru moved to dismiss Thompson's complaint on various grounds. *See* Thompson Dkt. 8. While the motion was still pending, Thompson stipulated to the dismissal of the Thompson class action, with prejudice. *See* Thompson Dkt. 26.

### b.  The Amato Class Action

In November 2018, Class Counsel filed a class action complaint on behalf of putative class members against SOA and SBR in the United States District Court for the District of New Jersey, Case No. 1:18-cv-16118. Like in Thompson, the Amato class action asserted warranty and consumer fraud claims against SOA and SBR based on an alleged Piston Ringlands Defect and sought certification of a putative nationwide class and state subclasses. The Amato Class Action differed in that it identified four new class representatives and subclasses – Joseph Amato (New Jersey), Chris Lall (New York), George Sandoval (Arizona), and James Moore (Indiana) – and it expanded the proposed class vehicle model years to include 2009 through 2018 WRX and WRX STi vehicles. Subaru filed a motion to dismiss the Amato class action [Amato Dkt. 10], which the Court granted in part and denied in part. *See Amato v. Subaru of Am., Inc.*, No. CV 18-16118, 2019 WL 6607148, at *1 (D.N.J. Dec. 5, 2019).

Class Counsel then filed a First Amended Complaint in April, 2020. *See* Amato Dkt. 32. The Amato First Amended Complaint withdrew the claims it asserted on behalf of the nationwide class, replaced the New Jersey subclass with Georgia and Pennsylvania subclasses, asserted a new claim against SOA and SBR for negligent misrepresentation, and added a new named plaintiff, Ian Connolly, for a California subclass. *Id*.

The Court entered a scheduling order on July 2, 2020 providing that "The time within which to add new plaintiffs will expire on September 25, 2020. The time within which to seek all other amendments to the pleadings will expire on February 12, 2021." Amato Dkt. 38. On September 25, 2020, the Class Counsel filed a Second Amended Complaint. Amato Dkt. 41. The Amato Second Amended Complaint dropped the New York class representative, Lall, withdrew all remaining warranty claims against Subaru,

and added another class representative, Andrew Hinshaw, and a Michigan subclass. *See id.* ¶¶ 18, 24.

On June 10, 2021, Class Counsel field a Third Amended Complaint, which defined proposed subclasses for Georgia, Indiana, Arizona, Pennsylvania, California, and Michigan. *See* Amato Dkt. 65, ¶ 24. Absent from the list of proposed subclasses in paragraph 24 of the Amato Third Amended Complaint is the New York subclass, and the Amato Third Amended Complaint proposes no New York class representative. While the Amato Third Amended Complaint excluded these references to Lall and the New York subclass, paragraph 228 and the sub-caption under Count VI alleging negligent misrepresentation includes a reference to New York subclass members. Class Counsel submits that this was merely a scrivener's error that left a vestigial reference and it was their clear intent to withdraw the New York subclass claims. *See* Br. in Opp. [Dkt. 22] ("While removing reference to Lall and his claims from the amended *Amato* complaints, a single reference to the New York class inadvertently remained in the negligent misrepresentation claim caption. It was an oversight . . ."). Subaru argues, to the contrary, that by including the reference in paragraph 228 and the sub-caption, the Amato Third Amended Complaint retained the negligent misrepresentation claim asserted on behalf of the New York subclass. *See* Br. in Supp. at *7 [Dkt. 10-1] ("Plaintiff filed a Third Amended Complaint . . . and included claims asserted on behalf of the following state subclasses: California, New York, Georgia, Pennsylvania, Indiana, Arizona, and Michigan. (Dkt. 65 ¶¶ 24, 228.).").

By the close of fact discovery, three of the six named plaintiffs in the Amato class action remained: Hinshaw (Michigan), Moore (Indiana), and Sandoval (Arizona). Class Counsel dismissed the California class representative (Connolly). *See* Amato Dkt. 77.

4

Class Counsel also dismissed the Georgia and Pennsylvania class representative, Amato. *See* Amato Dkt. 76. Subaru contends that it did not consent to Class Counsel amending the pleadings to remove the California, Georgia, or Pennsylvania subclasses and that those putative subclasses remain in the Amato class action – they just lack a class representative.

### c. The Aquino Class Action

On February 28, 2022, Class Counsel filed this putative class action complaint against SOA and SBR. *See* Dkt. 1, 2. Like the Thompson and Amato class actions, the Aquino class action asserts claims against SOA and SBR based on an alleged Piston Ringlands Defect. It includes the same 2009 through 2018 WRX and WRX STi vehicles at issue in the Amato class action pending in this district and seeks certification of multiple state subclasses.

The plaintiffs named and claims asserted in the Aquino Complaint are as follows: Ricardo Aquino (Illinois) asserts consumer fraud claims on behalf of an Illinois subclass alleging violations of Illinois' Consumer Fraud and Deceptive Trade Practices Act (Count I); George Crumpecker (Colorado) asserts claims on behalf of a Colorado subclass alleging violations of Colorado's Consumer Protection Act (Count II); Jonathan Piperato (California) asserts claims on behalf of a California subclass alleging violations of California's Unfair Competition Law (Count III) and the California Consumer Legal Remedies Act (Count IV); and, Stephen Tresco (New York) asserts claims on behalf of a New York subclass alleging violations of New York's Consumer Fraud Statute (Gen. Bus. Law § 349) (Count V). *See* Dkt. 2.

Because the Aquino Complaint includes two putative subclasses (New York and California) that Subaru believes remain pending in Amato, and given the overlap in the

claims asserted, Subaru views Aquino as an improper duplication of Amato brought with the strategic aim of circumventing the Court's scheduling order in that action [Amato Dkt. 38] to belatedly add new plaintiffs. On these grounds, Subaru has moved to dismiss all claims asserted on behalf of the California and New York subclasses in Aquino and to consolidate remaining claims with Amato. *See generally* Motion to Dismiss, in part, and for Consolidation of Remaining Claims [Dkt. 10]; Motion to Consolidate Cases [Amato Dkt. 85].

On July 6, 2022, the Court entered an Order consolidating Amato and Aquino for discovery purposes and memorializing the parties' agreement that any claims in Aquino that survive the instant motion to dismiss [Dkt. 10] shall be consolidated for all purposes with the claims in Amato. *See* July 6, 2022 Order [Dkt. 28] [Amato Dkt. 112].

Thereafter, on January 25, 2023, the parties stipulated to the dismissal George Crumpecker (Colorado) and Jonathan Piperato (California). Dkt. 49, 50. By these stipulations, the Aquino Complaint was deemed amended to remove all claims and allegations asserted on behalf of the putative California and Colorado subclasses. *See id*. This development served to moot challenges raised by Subaru as to Crumpecker and Piperato and their respective subclasses, which significantly narrows the issues on its instant motion to dismiss. The issues that remain in contest concern the arguments advanced by Subaru that: (1) the Court should dismiss all claims asserted on behalf of the New York subclass because those claims are based on the same facts, brought against the same defendants, and seek the same relief as the New York subclass in the Amato Class Action; and, (2) Tresco and Aquino have failed to plead facts sufficient to support their negligent misrepresentation claims.

## III. Legal Standard

6

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint should be dismissed pursuant to Rule 12(b)(6) if the alleged facts, taken as true, fail to state a claim. *Id.* In general, only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint, are taken into consideration when deciding a motion to dismiss under Rule 12(b)(6). *See Chester Cnty Intermediate Unit v. Pa. Blue Shield*, 896 F.2d 808, 812 (3d Cir. 1990). It is not necessary for the plaintiff to plead evidence. *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 446 (3d Cir. 1977). The question before the Court is not whether the plaintiff will ultimately prevail. *Watson v. Abington Twp.*, 478 F.3d 144, 150 (3d. Cir. 2007). Instead, the Court simply asks whether the plaintiff has articulated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility[1] when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

The Court need not accept "unsupported conclusions and unwarranted inferences," (*Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citation omitted), however, and "[l]egal conclusions made in the guise of factual allegations . . . are given

---

[1] This plausibility standard requires more than a mere possibility that unlawful conduct has occurred. "When a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*

7

no presumption of truthfulness." *Wyeth v. Ranbaxy Labs., Ltd.*, 448 F. Supp. 2d 607, 609 (D.N.J. 2006) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007) ("[A] court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss." (quoting *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005))). *Accord Iqbal*, 556 U.S. at 678–80 (finding that pleadings that are no more than conclusions are not entitled to the assumption of truth).

Further, although "detailed factual allegations" are not necessary, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted); s*ee also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Thus, a motion to dismiss should be granted unless the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 556 (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## IV.  Discussion

### a.  The New York Subclass

Subaru moves to dismiss the New York subclass claims on the asserted basis that it duplicates claims pending in Amato and strategically circumvents an existing

scheduling order in Amato to avert the risk that this Court would deny a motion by Plaintiffs seeking to add new class representatives in that action. Subaru argues that "[b]ecause the claims and allegations asserted on behalf of the New York subclasses in this action are virtually identical to those asserted in this Amato Class Action, the Court has the authority to, and should, dismiss the later filed claims as duplicative." Br. in Supp. at *16. Subaru's position rests on the premise that the New York subclasses in each case overlap because the New York negligent misrepresentation claim was retained in the Amato Third Amended Complaint. In response, Plaintiffs submit that the claims alleged on behalf of the New York subclass in Amato were abandoned by the Amato Third Amended Complaint and therefore the Aquino Complaint does not duplicate the claims in Amato. Plaintiffs further contend that the Aquino class action was commenced for the purpose of preserving the substantive rights of class vehicle owners whose causes of action did not accrue until long after it would have been practical or permissible to amend the complaint in Amato. On this point, Plaintiffs maintain that when Lall voluntarily dismissed and withdrew his claims, his claims became moot and substitution of a class representative would not have been permitted because the New York subclass had not been certified. Opp. at *18-19.

"'As part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit.'" *Noble v. United States*, 855 F. App'x 816, 819 (3d Cir. 2021) (quoting *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000)). "'A later-filed action is generally found duplicative of an earlier-filed suit if the claims, parties, and available relief do not significantly differ between the two actions.'" *Conservation L. Found., Inc. v. Longwood Venues & Destinations, Inc.*, 415 F. Supp. 3d 240, 242 (D. Mass. 2019) (quoting *Montoyo-Rivera v. Pall Life Scis. PR, LLC*,

9

245 F. Supp. 3d 337, 342 (D.P.R. 2017)); *see also Liu v. Chan*, No. 20-CV-5651-KAM-SJB, 2021 WL 2281636, at *6 (E.D.N.Y. May 12, 2021) ("The rule against duplicative litigation also applies where the new claims in a second action are brought against parties in a pending litigation, and these claims do not differ significantly from those in the first pending case."). However, "the fact that the two actions involved 'the same parties, similar or overlapping facts, and similar legal issues' is not dispositive" of whether the rule against duplicative litigation should be applied. *RVC Floor Decor, Ltd. v. Floor & Decor Outlets of Am., Inc.*, No. 19CV04894DRHARL, 2020 WL 5709180, at *4 (E.D.N.Y. Sept. 24, 2020) (quoting *S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1463 (2d Cir. 1996)). The Third Circuit has cautioned that a "court must insure that the plaintiff does not use the incorrect procedure of filing duplicative complaints for the purpose of circumventing the rules pertaining to the amendment of complaints, Fed.R.Civ.Proc. 15, and demand for trial by jury, Fed.R.Civ.Proc. 38." *Walton v. Eaton Corp.*, 563 F.2d 66, 71 (3d Cir. 1977).

Class Counsel's conduct raises at least the possibility that this separate action could have been used to avert the risk that the Court would deny a motion to amend to add plaintiffs in Amato. Nevertheless, the Court does not find that dismissal of the New York subclass is warranted. While the factual allegations of the Amato and Aquino actions overlap, the Court does not find itself faced with duplicative suits where it is apparent that the New York subclass was evidently dropped by the Amato Third Amended Complaint. The pleadings in the Amato Third Amended Complaint, taken as a whole, support that the discreet reference to the New York subclass in paragraph 228 and the sub-caption under Count VI alleging negligent misrepresentation was inadvertent rather than deliberate or motivated by bad faith. Notably absent from the

list of proposed subclasses in paragraph 24 of the Amato Third Amended Complaint is the New York subclass, and the Amato Third Amended Complaint proposes no New York class representative. Because the New York subclass had ostensibly been abandoned and was no longer a party to the case, no Federal Rule of Civil Procedure required Class Counsel to move for leave to amend rather than file a new complaint. That Plaintiffs elected this procedural route instead of seeking amendment does not justify denying them the opportunity to litigate a potentially meritorious claim.

### b. Choice of Law for State Claims

Subaru and Plaintiffs dispute the state law applicable to the claims of Tresco and Aquino. Subaru argues that the Court should conduct a choice-of-law analysis and apply the law of each Plaintiffs' home state to his or her respective claims. On the other hand, Plaintiffs argue that a choice-of-law analysis is premature at this stage of the litigation and that the Court should apply the law of New Jersey — where Subaru is headquartered — to the present motion.

"[C]ourts in this Circuit have sometimes determined that the choice of law analysis in a putative class action can be done at the motion to dismiss stage." *Amato*, 2019 WL 6607148, at *4 (quoting *Snyder v. Farnam Cos., Inc.*, 792 F. Supp. 2d 712, 718 (D.N.J. 2011)). "When performing a choice-of-law analysis, the Court applies choice-of-law rules of the forum state, which is New Jersey in this case." *In re Subaru Battery Drain Prod. Liab. Litig.*, No. 1:20-CV-03095-JHR-JS, 2021 WL 1207791, at *9 (D.N.J. Mar. 31, 2021) (citing *Barbey v. Unisys Corp.*, 256 Fed. Appx. 532, 533 (3rd Cir. 2007)). Under New Jersey rules, the "choice of law analysis must be undertaken on an issue-by-issue basis." *Harper v. LG Elecs. USA, Inc.*, 595 F. Supp. 2d 486, 490 (D.N.J. 2009) (citing *Rowe v. Hoffman-La Roche, Inc.*, 917 A.2d 767, 771 (N.J. 2007)).

11

When considering choice-of-law questions, "New Jersey courts apply the two-pronged 'most significant relationship' test of the Restatement (Second) of Conflict of Laws." *Curtiss-Wright Corp. v. Rodney Hunt Co.*, 1 F. Supp. 3d 277, 283 (D.N.J. 2014) (citing *P.V. v. Camp Jaycee*, 962 A.2d 453 (N.J. 2008)). At step one of this two-part test, the Court must "determine whether an actual conflict exists" between the law of the states with an interest in the claim. *P.V.*, 962 A.2d at 460. "That is done by examining the substance of the potentially applicable laws to determine whether 'there is a distinction' between them." *Id.* (quoting *Lebegern v. Forman*, 471 F.3d 424, 430 (3d Cir. 2006)).  If that distinction would lead to a different outcome for the claim at issue, a conflict exists, and if the application of either state's law "results in the same outcome, no conflict exists[.]" *McCarrell v. Hoffmann-La Roche, Inc.*, 227 N.J. 569, 584, 153 A.3d 207, 216 (2017). If no conflict exists, a court may "refer interchangeably to the laws of [relevant states] in discussing the law applicable to the case." *On Air Ent. Corp. v. Nat'l Indem. Co.*, 210 F.3d 146, 149 (3d Cir. 2000).

If a conflict exists, step two requires courts to "determine which jurisdiction has the 'most significant relationship' to the claim."  *Curtiss-Wright Corp.*, 1 F. Supp. 3d at 283 (citing *P.V.*, 962 A.2d 453)  The Second Restatement of Conflict of Laws sets forth factors to be applied in making this determination depending on the type of claim at issue, and the factors set forth in § 6 of the Second Restatement[2] guide all choice-of-law

---

[2] Section 6 of the Second Restatement provides

[T]he factors relevant to the choice of the applicable rule of law include

(a)     the needs of the interstate and international systems,
(b)     the relevant policies of the forum,
(c)     the relevant policies of other interested states and the   relative interests of those states in the determination of the particular issue,

determinations. Restatement (Second) of Conflict of Laws § 6 (1971); *see P.V.*, 962 A.2d at 458.  The Court will apply New Jersey's two-part test on a claim-by-claim basis.

### i. Tresco's Negligent Misrepresentation Claim

The parties dispute whether the law of New York or New Jersey should apply to Tresco's negligent misrepresentation claim. In Amato, the Court deferred a choice of law analysis as to New York plaintiffs' negligent misrepresentation claim and applied New Jersey law "[b]ecause [Subaru] fail[ed] to sufficiently explain a conflict of laws between laws of the relevant jurisdictions." *Amato*, 2019 WL 6607148, at *20. Conscious of this, Subaru's motion to dismiss in this case contains a more robust explanation of the conflicts between New Jersey and New York law.

The Court is now satisfied that Subaru has demonstrated an actual conflict between the law of these jurisdictions. "In New Jersey, negligent misrepresentation is (1) an incorrect statement, (2) negligently made and (3) justifiably relied on, and (4) may be the basis for recovery of damages for economic loss sustained as a consequence of that reliance." *Kuzian v. Electrolux Home Prod., Inc.*, 937 F. Supp. 2d 599, 615 (D.N.J. 2013) (citing *Kaufman v. i-Stat Corp.*, 165 N.J. 94, 754 A.2d 1188, 1196 (2000)). Such a claim may be based on an affirmative misrepresentation or an omission. *Highlands Ins. Co. v. Hobbs Group, LLC*, 373 F.3d 347, 355 (3d Cir. 2004). To state a claim for negligent misrepresentation under New York law, "a plaintiff must assert '(1) the defendant had a duty, as a result of a special relationship, to give correct

---

(d)      the protection of justified expectations,
(e)      the basic policies underlying the particular field of law,
(f)      certainty, predictability and uniformity of result, and
(g)      ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6 (1971).

information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment.'" *Eidelman v. Sun Prods. Corp.*, No. 16-CV-3914, 2017 WL 4277187, at *4 (S.D.N.Y. 2017) (quoting *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 114 (2d Cir. 2012)).

Courts in this district have observed an actual conflict of law between the two states. "Because New York law explicitly requires a plaintiff to allege a "special relationship," there is an actual conflict between New York and New Jersey law." *Goodman v. Goldman, Sachs & Co.*, No. CIV. 10-1247 FLW, 2010 WL 5186180, at *6 (D.N.J. Dec. 14, 2010) ("In contrast [to New Jersey law], to state a claim under New York law, a plaintiff must allege that "(1) the defendant had a duty, as a result of a special relationship, to give correct information[.]"); *see also Lord Abbett Mun. Income Fund, Inc. v. Citigroup Glob. Markets, Inc., No. CV 11-5550 (CCC), 2012 WL 13034154, at *9 (D.N.J. July 12, 2012) (*"Because New York law explicitly requires a plaintiff to allege a special relationship, there is an actual conflict between New York and New Jersey law, and this Court must engage in a choice of law analysis.") (internal quotations and citations omitted). Insofar as the laws differ as to the special relationship requirement, the laws conflict in respects potentially relevant to the outcome of controlling legal questions presented by this case.

Having found an actual conflict, the Court's choice-of-law inquiry proceeds to the second step. "The second prong of the most significant relationship test requires the Court to weigh the factors enumerated in the Restatement section corresponding to the

plaintiffs' cause of action." *Nafar v. Hollywood Tanning Sys., Inc.*, 339 F. App'x 216, 220 (3d Cir. 2009) (citing *Agostino v. Quest Diagnostics Inc.*, 256 F.R.D. 437, 462 (D.N.J. 2009)). The Court applies the conflict of laws analysis of Section 148 for claims sounding in misrepresentation. *Maniscalco v. Brother Int'l Corp. (USA)*, 793 F. Supp. 2d 696, 705 (D.N.J. 2011), aff'd sub nom. *Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202 (3d Cir. 2013). Section 148 provides:

> (1) When the plaintiff has suffered pecuniary harm on account of his reliance on the defendant's false representations and when the plaintiff's action in reliance took place in the state where the false representations were made and received, the local law of this state determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.
>
> (2) When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:
>
> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
>
> (b) the place where the plaintiff received the representations,
>
> (c) the place where the defendant made the representations,
>
> (d) the domicile, residence, nationality, place of incorporation and place of business of the parties,
>
> (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
>
> (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Restatement (Second) of Conflict of Laws § 148 (1971).

"[T]he Restatement distinguishes between instances in which the alleged misrepresentations and a plaintiff's reliance took place in the same state and instances

in which the misrepresentations and reliance occurred in different states." *Maniscalco*, 793 F. Supp. 2d at 705. "Section 148(1) applies when the defendant made the misrepresentations in the same state in which the consumer relied on the representations, whereas Section 148(2) governs when the misrepresentations and the reliance occurred in different states." *Rapid Models & Prototypes, Inc. v. Innovated Sols.*, 71 F. Supp. 3d 492, 503 (D.N.J. 2014); Restatement (Second) of Conflict of Laws § 148. "[I]n the former situation, the state in which both the misrepresentations and reliance occurred is presumed to have the 'most significant relationship' to the litigation." *Maniscalco*, 793 F. Supp. 2d at 705 (quoting Restatement (Second) of Conflict of Laws § 148(1)). In the latter, a court must weigh the factors set forth in section 148(2) to determine which state has the greatest ties to the plaintiffs' claims. *Id.* § 148(2).

Despite taking the position that the alleged misrepresentations and reliance both occurred in New York, Subaru conducts its analysis under the framework of Section 148(2) rather than 148(1). *See* Br. in Supp. at *25. Plaintiffs offer no analysis under either framework and instead rely on their arguments that a choice-of-law determination would be premature at this stage because Subaru failed to articulate an actual conflict between New Jersey and New York law and that there are not enough facts in the record to support a choice-of-law analysis. *See* Br. in Opp. at *26-27. Considering the factors enumerated in Section 148, the Court is satisfied that the Complaint alleges sufficient facts to conduct a choice-of-law analysis at this time. Further, Plaintiffs do not indicate what additional facts are required to conduct a proper choice-of-law analysis. *See id.*

16

Construing the complaint in a light most favorable to Plaintiffs, the Court finds that Section 148(1) is not applicable. Plaintiffs allege that Subaru's "sales, marketing, engineering and warranty departments and their executives were involved" in making the misrepresentations. Compl. ¶ 91. The concealment of or failure to disclose defects therefore presumably originated from personnel in New Jersey where Subaru is headquartered, whereas New York subclass members' actions in reliance thereon occurred in their home state. In *In re Mercedes–Benz Tele Aid Contract Litigation*, 257 F.R.D. 46 (D.N.J.2009), the court applied Section 148(2) to claims arising out of a manufacturer's alleged failure to disclose information pertaining to the impending obsolescence of an emergency response system installed in plaintiffs' vehicles. There, the court noted that all of the actions and misrepresentations were "planned and implemented" by personnel in New Jersey. *Id*. at 66. Because the misrepresentations were made in New Jersey and relied upon in each plaintiff's home state, the court held that Section 148(1) was not applicable, and, instead, used Section 148(2) for its choice of law analysis. Likewise, since the misrepresentations and reliance in this case occurred in different states, Section 148(1) does not apply and that the most significant relationship test requires the application of Section 148(2).

On balance, the factors under Section 148(2) point to New York as having the most significant relationship to the negligent misrepresentation claim brought on behalf of the New York subclass. As discussed, New York subclass members' reliance, if any, on Subaru's alleged misrepresentations or omissions would have occurred in New York where they purchased, maintained and repaired their vehicles. Plaintiffs allegedly received the representations in New York. Given that New York subclass members likely operated their vehicles in the states in which they resided, an additional factor, "the

17

place where a tangible thing which is the subject of the transaction between the parties was situated at the time," also weighs in favor of applying the law of each class member's home jurisdiction. Restatement (Second) of Conflict of Laws § 148(2); *see In re Mercedes-Benz Tele Aid Cont. Litig.*, 257 F.R.D. at 67. To the extent an ongoing contractual relationship exists between New York subclass members and Subaru, those contractual obligations presumably would have been performed in New York where the vehicles were purchased. As for factors (c) and (d), Courts have held that the mere fact that a company is headquartered in New Jersey or that unlawful conduct emanated from New Jersey will not supersede the numerous contacts with the consumer's home state for purposes of determining which state has the most significant relationship under Restatement Section 148(2). *Maniscalco*, 793 F.Supp.2d at 708; *Nikolin v. Samsung Elecs. Am., Inc.*, No. 10-1456, 2010 WL 4116997, at *3–4 (D.N.J. Oct. 18, 2010) (collecting cases); *see also Cooper v. Samsung Electronics America, Inc.*, 374 Fed. Appx. 250, 255 (3d Cir. 2010). For these reasons, the Court finds that New York, not New Jersey, has the most significant relationship to the claim at issue. The Court therefore evaluates the sufficiency of the New York subclass's negligent misrepresentation claim under New York law.

### c. Sufficiency of Tresco's Negligent Misrepresentation Claim

To sufficiently plead a claim for negligent misrepresentation under New York law, a plaintiff must allege that (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff

reasonably relied on it to his or her detriment. *Anschutz Corp. v. Merrill Lynch & Co.*, Inc., 690 F.3d 98, 114 (2d Cir. 2012); *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 587 (S.D.N.Y. 2021).

The parties dispute whether the transaction between Tresco and Subaru created a special relationship within the meaning of New York common law. "[A] special relationship exists if the defendant 'possess[es] unique or special expertise' or is 'in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified.'" *Sarr v. BEF Foods, Inc.*, No. 18 Civ. 6409 (ARR), 2020 WL 729883, at *6 (E.D.N.Y. Feb. 13, 2020) (quoting *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 180, 919 N.Y.S.2d 465, 944 N.E.2d 1104 (2011)). Tresco argues that the proposed class representatives and proposed class members reasonably and justifiably relied upon Subaru's representations and that these representations "created a special relationship between defendants on one hand, and plaintiffs and members of the class on the other, particularly in light of defendants' exclusive and superior knowledge concerning class engine defects and the existence of related [] safety concerns." Compl. ¶ 188. Specifically, the Complaint alleges that Subaru made affirmative representations and incomplete representations that misled class vehicle owners concerning the useful and expected life of class vehicles, recommended scheduled maintenance and the cause of class engine piston failures. *Id.* ¶¶ 44, 61-62, 65-67, 77-78, 100. These representations were allegedly incorporated in the vehicles' Owners' Manual and Warranty & Maintenance Booklet materials. *Id.* ¶¶ 61; 100; 186. The Complaint further alleges that Subaru's customer service representatives affirmatively misrepresented the existence of engine piston defects and the cause for class vehicles' failures and consequent warranty coverage. Compl. ¶¶ 66-67.

19

Often, a "special relationship" will arise in the context of a layperson's reliance on a professional, such as a lawyer or engineer, whereas in a commercial transaction such a relationship "must" be based on "some identifiable source of a special duty of care." *Kimmell v. Schaefer*, 89 N.Y.2d 257, 263-64 (1996). In general, a simple commercial relationship, such as that between a buyer and seller, does not constitute the kind of "special relationship" or "fiduciary relationship" necessary to support a negligent misrepresentation . . . claim." *Boateng v. Bayerische Motoren Werke Aktiengesellschaft*, No. 17CV00209KAMSIL, 2022 WL 4357555, at *23 (E.D.N.Y. Sept. 20, 2022); *Wargo v. Hillshire Brands Co.*, 599 F. Supp. 3d 164, 175–76 (S.D.N.Y. 2022) ("the relationship between Defendant, as the manufacturer and seller, and Plaintiff as the buyer, does not rise to the level of the kind of special relationship—approaching that of privity—that would impose a duty to speak on Defendant."); *Dimon, Inc. v. Folium, Inc.*, 48 F. Supp. 2d 359, 373 (S.D.N.Y. 1999); *see also Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 788 (2d Cir. 2003) ("[T]he law of negligent misrepresentation requires a closer degree of trust between the parties than that of the ordinary buyer and seller in order to find reliance on such statements justified."); *Zachmann v. Coleman Co. Inc.*, No. 20 CV 9146 (VB), 2022 WL 161480, at *6 (S.D.N.Y. Jan. 18, 2022) ("courts [do not] ordinarily find a privity-like relationship between a retail purchaser of a good and the good's manufacturer."); *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-CV-04697 (CM), 2016 WL 6459832, at *8 (S.D.N.Y. Oct. 26, 2016) ("[T]he vast majority of arms-length commercial transactions, which are comprised of casual statements and contacts, will not give rise to negligent misrepresentation claims.") (internal quotations and citation omitted). "[W]here the statement at issue is directed at a 'faceless or unresolved class or persons,' no duty of care arises." *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*,

20

404 F.3d 566, 584 (2d Cir. 2005) (quoting *White v. Guarente*, 43 N.Y.2d 356, 401

N.Y.S.2d 474, 477, 372 N.E.2d 315 (1977)). Additionally, "[b]eing 'one of a class of

potential' recipients of a statement will not suffice." *Barreto v. Westbrae Nat., Inc.*, 518

F. Supp. 3d 795, 807 (S.D.N.Y. 2021) (quoting *Westpac Banking Corp. v. Deschamps*,

66 N.Y.2d 16, 19, 494 N.Y.S.2d 848, 484 N.E.2d 1351 (1985)); *Dashnau v. Unilever Mfg.*

*(US), Inc.*, 529 F. Supp. 3d 235, 248 (S.D.N.Y. 2021). This rule "carries extra weight '[i]n

the commercial context,' where 'a closer degree of trust between the parties than that of

the ordinary buyer and seller is required.'" *Colpitts v. Blue Diamond Growers*, 527 F.

Supp. 3d 562, 587 (S.D.N.Y. 2021) (quoting *Stoltz v. Fage Dairy Processing Indus.,*

*S.A.*, No. 14-CV-3826 MKB, 2015 WL 5579872, at *24 (E.D.N.Y. Sept. 22, 2015). "[T]he

relationship between parties could extend beyond the typical arm's–length business

transaction[,]" however, "where 'defendants initiated contact with plaintiffs, induced

them to forebear from performing their own due diligence, and repeatedly vouched for

the veracity of the allegedly deceptive information.'" *Woori Bank v. RBS Secs., Inc.*, 910

F.Supp.2d 697, 706 (S.D.N.Y.2012) (quoting *Suez Equity Investors, L.P. v. Toronto–*

*Dominion Bank*, 250 F.3d 87, 103 (2d Cir.2001)).

　　　　If the Complaint only "sparsely ple[ads]" a special relationship of trust or

confidence, a claim of negligent misrepresentation may survive if a plaintiff

"emphatically allege[s]" that "the person making the representation held or appeared to

hold unique or special expertise" and that "the speaker was aware of the use to which

the information would be put and supplied it for that purpose." G*reene v. Gerber Prod.*

*Co.*, 262 F. Supp. 3d 38, 75 (E.D.N.Y. 2017) (quoting *Eternity Glob. Master Fund Ltd. v.*

*Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 188 (2d Cir. 2004)). For example, an

exception to the general rule exists where "the relationship between parties could extend

beyond the typical arm's–length business transaction where 'defendants initiated contact with plaintiffs, induced them to forebear from performing their own due diligence, and repeatedly vouched for the veracity of the allegedly deceptive information.'" *Woori Bank*, 910 F.Supp.2d at 706 (quoting *Suez Equity Investors, L.P. v. Toronto–Dominion Bank*, 250 F.3d 87, 103 (2d Cir. 2001)).

Here, the statements at issue appear to have been directed at a "faceless or unresolved class or persons," which is characteristic of a relationship between an ordinary buyer and manufacturer/seller. *Aetna Cas. & Sur. Co.*, 404 F.3d at 584. Nevertheless, the Complaint can be fairly read as sparsely pleading a relationship that extended beyond the typical arm's-length business transaction where Subaru's representations could have induced Plaintiffs to forebear from performing their own due diligence and Subaru vouched for the veracity of the allegedly deceptive information. Specifically, Plaintiffs allege that Subaru's affirmative representations, made in the Owner's Manual and Warranty & Maintenance Booklet materials, created a reasonable belief that the engine pistons were non-maintenance engine lifetime components with a useful life expectancy in excess of 120,000 miles, whereas the internal components of class engines in fact prematurely failed at low miles. Compl. ¶¶ 2, 61, 67 ("The defendants (and particularly the sales and marketing executives at SoA) advertised and otherwise created the reasonable expectation (including but not limited to scheduled class engine maintenance recommendations) that class vehicles would last over 120,000 miles or ten years before experiencing engine failure."). Plaintiffs further claim that Subaru's customer service representatives affirmatively misrepresented the existence of engine piston defects and the cause for class vehicles' failures and consequent warranty coverage. As Plaintiffs allege, "Defendants' specific and ambiguous partial disclosures

22

and statements created a special relationship between defendants on one hand, and plaintiffs and members of the class on the other, particularly in light of defendants' exclusive and superior knowledge concerning class engine defects and the existence of related to safety concerns" and "[a]ny reasonable consumer under the circumstances would have relied on the representations of defendants who alone possessed the knowledge as to the quality and characteristics of the class vehicles, including the engine and engine durability." *Id.* ¶¶ 131, 188. Because Subaru's representations regarding technical facts concerning class vehicles could have induced Plaintiffs to forebear from performing their own due diligence, and Subaru's customer service representatives vouched for the veracity of the allegedly deceptive information, the Court finds that Plaintiffs have at least sparsely pleaded a relationship that extended beyond the typical arm's-length business transaction.

While Plaintiffs' allegations only "sparsely plead" a special relationship, Plaintiffs have "emphatically allege[d] the other two factors enunciated in *Kimmel*" – that Subaru "held or appeared to hold unique or special expertise and was aware of the use to which the information would be put and supplied it for that purpose." *Greene*, 262 F. Supp. 3d at 75 (quoting *Eternity Glob. Master Fund Ltd.*, 375 F.3d at 188. Plaintiffs' claim that Subaru possessed superior and exclusive awareness of the defect is ostensibly supported, for pleading purposes, by Plaintiffs' allegations identifying a number of sources that would purportedly have given rise to Subaru's knowledge that the engines in class vehicles were defective and could prematurely fail and/or require expensive engine repair/replacement. *See* Compl. ¶¶ 33-40. Plaintiff alleges that Subaru knew or should have known information concerning these defects was material and central to the marketing and sale of class vehicles to prospective purchasers including proposed

23

class representatives and proposed class members (Compl. ¶ 89) and that "[a]ny reasonable consumer under the circumstances would have relied on the representations of defendants who alone possessed the knowledge as to the quality and characteristics of the class vehicles, including the engine and engine durability." Compl. ¶ 131. In *Wells Fargo Bank Nw., N.A. v. Taca Int'l Airlines, S.A.*, 247 F. Supp. 2d 352, 366-67 (S.D.N.Y. 2002), which involved a dispute between the lessee and lessor of an aircraft, the complaint alleged that several of the defendant's agents "made expert representations about maintenance costs," "had unique expertise in the intended conversion of Airbus 300 aircraft from passenger to cargo use," and "misrepresented the historical maintenance costs and the good mechanical condition of the planes." On these facts, the court assumed that "these somewhat sparse allegations suffice, at least at the pleading stage" to withstand a motion to dismiss[.]" *Id*. at 367. Similarly, here Plaintiffs' "sparsely plead" special relationship with Subaru is not fatal at the pleading stage where Plaintiffs have "emphatically allege[d] the other two factors enunciated in Kimmel." *Greene*, 262 F. Supp. 3d at 75.

### d. Sufficiency of Acquino's Negligent Misrepresentation Claim

Subaru next argues that Acquino fails to state a claim for negligent misrepresentation because the claim is barred by the economic loss doctrine. In response, Acquino argues that their negligent misrepresentation claim should survive a challenge predicated on the economic loss doctrine because "Defendants' misrepresentations and omissions are independent of any contract and the Piston Ringland Defect poses a serious risk of injury." Br. in Opp. at *38 (citing Compl. ¶¶ 9, 71, 86). Acquino cites to authority from other jurisdictions in advancing this argument,

which is not well-founded under Illinois law, including, *In re Chicago Flood Litig.*, 680 N.E.2d 265, 274-75 (1997).

When property damage is caused by disappointed commercial expectations, the economic loss rule bars recovery in tort. *Redarowicz v. Ohlendorf*, 92 Ill. 2d 171, 177-78, 441 N.E.2d 324, 327 (1982); *In re Chicago Flood Litig.*, 176 Ill. 2d at 200–01, 680 N.E.2d at 275, holding modified by *Andrews v. Metro. Water Reclamation Dist. of Greater Chicago*, 2019 IL 124283, 160 N.E.3d 895 ("[The economic loss rule applies even to plaintiffs who have incurred physical damage to their property if the damage is caused by disappointed commercial expectations, gradual deterioration, internal breakage, or other nonaccidental causes, rather than a dangerous event."). For example, in *Redarowicz*, the court held that plaintiff's property damage was caused by a construction defect, which was a disappointed commercial expectation. Thus, the plaintiff's damages were solely economic losses. An exception to the economic loss rule is where the plaintiff sustained personal injury or property damage resulting from a sudden or dangerous occurrence. *In re Chicago Flood Litig.*, 176 Ill. 2d at 200, 680 N.E.2d at 275 (citing *Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill. 2d 69, 86, 435 N.E.2d 443, 450 (1982).[3] This exception draws a distinction between tort damage from mere economic loss. *See id.*

---

[3] The *Moorman* court concluded that qualitative defects are best handled by contract rather than tort law. *Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill. 2d 69, 86, 435 N.E.2d 443, 450 (1982). "Tort law [is] 'appropriately suited for personal injury or property damage resulting from a sudden or dangerous occurrence' whereas the remedy for a 'loss relating to a purchaser's disappointed expectations due to deterioration, internal breakdown or nonaccidental cause * * * lies in contract.' *Moorman*, 91 Ill.2d at 86, 61 Ill.Dec. 746, 435 N.E.2d 443." *In re Illinois Bell Switching Station Litigation*, 161 Ill.2d at 241, 204 Ill.Dec. 216, 641 N.E.2d 440.

Here, Aquino characterizes the damages sustained by the Illinois subclass alleging that "[the] misrepresentations diminish the vehicle value and increase cost of vehicle ownership while also increasing risk of injury that was not disclosed to or reasonably anticipated by consumers at the time of purchase." Compl. ¶ 86. Because Aquino has only alleged an increased risk of personal injury, without alleging an actual injury, Aquino and the Illinois subclass specifically limited their claims to economic injuries and seek economic damages for property loss, in the form of diminished vehicle value and increased cost of vehicle ownership. Such damages are subsumed under disappointed commercial expectation. Thus, these losses fall within the definition of economic loss and are not recoverable in tort.

## V.    Conclusion

For the reasons set forth herein, the Court will grant Subaru's motion in part and deny Subaru's motion in part consistent with the foregoing. An accompanying order shall follow.


January 11, 2024


                     <u>s/ Joseph H. Rodriguez</u>
                     Hon. Joseph H. Rodriguez,  U.S.D.J.